# MINUTES

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

1/12/2006  4:30 pm

SUE BEITIA, CLERK

CASE NUMBER:     CIVIL NO. 04-00671HG-LEK

CASE NAME:       Raymond Ware vs. Sidney Hayakawa, et al.

ATTYS FOR PLA:

ATTYS FOR DEFT:

INTERPRETER:

---

JUDGE:    Leslie E. Kobayashi         REPORTER:

DATE:     1/12/2006                   TIME:

---

COURT ACTION:  EO: COURT ORDER: INCLINATIONS AND QUESTIONS RE PLAINTIFF'S MOTION TO COMPEL

    On July 26, 2004, Plaintiff Raymond Ware ("Plaintiff") filed his First Amended Complaint in the instant Title VII action against Defendants Sidney A. Hayakawa, Director of Transportation Security Administration - Honolulu ("TSA - Honolulu"), Ken Kamahele, Deputy Director of TSA - Honolulu, TSA, Thomas J. Ridge, Secretary of the Department of Homeland Security ("DHS"), and the DHS (collectively "Federal Defendants"), and Defendant Lockheed-Martin ("Lockheed-Martin").

    The Federal Defendants filed their Answer on September 26, 2005. On September 30, 2005, Plaintiff filed a Notice of Dismissal, dismissing all claims against Lockheed-Martin with prejudice.

    Plaintiff was a Checkpoint Screening Supervisor with TSA - Honolulu from May 2002 until his termination on November 25, 2003. Plaintiff is an African-American and alleges that the Federal Defendants treated him differently from non-African-Americans. The Federal Defendants did not assign Plaintiff as a rotating screening manager from October 2002 to February 2003 and did not give him training, while non-African American Screening Supervisors were given those opportunities. Further, in May and August 2003, Plaintiff applied for promotions to the position of screening manager. Both times, the Federal Defendants denied Plaintiff the promotion and gave the position to a non-African-American. [First Amended Complaint at 5-6.]

In May 2003, Plaintiff filed an informal EEO complaint with TSA, alleging that the Federal Defendants discriminated against him by failing to promote him and denying him the rotating manager assignments. On August 19, 2003, Plaintiff filed a formal EEO discrimination complaint, which he later amended to add a retaliation claim. On September 9, 2003, Plaintiff wrote to Mr. Hayakawa stating that he believed he had not been promoted because of discrimination and retaliation and asking Mr. Hayakawa to give him reasons why he was not promoted. Mr. Hayakawa referred Plaintiff to Mr. Kamahele. Plaintiff met with Mr. Kamahele, who told him that there were complaints in his personnel file. Plaintiff was apparently unaware of these complaints, as his only work evaluation rated him as "outstanding." [Id. at 5-7.]

After his meeting with Mr. Kamahele, Plaintiff was told the he had to undergo a recertification test. Plaintiff completed the test, which he alleged was administered by Defendant Lockheed-Martin, in October 2003. Plaintiff did not pass the test, and was terminated on November 25, 2003. Plaintiff asked to see his test results, but Defendants refused, claiming it was privileged. Plaintiff believes that he was terminated in retaliation for his discrimination complaints. [Id. at 7.] He alleges that non-African-Americans screeners and screening supervisors were not required to undergo recertification, were promoted, "were not targeted and smeared with false complaints in their personnel file, and were not terminated for failing the recertification test." [Id. at 8.] Plaintiff alleges that the Federal Defendants' actions created a hostile work environment in violation of Title VII. He alleges that, as a result of Defendants' actions, he has suffered lost income and benefits and emotional distress. [Id.]

Plaintiff alleged claims of racial discrimination and retaliation against Defendants. Plaintiff seeks the following relief: compensatory, special, and punitive damages; injunctive relief, including his reinstatement and the modification or elimination of discriminatory policies, practices, and customs; lost earnings, wages, and benefits; costs of litigation, including attorneys' fees and costs; and any other relief the court deems proper. [Id. at 8-11.]

Plaintiff filed the instant Motion to Compel Discovery on December 12, 2005 ("Motion"). Plaintiff asks the Court to compel the Federal Defendants to produce the discovery Plaintiff requested in his Request for Production of Documents and Request for Answers to Interrogatories and to compel Lockheed-Martin to produce the discovery he requested in his Subpoena Duces Tecum. [Motion at 1, Exhs. A-C.] Specifically, Plaintiff seeks

> a copy of the test results, criteria for evaluating the test used on Plaintiff, names of the persons who conducted the test of Plaintiff, names of employees in the Honolulu Airport who failed the recertification test and what sort of discipline was given to them as a result, the race of persons who failed the test, the personnel files of the employees who were granted the promotions Plaintiff applied for.

[Id., Decl. of Counsel at ¶ 25.] Plaintiff argues that this information is relevant because the Federal Defendants claim that they terminated Plaintiff because he failed the test and this information will show that the reason was a pretext for racial discrimination and retaliation. [Mem. in Supp. of Motion at 2-3.].

The Federal Defendants also state that they have already informed Plaintiff that they are unaware of the names of the persons who administered Plaintiff's recertification test. They argue that they have no further information to disclose. [Federal Defendants' Mem. in Opp. at 10-11.] Plaintiff also seeks the names and races of all persons who failed the recertification test but were allowed to remain with TSA-Honolulu. The Federal Defendants state that this refers to Plaintiff's interrogatory which asked "Were screeners who did not pass the recertification test allowed to remain as screeners? If so, name, race, reasons why allowed to continue working as screeners." [Id., Exh. C.] The Federal Defendants responded that there were five screeners who failed the November 2003 test and they were all "either separated, removed, or reassigned from employment with TSA." [Id.] The Federal Defendants argue that they have fully responded to this interrogatory. [Id. at 11.]

Questions For Counsel:

1. Federal Defendants' Memorandum.

The Federal Defendants filed a memorandum in opposition on December 28, 2005. They, however, failed to file the memorandum "not less than eighteen (18) days" prior to the January 13, 2006 hearing. See Local Rule LR7.4. Eighteen days prior to January 13, 2006 is December 26, 2005, which was a court observed holiday. The memorandum in opposition was therefore due on December 23, 2005. See Local Rule LR6.1. There is no indication in the record that the parties agreed to an extension of time or that the Federal Defendants obtained an extension from the Court. The Federal Defendants did not explain the late filing in their memorandum. The Court may decline to consider the memorandum.

Should the Court strike the memorandum and/or impose sanctions?

2. SSI Privilege.

Federal Rule of Civil Procedure 26(b) provides: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Id. Here, Plaintiff alleges the Federal Defendants' policies were a pretext for race discrimination therefore the Federal Defendants' policies are relevant to Plaintiff's claims. See Diaz v. American Tel. & Tel., 752 F.2d 1356, 1364 (9th Cir. 1985) ("One way of reaching conclusions about an employer's motives is by ascertaining whether the employer's explicit or implicit policies encourage or permit discriminatory employment decisions by its supervisory personnel. The employer is responsible for such decisions because its policies control the manner in which its supervisory employees make them.")

(citation omitted)).

The Federal Defendants refused to produce the information based on the Sensitive Security Information ("SSI") privilege, despite Plaintiff's offer to enter into a protective order concerning the test. [Motion, Decl. of Counsel at ¶¶ 26-27, 30.] Plaintiff argues that the Federal Defendants did not properly invoke the SSI privilege because the privilege must be asserted by the head of the agency and because they failed to submit the documents for the Court's *in camera* review. Further, Plaintiff argues that the SSI privilege does not apply because his review of the requested information will not compromise national security and because the Federal Defendants used a private contractor to administer the tests. [Mem. in Supp. of Motion at 3-4.] Plaintiff also argues that the Federal Defendants do not have standing to object to a request that he made to Lockheed-Martin. [Id. at 5.]

TSA regulations define SSI as

> information obtained or developed in the conduct of security activities . . . the disclosure of which TSA has determined would -
> . . . .
> (3)    Be detrimental to the security of transportation.

49 C.F.R. § 1520.5(a). Expressly included in the list of information constituting SSI is security screening information, such as "[a]ny procedures, including selection criteria and any comments, instructions, and implementing guidance pertaining thereto, for screening of persons, accessible property, checked baggage, U.S. mail, stores, and cargo, that is conducted by the Federal government or any other authorized person[,]" and "[a]ny security screener test and scores of such tests." § 1520.5(b)(9)(i), (iv).

Airport operators and DHS are "covered persons" under the TSA regulations, as well as any employee, contractor, or agent of a covered person. See 49 C.F.R. § 1520.7(a), (h), (k). Covered persons have a duty to prevent unauthorized disclosure of SSI. See 49 C.F.R. § 1520.9(a)(1). They may "[d]isclose, or otherwise provide access to, SSI only to covered persons who have a need to know, unless otherwise authorized in writing by TSA[.]" § 1520.9(a)(2). TSA regulations define "persons who have a need to know" as:

> (a)    In general. A person has a need to know SSI in each of the following circumstances:
> (1)    When the person requires access to specific SSI to carry out transportation security activities approved, accepted, funded, recommended, or directed by DHS or DOT.
> (2)    When the person is in training to carry out transportation security activities approved, accepted, funded, recommended, or directed by DHS or DOT.
> (3)    When the information is necessary for the person to supervise or otherwise manage individuals carrying out

          transportation security activities approved, accepted, funded, recommended, or directed by the DHS or DOT.
          (4)    When the person needs the information to provide technical or legal advice to a covered person regarding transportation security requirements of Federal law.
          (5)    When the person needs the information to represent a covered person in connection with any judicial or administrative proceeding regarding those requirements.
    (b)    Federal employees, contractors, and grantees.
          (1)    A Federal employee has a need to know SSI if access to the information is necessary for performance of the employee's official duties.
          (2)    A person acting in the performance of a contract with or grant from DHS or DOT has a need to know SSI if access to the information is necessary to performance of the contract or grant.

49 C.F.R. § 1520.11(a)-(b). Thus, the Court is inclined to find that the testing information Plaintiff seeks is SSI. Further, a civil plaintiff is not among the class of "persons who have a need to know" SSI and the enabling statute for the TSA regulations, 49 U.S.C. § 114(s),[1] does not make an exception for civil litigation. See Chowdhury v. Nw. Airlines Corp., 226 F.R.D. 608, 611 (N.D. Cal. 2004). The court in Chowdhury found that the plain language of § 114(s) created an evidentiary privilege for information that the TSA determines would be detrimental to air safety if disclosed. See id. at 615.

---

[1] Section 114(s) provides, in pertinent part:

```
      (s)   Nondisclosure of security activities.--
            (1)  In general.--Notwithstanding section 552
            of title 5, the Under Secretary shall
            prescribe regulations prohibiting the
            disclosure of information obtained or
            developed in carrying out security under
            authority of the Aviation and Transportation
            Security Act (Public Law 107-71) or under
            chapter 449 of this title if the Under
            Secretary decides that disclosing the
            information would--
                  (A)  be an unwarranted invasion of
                  personal privacy;
                  (B)  reveal a trade secret or privileged
                  or confidential commercial or financial
                  information; or
                  (C)  be detrimental to the security of
                  transportation.
            (2)  Availability of information to
            Congress.--Paragraph (1) does not authorize
            information to be withheld from a committee
            of Congress authorized to have the
            information.
```

§ 114(s)(1)-(2).

The Undersecretary for Transportation Security can issue an order pursuant to § 114(s), "a person disclosing a substantial interest in [the] order . . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business." 49 U.S.C. § 46110(a).

Has the TSA Undersecretary has issued such an order in the present case?

3. <u>Privilege Log or Vaughn Index</u>.

Notwithstanding whether or not the Undersecretary has issued an order ruling that the information Plaintiff seeks is SSI, the Federal Defendants must still comply with the procedural requirements for asserting privilege claims in response to discovery requests. For example, in <u>Electronic Privacy Information Center v. Department of Homeland Security</u>, the defendants' <u>Vaughn</u> index merely described privileged documents as "sensitive security information." <u>See</u> 384 F. Supp. 2d 100, 110 (D.D.C. 2005). The court ruled that the description was insufficient, stating "[a]lthough the defendants are not required to describe the withheld portions in so much detail that it reveals the sensitive security information itself, they must provide a more adequate description in order to justify the application of the exemption to the withheld material." <u>Id.</u> (citations omitted).

In this district, the Local Rules provide that "[w]henever a claim of privilege is made in response to any discovery request pursuant to Fed. R. Civ. P. 33, 34, and 36, the materials or information claimed to be privileged shall be identified with reasons stated for the particular privilege claimed. No generalized claim of privilege shall be allowed." Local Rule LR26.2(d). <u>See also</u>, <u>O'Connor v. Boeing N. Am. Inc.</u>, 185 F.R.D. 272, 279 (C.D. Cal. 1999) ("Under Rule 33(d), certain documents which would otherwise be responsive may be withheld based on privilege, provided the exercise of the privilege does not prevent the interrogating party from ascertaining or deriving complete answers to the interrogatories and the withheld documents are listed on a privilege log." (citation and emphasis omitted)).

Have the Federal Defendants complied with these obligations?

4. <u>Possession and/or control</u>.

Lockheed-Martin filed its memorandum in opposition on December 23, 2005. Lockheed-Martin acknowledges that it is one of the contractors TSA used to administer recertification tests, but states that it did not administer the tests at issue in this case. According to Lockheed-Martin, a subcontractor, either Alltech International, Inc., or Homeland Security Corporation, administered the tests. Lockheed-Martin asserts that it does not have the relevant testing documents in its possession or control. It states that it has informed Plaintiff's counsel of this fact that Plaintiff will attempt to obtain the documents from the subcontractors. Lockheed-Martin therefore asks the Court to dismiss the Motion. [Lockheed-Martin Mem. in Opp. at 2-3.]

Possession and/or control is broader than actual possession.  The Court is inclined to find that a subcontractor administered the tests in controversy, and that there is an agency relationship between the Federal Defendants and this subcontractor.

Is there an agency relationship between the Federal Defendants and the subcontractor who administered and has possession of the tests?  If so, as the principal, do the Federal Defendants have sufficient control to obligate them to locate and produce the discovery requested?

5.   Personnel Files.

The Federal Defendants argue that they should not be compelled to disclose the personnel files of the persons who received the promotions Plaintiff applied for.  They point out that they disclosed the application packets of the three selectees during the administrative proceedings.  They argue that Plaintiff has not established that the selectees' entire personnel files were relevant to the promotion process. [Federal Defendants' Mem. in Opp. at 12-13.]  Plaintiff argues that this information is relevant because the Federal Defendants claim that they terminated Plaintiff because he failed the test and this information will show that the reason was a pretext for racial discrimination and retaliation.  [Mem. in Supp. of Motion at 2-3.].  Plaintiff filed a consolidated reply on January 3, 2005 in which he asks the Court to compel the production of the personnel files because the Federal Defendants agreed to produce the files subject to a protective order but failed to do so.  He argues that the personnel files are relevant because the Federal Defendants allege that they did not promote him because he had complaints in his file.  He believes that a comparison of his file to the files of the persons selected for promotion will reveal evidence of discrimination. [Reply at 3-4.]

The Court is inclined to find that certain portions of the personnel files of other applicants are relevant, subject to a protective order.

Have the Federal Defendants reviewed the personnel files of the other applicants?  If so, do they contain information as to the racial background of the applicants, and their test results?

The parties should appear at the January 13, 2006 hearing prepared to discuss these issues and/or to direct the Court to controlling case law that either supports or contradicts this matter.  The Court notes, these inclinations and questions are intended only to help the parties prepare for oral argument and is not the Court's final decision in the matter.  Rather, the parties are encouraged to raise relevant case law and/or facts to show the Court why the inclinations are mistaken or correct.

Cc: all counsel

Submitted by: Warren N. Nakamura, Courtroom Manager

Case 1:04-cv-00671-HG-LEK    Document 46    Filed 01/12/2006    Page 8 of 8