Exhibit No. 9

Loislaw Federal District Court Opinions

IN RE SEPTEMBER 11 LITIGATION, (S.D.N.Y. 2006)

IN RE SEPTEMBER 11 LITIGATION.

21 MC 97 (AKH), 21 MC 101 (AKH).

United States District Court, S.D. New York.

March 31, 2006

## OPINION AND ORDER REGULATING TESTIMONY AT DEPOSITIONS ANSWERS MIGHT CONTAIN SSI

ALVIN HELLERSTEIN, District Judge

I write to rule on a strange and significant phenomenon. T Transportation Security Administration ("TSA"), having first intervened in these actions to protect Sensitive Security Information ("SSI"), declines to attend noticed depositions the airline defendants, where testimony is likely to contain information. Instead, TSA seeks to impose on defendants' cou the obligation to object and prevent answers that might disc SSI. Counsel for defendants, believing that their clients' interests are best advanced by answering the questions put t their witnesses and that the applicability of SSI to conditi of airline security five years earlier might not be easy to discern, object to the TSA proposal. Defense counsel also ex concern about exposure to civil penalties if they and their witnesses fail to protect SSI. Plaintiffs press to proceed, citing lengthy delays, and pointing out that many of their counsel — all those who would be taking the depositions — we cleared by TSA to obtain access to SSI pending TSA authoriza of such disclosure. Plaintiffs contend that the procedure recommended by the TSA, that they could put questions to witnesses but not hear answers until final determinations by that the answers could be given, would make the role of cour

Page 2

entirely ineffective, and cancel the very right of the clien seek a relief specifically acknowledged by Act of Congress.

Judicial intervention to regulate the impasse is imperativ avoid further and unnecessary delay in the progress of these cases and to relieve counsel of the inherent conflicts and artificial roles that TSA's position would create for them. the reasons stated in this opinion, I hold that there are reasonable and appropriate ways to allow the depositions to proceed by normal procedures, without compromising SSI or th jurisdiction of TSA to determine SSI.

## I. CHRONOLOGICAL BACKGROUND

The terrorist-related aircraft crashes of September 11, 20 shocked America by the number of deaths and the scope of in that directly resulted, and in many indirect ways. One parti consequence was the threat to the American airline industry. airline executives represented to Congress, the lawsuits tha were expected to follow could cripple the American aviation industry, causing extensive and dangerous consequences to th entire nation.

Congress responded quickly, passing eleven days later the Transportation Safety and System Stabilization Act ("ATSSSA' ATSSSA, Pub.L. 107-42, 115 Stat. 230 (2001) (codified at 49 U.S.C. §§ 40101 note). Recoveries against the airlines were to be limited to their insurance coverage. ATSSSA § 408(a). All cl "resulting from or relating to the terrorist-related aircraf crashes of September 11, 2001" "including any claim for loss property, personal injury, or death" were to be brought exclusively in the United States District Court for the Sout District of New York. ATSSSA § 408(b)(3). And most uniquely, injured and the representatives of those

Page 3

who had died were given an alternative to a lawsuit: a Victi Compensation Fund specially established and funded to provic quick, economical and final tax-free relief to those who mic wish to apply. ATSSSA § 405.

The story of the Victim Compensation Fund is the subject c report of its brilliant, energetic and empathetic Special Ma Kenneth Feinberg. See Kenneth R. Feinberg et al., U.S. Dept. Justice, Final Report of the Special Master for the Septembe

11th Victim Compensation Fund of 2001. Of those who lost family members, 2,880, representing 97 percent, elected to a An additional 2,680 individuals who sustained injuries on September 11 or during the rescue efforts also elected to ap Total recoveries were $7.049 billion, amounting to an averag $2 million awarded to family members of the deceased and $4( awarded to those who sustained physical injury. But for the Victim Compensation Fund, all or most of the claimants would filed suit in this court.

As the judge who drew the assignment to preside over all t September 11-related liability lawsuits, my first efforts we preserve the alternative conferred by Congress in the ATSSSA file a claim with the Victim Compensation Fund, or to file a lawsuit. My initial decisions preserved both options. Compar Colaio v. Feinberg, 262 F. Supp. 2d 273 (S.D.N.Y. 2003), aff'd, 345 F.3d 135 (2d Cir. 2003) (upholding validity of Victim Compensation Fund), with In re September 11 Litigation, 280 F. Supp. 2d 279 (S.D.N.Y. 2003) (holding tha defendants have duty to ground victims, as well as passenger for negligently caused death and injury). Thus, the injured, the representatives of those who died, were entitled to seek relief, either "by filing claims with [the] Special Master,' "in the traditional manner, by alleging and proving their

Page 4

claims in lawsuits[.]" In re September 11 Litigation, 280 F. Supp. 2d at 286. But these were alternatives; a clain not first file with the Victim Compensation Fund, and then, second thought, file a lawsuit. See Virgilio v. Motorola, 2004 WL 433789 (S.D.N.Y. March 10, 2004), aff'd, 407 F.3d 105 (2d Cir. 2005).

The time provided by Congress for filing with the Victim Compensation Fund drew to a close on December 22, 2003. The officially closed June 15, 2004. Remaining for determination were the lawsuits filed in this court.

By companion Orders of July 24, 2002 and November 1, 2002, ordered the consolidation of all actions for wrongful death, personal injury, and property damage or business loss under master docket 21 MC 97.[fn1] (See Order dated July 24, 2002; Order dated Nov. 1, 2002.) TSA intervened in order to

protect against unauthorized disclosure of information deeme[d by] TSA to constitute SSI. (See Order to Show Cause, dated June [ ] 2002.) In setting forth its approach to disclosure of SSI information for purposes of the instant litigation, TSA init[ially] took the position that all SSI-related discovery requests sh[ould] be stayed pending narrowing of the issues relevant to the September 11 litigation by motion practice. (See Decl. of Stephen McHale ("McHale Decl. I"), dated Sept. 12, 2002 at ¶ 17.) Following such narrowing of the potential scope of SSI-related discovery, TSA proposed to provide counsel "SSI substitutes" consisting of appropriately redacted documents[,] perhaps supplemented by a "general summary of SSI, and/or a declaration that supports certain material facts that relate[ to] the particular SSI at issue." (Id. at ¶ 19.) As an alternati[ve] to provision of "SSI substitutes," TSA also proposed to esta[blish] a clearance procedure for a limited number of attorneys

Page 5

and litigation support staff whereby such individuals would [be] granted conditional access to material deemed to constitute [SSI.] (Id. at ¶¶ 20, 21.) Further to the TSA representations, thir[ty] of plaintiffs' lawyers in fact obtained the needed security clearance. (See TSA Letter, dated Dec. 2, 2003; see also McHale Decl. I at ¶¶ 20, 21.)

Plaintiffs then propounded interrogatories and document requests relevant to the basic issues of the litigation, nam[ely] the screening and security measures in effect at the nation['s] airports in the months before September 2001. In keeping wit[h] assertions that all documents responsive to plaintiffs' disc[overy] requests should be submitted for its initial review, (see De[cl.] of Stephen McHale ("McHale Decl. II"), dated Feb. 5, 2004, a[t ¶] 15) defendants turned over relevant documents to TSA in thre[e] separate waves beginning in late 2003. Although documents we[re] released by TSA for production on a rolling basis following review and appropriate redaction, the process was a slow one[;] TSA did not complete its review of the first and second wave[ ] documents until late 2005.

Subsequent to the commencement of document review by TSA, two years after its intervention in this litigation, the TS[A] retreated from its initial position and determined that it w[ill] not allow for conditional disclosure of material containing

to the small group of cleared plaintiffs' attorneys. (See De of Stephen McHale ("McHale Decl. II"), dated Feb. 5, 2004, a 12-15.) Thus, although defendants' attorneys were privy to S coming from their respective clients' files, and perhaps fro co-defendants' files, plaintiffs' attorneys were barred from seeing or hearing information deemed to constitute SSI and thereby, despite representing people whom Congress had
Page 6
acknowledged as having the right to sue, became ineligible effectively to represent their clients in such suits.

As the litigation lurched past the three-year mark with no discernable progress being made, I directed the parties to develop a joint protocol that would allow for needed discove and depositions to proceed while protecting against unauthor disclosure of SSI. (See Order dated Sept. 28, 2005, at 9.) T parties, however, remained unable to reach a resolution and, lieu of such a joint determination, I urged that TSA issue f orders as to the scope and manner of its SSI determinations that these determinations could be applied or appealed.[fn2] TSA, although not adverse to the issuance of final orders, objected to plaintiffs' request that TSA provide specific responses to each redaction in the documents already proffer for TSA review and urged that the parties engage in a furthe period of limited negotiation.

At the case management conference of November 18, 2005, I expressed displeasure with the absence of progress in the continuing negotiations for a protocol, noting that four yea had passed since September 11, 2001, without visible progres the lawsuits brought by the families of those who had lost t lives. I noted further that, without progress in this most k part of the September 11 litigation, none of the other lawsu could meaningfully progress.[fn3] Framing the critical issue, namely the right of plaintiffs to pursue a course of action expressly acknowledged by Congress, I observed:
Page 7

> September 11, 2001 occurred more than four years ago.
> While we are playing, people are still absorbed with
> the tragedy that occurred in their lives. What right
> do we have to indulge ourselves in the normal

bureaucracy of discovery proceedings while people are waiting for a final decision. Do they have a right or do they not have a right to what they feel is their damage. That is the burning issue. That is the issue all of us are engaged in advancing.

(See Transcript of Nov. 18, 2005 ("Nov. 18 Transcript") at 33:5-13.) Finding that further delay was not tolerable, I suggested to plaintiffs that they notice depositions, forcin to make its orders in the forms of directions to witnesses r answer, and expressed the belief that a deposition procedure could create a better record of plaintiffs' need to know, in context of discovery relevant to the issues of the underlyin lawsuits.

TSA issued the first of three planned final orders on Febr 7, 2006, almost four years after TSA's intervention. (See Fi Order of Requests for Conditional Disclosure of SSI ("Final I"), dated February 7, 2006.) The first final order sets out TSA's determination that conditional disclosure of SSI is unwarranted and reaffirms TSA's position that all documents responsive to discovery requests should be subject to its re before any disclosure. TSA issued its second final order on 17, 2006, setting out its determinations as to what informat constitutes SSI and providing that "only if a security countermeasure is obsolete, in that it will not be revived a therefore reveals nothing about current or future security countermeasures, or if security intelligence is taken over b events, will information lose its SSI protection and be rele publicly." (Final Order II, dated March 17, 2006 ("Final Orc II") at 2.) Both

Page 8

plaintiffs and defendants are in the process of filing Petit for Review of the two final orders.

Meanwhile, pursuant to my direction, plaintiffs have serve defendants with 30(b)(6) notices wherein plaintiffs seek to elicit testimony as to four critical areas necessary to both prosecution and defense of the lawsuits: 1) "the warnings an information supplied to the U.S. carriers by the Federal Avi Administration ("FAA") about the threat of hijackings, inclu terrorist hijackings, prior to 9/11"; 2) "all airport passer

screening procedures which were utilized, including checkpo[int]
screening procedures prior to and after 9/11"; 3) "the so-ca[lled]
`common strategy' in the event of a threatened hijacking"; a[nd 4)]
"the identity of documents submitted to the TSA to determine
whether they contain Sensitive Security Information." (Trans[cript]
of March 3, 2006 Conference ("March 3 Transcript") at 37-38. [The]
depositions are scheduled to commence during the first week [of]
April 2006.

Defendants caution that, in light of TSA's Final Orders, t[he]
answers elicited by these areas of inquiry will necessarily
implicate SSI and therefore will trigger the obligation impo[sed]
on defense counsel by TSA regulations to protect against
unauthorized disclosure. Such an obligation to protect agai[nst]
disclosure, urges defense counsel, places them in conflict,
between enforcing government regulations that seem to prohi[bit]
disclosure, and the best interests of their clients requiri[ng]
disclosure. As defense counsel state, "much of what the TSA [has]
identified as SSI is directly relevant to the exclusive sta[ndard]
of care governing their conduct on September 11, 2001 and i[s at]
the heart of their defense." (See Joint Letter, dated March [9,]
2006 ("March 9 Joint Letter") at 2.) Plaintiffs argue that T[SA]
should be deemed to have waived any objections to the

Page 9

disclosure of SSI if it refuses to attend depositions. Howev[er,]
TSA insists that counsel for defendants bear the responsibil[ity]
of preventing unauthorized disclosure of SSI, and that TSA's
lawyers do not have to be present.

## II. DISCUSSION

*A. Applicable Law and the Conflicting Obligations of Defen[se] Counsel*

1. The Obligations Imposed by TSA Regulations

Created by enactment of the Aviation and Transportation
Security Act ("ATSA") in the weeks following September 11, [TSA]
charged with promulgating the Transportation Security Regula[tions]
("TSRs") which contain rules governing the security of air, [rail]
and maritime transportation. ATSA, Pub.L. 107-71, 115 Stat. 59[7]
(2001) (codified at 49 U.S.C. §§ 40101 note). The TSRs

specifically regulate the maintenance and safeguarding of SSI. See 49 C.F.R. Part 1520.

SSI is defined, broadly, as "information obtained or developed in the conduct of security activities, including research and development, the disclosure of which the TSA has determined . . . be detrimental to the security of transportation." 49 C.F.R. § 1520.5(a)(3). By regulations, sixteen specific categories relating to transportation security are deemed automatically to constitute SSI with no specific determination TSA required. 49 C.F.R. § 1520.5(b). Information deemed to constitute SSI, either by regulation or TSA determination, does not lose its protection as such unless the information is "obsolete," in the sense that it "will not be revived:"

> only if a security countermeasure is obsolete, in
> that it will not be revived and therefore reveals
> nothing about current of future security
> countermeasures, or if security intelligence is
> overtaken by events, will information lose its SSI
> protection and be released publicly.

Page 10

(Final Order II at 2.)

Only persons with a "need to know," or granted conditional access by the TSA pursuant to § 1520.15, are allowed access SSI. 49 C.F.R. § 1520.5(a), (b). Persons have a need to know when, by virtue of their position, access to SSI is required

> (1) to carry out transportation security activities
> that are government-approved, -accepted, -funded,
> -recommended, or -directed, including for purposes of
> training on, and supervision of, such activities; (2)
> to provide legal or technical advice to airport
> operators, air carriers or their employees regarding
> security-related requirements; or (3) to represent
> airport operators, air carriers or their employees in
> judicial or administrative proceedings regarding
> security-related requirements."

TSA Final Order I at 2; see also 49 C.F.R. § 1520.11(a).

Persons without a need to know may be granted conditional ac to SSI if TSA determines "that disclosure of such records or information, subject to such limitations and restrictions as may prescribe, would not be detrimental to transportation security." 49 C.F.R. § 1520.15 (e). However, in the wake of September 11, "it has been the consistent policy of TSA that present and continuing threat of terrorist attacks against aviation interests requires that the number of persons havir access to SSI be significantly and continually decreased, ra than increased." (Final Order I at 3.) Thus, TSA has adopted position of non-disclosure of SSI to litigants in civil case do not otherwise have a statutorily defined need to know. (F Order I at 4.)

A person granted access to SSI assumes an obligation to "| reasonable steps to safeguard SSI in that person's possessic control from unauthorized disclosure." 49 C.F.R. § 1520.9. Violation of the obligation to protect SSI against unauthori disclosure "is grounds for a civil penalty or other enforcen or corrective action by [Department of Homeland Security]." enforcement or

Page 11

corrective actions may include "issuance of an order requiri retrieval of SSI to remedy unauthorized disclosure or an orc cease future unauthorized disclosure." 49 C.F.R. § 1520.17.

2. Obligations of Counsel to Clients

Under the New York Code of Professional Responsibility, a lawyer assumes the absolute duty to represent his or her cli "zealously within the bounds of the law." See N.Y. Code of Prof. Resp. EC 7-1. Such obligation stems from the fundament premise that "[i]n our government of laws and not of individ each member of our society is entitled to have his or her cc judged and regulated in accordance with the law; to seek any lawful objective through legally permissible means; and *to present for adjudication any lawful claim, issue or defense.* Id. (emphasis added). Thus, in undertaking to represent a client zealously, the lawyer must not intentionally "[p]reju or damage the client during the course of the professional relationship[.]" N.Y. Code of Prof. Resp. DR 7-101, 22 NYCRR § 1200.32. The lawyer's obligations run directly to

of his client, and it is the client who serves as the lawyer
master throughout the course of the professional relationshi
lawyer who is concerned with the potential legal consequence
him of serving his client zealously is in a position of conf

*B. The Parties' Positions as to a Protocol for Deposition*

1. The Plaintiffs' Position

Plaintiffs argue that depositions should proceed pursuant
the procedures set forth in Rule 30(c), Fed.R.Civ.P. (See
Joint Letter, dated March 9, 2006 ("March 9 Joint Letter").)
Under this approach, plaintiffs propose to ask the witness
questions and

Page 12

expect the witness to answer unless instructed otherwise by
defense counsel. Once an objection has been raised, pursuant
Rule 30(c), the questioner may cure the objection by rephras
the question and the witness may proceed to answer.
Fed.R.Civ.P. 30(c). In light of the special concerns presente
disclosure of SSI, plaintiffs propose that if the objection
coupled with an instruction by defense counsel that the witr
should not answer because the answer may implicate SSI, the
questioner would move on to the next question without respor
from the witness. All objections and exceptions to questions
would be deemed preserved. Plaintiffs would then determine
whether to seek a ruling on the objections.

Plaintiffs, recognizing that the categorization of answers
including SSI might be uncertain, propose that defense couns
should not have to guess. Plaintiffs acknowledge that "it wo
be an unconstitutional burden to impose upon counsel the
responsibility to `guess' what answers might involve disclos
of SSI at the risk of statutory and regulatory penalties."
9 Joint Letter at 3.) Plaintiffs propose that if TSA decline
attend depositions, it should be deemed to have waived any
objections to witnesses' oral answers. Thus, under plaintiff
proposal "the only SSI in this litigation is in documents th
TSA has vetted." (Id.)

2. Defendants' Position

   Defendants assert that TSA's position, that defense counse[l]
an absolute obligation to protect SSI, directly conflicts wi[th]
their "duty of zealous advocacy and . . . obligation to ensu[re]
that the record reflects the most accurate, complete and
persuasive account of their clients' actions," (March 9 Joi[nt]
Letter at 2) and contend that the protocol proposed by plai[ntiffs]
does not alleviate their concerns about the conflicting
Page 13
position in which they are placed. (See id.) Thus, in
defendants' view, "the proposed protocol does nothing to res[olve]
the untenable position in which defense counsel would find
themselves if they attend a deposition both as enforcers of
government policy on the non-disclosure of SSI and as attorn[eys]
providing effective representation to their clients, who wou[ld]
otherwise be entitled to have their counsel elicit favorable
testimony." (Id.)

   As to non-party witnesses, defense counsel object that TSA[']s
position would impose on them an obligation to prevent discl[osure]
without the ability to carry out the obligation, for "a lawy[er]
cannot compel a non-client to heed instructions not to answe[r."]
(Id.) Defense counsel note further that, since questions ask[ed]
of a non-party witness could potentially elicit SSI, they wo[uld]
be forced to formulate questions in a manner that would not
elicit SSI and thus would not be acting in the best interest[s of]
their client.

   3. TSA's Position

   TSA asserts that "[i]t is counsel's role, rather than the
TSA's, to object to questions and advise witnesses as to how
avoid disclosure of potentially privileged materials in the
deposition." (TSA Letter, dated March 1, 2006 ("March 1 Lett[er")]
at 2; see also TSA Letter, dated March 17, 2006 ("March 17
Letter"), at 1.) TSA notes that the regulations expressly pr[ovide]
that those in possession of SSI are obligated to "safeguard
from unauthorized disclosure," 49 C.F.R. § 1520.9(a), and
contends that this obligation extends to depositions, imposi[ng an]
absolute obligation on defense counsel to protect against
unwarranted disclosure. Under TSA's proposal, therefore, def[ense]
counsel, relying on their knowledge of prior TSA determinati[ons]
of SSI in various documents, should raise objections to ques[tions]

likely to implicate SSI material.
Page 14
To the extent that counsel has any doubt as to whether a particular question will elicit SSI, the obligation of defer counsel "is to say that there is an SSI objection." (March Transcript at 52.)

Given the absolute obligation assumed by defense counsel, posits that its participation in the depositions would be ne necessary nor meaningful and, as such, has taken the positic that it will not be present at the depositions in this case. Noting that it would be impossible for TSA to do "immediate, real-time SSI review because of the need for careful and det examination and analysis of the material in consideration of numerous other documents and information," TSA proposes inst that that its "role is to review the transcripts once they a created to make a final determination as to what is and is r SSI and to redact any SSI from the transcripts." (Id.)

TSA's proposal would require depositions to proceed, not i normal question-answer manner provided by Rule 30, Fed.R.Civ.P., and customary to depositions, with the reporte counsel having been cleared in advance by TSA, but by writte questions submitted in advance pursuant to Rule 31, Fed.R.Civ.P., or, alternatively, with plaintiffs' counsel as stepping out of the room in order not to hear answers that potentially could implicate SSI, and then returning (without benefit of hearing the witness' answers), to propound furthe questions. Both plaintiffs and defendants object to TSA's proposal.

C. The Conduct of Depositions

The tension that is at the heart of the parties' dispute i questions central to our justice system. If the parties who elected to proceed by litigation are to
Page 15
have their day in court, they must have the right to litigat be represented effectively by their counsel. Congress recogr as much by preserving specifically their right to sue in the Transportation Safety and System Stabilization Act. ATSSSA § 408(b). Defendants also must have the ability and right to c

themselves effectively by their counsel. At the same time, t
government has the overriding duty to protect and ensure the
safety of its citizens, including the duty and right to clas
information the disclosure of which might be harmful to the
public. As the court charged with presiding over the litigat
arising from the terrible events of September 11, my duty is
navigate these competing concerns, all within the limits of
jurisdiction.

The United States District Court for the Southern District
New York was given "original and exclusive jurisdiction over
actions brought for any claim (including any claim for loss
property, personal injury, or death) resulting from or relat
to the terrorist-related aircraft crashes of September 11, 2
ATSSSA § 408(b)(3). One of the inherent aspects of that excl
jurisdictional grant is the right and duty of the court to
regulate the proceedings and the counsel who come before it
the aim of advancing the fundamental right under our Constit
of equal justice under the law and the litigants' valid inte
in prompt determination of their cases and controversies. Ir
it is in keeping with my obligation to advance these importa
interests that I have endeavored to regulate the instant
proceedings in such a way as to not render the right of
litigation acknowledged by Act of Congress a legal fiction.

My jurisdictional grant, however, is not without bounds ar
am ever mindful of the important security concerns that have
loomed over this litigation from its inception. TSA is charg
with maintaining and safeguarding SSI and I do not seek to

Page 16

intrude on its jurisdiction or review the wisdom of its
determinations. As with administrative agencies generally,
petitions for review of TSA's final orders are filed in the
Courts of Appeals. 49 U.S.C. § 46110. I have no jurisdiction to
review TSA's final orders; and petitions for review of TSA's
final orders have, or soon will be, submitted to the appropr
Court of Appeals. But creation of the TSA did not divest the
District Courts of their inherent authority to regulate pre-
and trial procedures in the cases over which they preside, a
create a proper record of those proceedings for appellate re
of their final and, in some cases, interlocutory orders.

The questions presented by the instant litigation sound in negligence and require a determination of whether defendants failed to exercise reasonable care to those whom they owed a to exercise such care. See In re September 11 Litigation, 280 F. Supp. 2d 279. By my prior Opinion, I determined that aviation defendants were in the "best position to provide reasonable protection against hijackings and the dangers the presented, not only to the crew and passengers, but also to ground victims," id. at 294, and thus owed a duty both to th who boarded their planes and to those on the ground. Plainti must now show that the duty owed them was breached. Such pro however, will elude plaintiffs absent an open and dynamic protocol for depositions whereby questions are propounded ar answers provided. TSA's proposed alternatives, allowing for depositions only by written interrogatory or by a procedure requiring plaintiffs to remove themselves from the depositio while responses to their questions are provided, fail to all plaintiffs to engage in the back and forth so essential to establishing a claim in negligence. Indeed, to bar plaintiff from conducting live

Page 17

depositions is to thwart the very intent and purpose of the that I am charged with enforcing, and over which I have excl jurisdiction.

TSA urges that it does not wish to bar plaintiffs from conducting live depositions, but cautions that, in the conte such depositions, the onus is on defense counsel to protect against unauthorized disclosure of SSI. Such proposal, howev fails to adequately protect the interests of defense counsel their clients in the conduct of depositions. A lawyer cannot both as an advocate charged with representing his client's k interests and as an enforcer of government policies, particu if civil penalties may be imposed if he fails to give preced to the government's interests.[fn4] The presence in the deposition room of government lawyers having sole duty to represent TSA is critical. It is they, and not defense couns who should have primary obligation to defend and to instruct witnesses possessing potential SSI. Defense counsel's paramo obligation is to his client, and the client in particular ar legal system in general have the right to expect that the la will represent the client "zealously within the bounds of th

law." N.Y. Code of Prof. Resp. EC 7-1. One of defense counsel's obligations is to "[t]ake reasonable steps to safeguard SSI [his or his client's] possession or control from unauthorized disclosure," 49 C.F.R. § 1520.9(a), but that obligation is to be carried out in the best interests of his client, and not as enforcer of government policy. Given the uncertainty of what is properly classifiable as SSI, and TSA's own changes of attitude regarding prior classifications, the task of objecting and

Page 18

instructing is beyond the jurisdictional competence of defense counsel, particularly in light of the client's interests in responding to proper questions.[fn5] Thus, the only lawyers who have the obligation to act as enforcer's of TSA's policies are TSA's own lawyers, and it is they, and no one else, who have the responsibility to object and to instruct whenever they, in good faith, believe that SSI may be implicated in a question or an answer. Their attendance at depositions is critical. That is the very reason that they moved to intervene in the case, and the reason that I granted TSA's motion to intervene.

In accordance with the foregoing, and mindful of the important security concerns expressed by TSA, I hold that the depositions should proceed as follows:

1. Plaintiffs' counsel who have clearance from TSA may propound questions to the witness, in the fashion normal to depositions. The witness shall be defended by counsel entitled to read and hear SSI, either pursuant to applicable regulations, 49 C.F.R. § 1520.11, or by special clearance. Other parties potentially affected may also attend, and object and cross-examine, as provided by Rule 30(c), Fed.R.Civ.P., provided that they are cleared as well. Counsel for TSA may also attend, and object and cross-examine. None others may attend.

2. The deposition shall be recorded by a certified stenographic reporter who is a member of the pool of reporters in the United States District

Page 19

Court for the Southern District of New York, and who has been cleared to transcribe depositions

potentially containing SSI.

3. The Reporter shall transcribe only two copies of
the deposition, and furnish the same to counsel for
the TSA. TSA, within 30 days from receipt, or such
longer time as it may reasonably request during said
30-day period, shall determine, and identify on one
of the copies of the transcript, which of the answers
are SSI. Those answers shall be redacted on the
second copy of the transcript, and that redacted copy
shall be furnished to the counsel who propounded the
questions to the witness, to be served and filed in
the manner provided by Rule 30(f), Fed.R.Civ.P.

4. The first copy of the transcript, reflecting TSA's
determinations of SSI, shall be considered its final
determinations, subject to appeal to the Courts of
Appeals as provided by 49 U.S.C. § 46110. A copy
shall be filed under seal in the District Court.

The protocol for depositions having been established by this
Opinion, the depositions slated to commence the first week of
April are stayed to begin May 1, 2006, subject to revision by
agreement of the parties. If, before then, TSA or any party
wishes to seek appellate review, that party may move for a s
or other appropriate relief.

### III. CONCLUSION

Through express acknowledgement by Congress, those who
sustained injuries as a result of the September 11 attacks h
the right to seek compensation for their injuries in this co
ATSSSA § 408(b). Litigation, by its very nature, bears a hig
Page 20
degree of risk. Cases do not always survive to have their da
court and may be subject to **dismissal** on any number of proce
or substantive grounds. By opting out of the Victim Compensa
Fund, the litigants currently before me have necessarily ass
the risks inherent in litigation. But they could not reasona
have foreseen that they might be barred by administrative fi
The task of TSA is formidable, but the severity of the task
not serve as an excuse for barring plaintiffs from asserting

claims allowed them by law.

The court wishes all to understand that it is time, four-and-a-half years after the terrible events of September 2001, that the parties progress to their day in court. As th Special Master brought a final conclusion to those who enter the Victim Compensation Fund, so is the court required to br final conclusion to the matters before it. Without such fina conclusions, the wounds so grievously opened on that infamou cannot be bound up.

SO ORDERED.

[fn1] By Order of March 10, 2005, I directed that all cases concerning property damage and business loss arising out of September 11, 2001 be transferred and consolidated under a m master docket, 21 MC 101. (See Order dated March 10, 2005.)

[fn2] Pursuant to 49 U.S.C. § 46110, final orders of the TSA may be reviewed by filing a petition for review in an appropriat U.S. Court of Appeals.

[fn3] The September 11 cases consolidated before me, totalir over 5,000 in number, have been organized under separate mas dockets. Cases alleging personal injury and wrongful death resulting from the attacks of September 11 have been consoli under Master Docket 21 MC 97. All cases concerning property damage and business loss arising out of September 11 are consolidated under Master Docket 21 MC 101. Outside of the s seeking relief for the destruction of life and property rest directly from the attacks themselves, are the suits seeking relief for respiratory injuries sustained by cleanup, recove and rescue crews who worked at the World Trade Center site a the surrounding areas in the weeks and months following Sept 11. Cases brought by workers who sustained respiratory injur while working at the World Trade Center site have been consolidated under Master Docket 21 MC 100. Cases brought by workers who sustained respiratory injury while working in th area surrounding the World Trade Center site have been consolidated under Master Docket 21 MC 102. Also before me i litigation concerning insurance obligations arising from the destruction of property on September 11, docketed as 03 Civ.

00332.

[fn4] TSA argues that any alleged conflict is "belied by the that, since discovery began in this case, counsel for the Aviation Defendants have routinely asserted SSI objections t document demands seeking documents containing SSI, notwithstanding their own asserted desire to use such docume in the litigation." (TSA March 17 Letter at 2.) The distinct is obvious. In turning over documents for TSA review, defens counsel is not charged with making individual SSI determinat Such determination is instead left to TSA. As such, defense counsel does not stand in the dual role of counsel and gover enforcer.

[fn5] TSA represents that it "cannot do any immediate, real-SSI review because of the need for careful and detailed examination and analysis of the material in consideration of numerous other documents and information[.]" (March 1 Letter 2.) Yet, it cannot expect defense counsel to do that which 1 by admission, cannot do. TSA's effort to evade the quandary directing defense counsel, in raising objections to depositi questions and instructing witnesses accordingly, simply to r on "documents that the TSA has now redacted" to ascertain wh information will be deemed to constitute SSI (March 3 Transc at 52:4-6), is simplistic, and inevitably will tend to shut all answers, making a mockery of the deposition process.

Page 1

Copyright © 2006 Loislaw.com, Inc. All Rights Reserved