**Exhibit  No.** 3



## DAPHNE E. BARBEE

ATTORNEY AT LAW

1188 BISHOP STREET, SUITE 1909, HONOLULU, HAWAII 96813
TELEPHONE (808) 533-0275

June 22, 2006

Office of the Clerk
United State Court of Appeals for the Ninth Circuit
121 Spear Street, P. O. Box 193939
San Francisco, Ca 94105-3939

RE: Ware v. Chertoff, Secretary of Department of Homeland Security; Transportation Security
Agency (TSA), Petition for Relief of Agency Decision under 49 U.S.C. 46610(c)

Dear Ninth Circuit Clerk:

        Please file the enclosed Petition for Relief in the above matter. I am enclosing the filing fee
of $455.00 and a self addressed envelop for return  copies of the Petition.  Thank you.

Sincerely,

Daphne E. Barbee
Attorney at Law

enc.
cc: Mr. Thomas Helper, US Attorney

DAPHNE E. BARBEE   2911
Attorney & Counselor at Law
Century Square, Suite 1909
1188 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 533-0275

Attorney for Petitioner

### UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| RAYMOND E. WARE,<br><br>          Petitioner,<br><br>     vs.<br><br>MICHAEL CHERTOFF, Secretary<br>of DEPARTMENT OF<br>HOMELAND SECURITY;<br>TRANSPORTATION SECURITY<br>AGENCY (TSA),<br><br>          Agency-Respondent. | Case File No.<br><br>_____<br><br><br>**PETITION FOR REVIEW OF<br>AGENCY DECISION UNDER<br>49 U.S.C. 46610(c); EXHIBITS "A" -<br>"B"; CERTIFICATE OF SERVICE** |

### PETITION FOR REVIEW OF AGENCY DECISION
### UNDER 49 U.S.C. 46610(c)

The Petitioner RAYMOND E. WARE  hereby petitions for review by

this Court of the administrative final order denying discovery requests for

recertification test results of Petitioner RAYMOND E. WARE entered by the

Department of Homeland Security (DHS) which has oversight over the

Transportation Security Agency (TSA) on April 25, 2006. A copy of the decision is attached as Exhibit "A".

Jurisdiction and venue is asserted pursuant to 49 U.S.C. § 46610(c).

This petition is timely filed pursuant to 49 U.S.C. § 46610(c) as it is filed within 60 days of the final order denying discovery from TSA.

This petition is based upon Petitioner's Title VII complaint for discrimination against Respondent Agency filed in the United States District Court for the District of Hawaii (see Exhibit "B"). Petitioner, a former airport screener, requested as discovery in the U.S. District Court case the re-certification test results and standards which Responding Agency claimed Plaintiff failed and used as a basis to terminate him. The U.S. District Court declined to order the discovery requested or to rule on constitutional challenge to TSA's order, stating the Ninth Circuit Court has jurisdiction over this matter.

Petitioner will file the appropriate brief in support of the Petition and a Record on Appeal pursuant to this Court's briefing schedule.

Dated: Honolulu, Hawaii ___6-22-06___

Respectfully submitted,

DAPHNE E. BARBEE
ATTORNEY FOR PETITIONER

2

**Exhibit   No.   A**

 Transportation
Security
Administration

**Final Order on Request for Conditional Disclosure of SSI**
**in Documents Responsive to Discovery in *Ware v. Hayakawa*, Civ. No. 04-00671 (D. Haw.)**

**I.    Request for Conditional Disclosure of Sensitive Security Information ("SSI")**

In connection with *Ware v. Hayakawa*, Civ. No. 04-00671 (D. Haw.), Plaintiff Ware (hereinafter "Plaintiff Requester") requests access to SSI contained in documents that are responsive to discovery requests served in the litigation.

**II.    Standard for Determination**

Whether the disclosure of the requested SSI, subject to the proposed conditions, "would not be detrimental to transportation security." 49 C.F.R. § 1520.15(e).

**III.    Statutory and Regulatory Background**

In furtherance of a congressional mandate to "prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out [civil aviation] security . . . if the [TSA Administrator] decides that disclosing the information would . . . be detrimental to the security of transportation," see 49 U.S.C. § 114(s)(1)©, TSA regulations prescribe the maintenance, safeguarding, and disclosure of SSI. See 49 C.F.R. Part 1520. SSI, by definition, is "information obtained or developed in the conduct of security activities, including research and development, the disclosure of which TSA has determined would . . . be detrimental to the security of transportation." 49 C.F.R. § 1520.5(a)(3).

Access to SSI is strictly limited to those persons with a need to know, as defined in 49 C.F.R. § 1520.11, and to those persons to whom TSA authorizes disclosure under 49 C.F.R. § 1520.15. In general, a person has a need to know specific SSI when he or she requires access to the information: (1) to carry out transportation security activities that are government-approved, -accepted, -funded, -recommended, or -directed, including for purposes of training on, and supervision of, such activities; (2) to provide legal or technical advice to airport operators, air carriers or their employees regarding security-related requirements; or (3) to represent airport operators, air carriers or their employees in judicial or administrative proceedings regarding security-related requirements. 49 C.F.R. § 1520.11(a). Members of the public, including civil litigants, do not have a regulatory need to know, unless they fall into the categories noted above. 49 C.F.R. §§ 1520.11, 1520.15(a).

3

TSA may authorize a conditional disclosure of specific SSI to a person who does not otherwise have a regulatory need to know "upon written determination by TSA that disclosure of such records or information . . . would not be detrimental to transportation security." 49 C.F.R. § 1520.15(e). TSA also grants access to prescribed groups of persons without a regulatory need to know, including members of Congress and persons who require access to specific SSI in order to respond to enforcement actions brought by the agency. 49 C.F.R. § 1520.15©, (d).

IV.   **Analysis**

Since its inception in the wake of the devastating attacks of September 11, 2001, TSA has placed stringent protections on SSI, as the agency has determined that it is in the best interests of the public to restrict, to the greatest extent possible, the dissemination of any information that could be used to thwart security countermeasures by those intent upon committing criminal acts against civil aviation. Since September 11, 2001, it has been the consistent policy of TSA that the present and continuing threat of terrorist attacks against aviation interests requires that the number of persons having access to SSI be significantly and continually decreased, rather than increased. TSA initially reached this conclusion in significant part because intelligence reports indicated that al-Qa'ida operatives have, through media sources and other publicly available research, obtained access to information concerning existing security vulnerabilities at American airports.

Current intelligence information indicates that the terrorist threat against civil transportation targets continues to be a grave and ongoing concern. Reports indicate that al-Qa'ida and other terrorist operatives continue to develop plans for catastrophic attacks against targets in the United States and against United States' interests overseas. Intelligence information demonstrates that terrorists actively seek to discover security methods and vulnerabilities they can exploit in planning future attacks against civil aviation.

This intelligence information is supported by the recent audiotape warnings issued by Usama Bin Ladin and Ayman Al-Zawahiri in January and March 2006, the deadly attacks carried out on the London subway and bus lines in July 2005, the Madrid subway bombings in March 2004, and the very real possibility of future (as yet undiscovered) plans for attacks on the United States.

TSA must assess the security risks inherent in granting the requested conditional disclosure by also considering the risk of granting all similar requests in all civil litigation involving SSI. SSI is at issue in dozens of civil lawsuits at any given time, including in lawsuits alleging discriminatory application of security requirements, employment actions, patent infringement, and personal injury. In each of these lawsuits, there is at least one attorney or party who seeks access to SSI for purposes of pursuing the litigation. If access in civil litigation is provided, the number of persons with access to SSI necessarily multiplies with each new lawsuit filed, and the likelihood of inadvertent or intentional release or other misuse of SSI grows exponentially. Importantly, TSA also cannot rule out the possibility that terrorists might seek

4

access to SSI by filing frivolous lawsuits and pursuing discovery, or that civil litigants might disclose SSI to terrorists. The agency cannot make meaningful security distinctions between civil litigants and has been unwilling to favor certain litigants over others based on the perceived importance of any particular litigation. Accordingly, consistent with its goal to reduce significantly the number of persons with access to SSI, since September 11, 2001, TSA has denied all requests to see SSI by civil litigants and/or their attorneys who do not otherwise have a need to know, as defined in 49 C.F.R. Part 1520.

### V.    Determination

I deny the instant request for conditional disclosure of SSI under 49 C.F.R. § 1520.15(e), as I do not find that such disclosure "would not be detrimental to transportation security."

This Order is issued under 49 U.S.C. § 114(s) and is final. Pursuant to 49 U.S.C. § 46110, any person disclosing a substantial interest in this Order may, within 60 days of its issuance, apply for review by filing a petition for review in an appropriate U.S Court of Appeals.

Date: 4/25/2006

Andrew Colsky
Director, SSI Office

5



Transportation
Security
Administration

Final Order on Requests for Identification of Sensitive Security Information
in Documents Responsive to Discovery in *Ware v. Hayakawa*, Civ. No. 04-00671 (D. Haw.)

I.    Requests for Identification of Sensitive Security Information (SSI)
      in Submitted Documents

In connection with *Ware v. Hayakawa*, Civ. No. 04-00671 (D. Haw.), the Transportation
Security Administration ("TSA") has reviewed documents responsive to discovery requests in
the above-captioned litigation in order to make a final determination as to whether they contain
SSI. Attorneys for Defendant TSA (hereinafter "Defendant Submittor") forwarded to TSA's SSI
Office 21 pages of documents (hereinafter "submitted documents") for review and final SSI
determination, as discussed herein.

II.    Delegation of Authority to Make Final SSI Determination

The authority to identify information pertaining to transportation security as SSI is
delegated to the Director of the SSI Office, pursuant to a delegation order signed by then Acting
Deputy Administrator, Kenneth Kasprisin, on April 29, 2005. This delegation order is in effect
as of the date of this Final Order and has not been amended.

III.    Review Process

Pursuant to 49 U.S.C. § 114(s) and 49 C.F.R. Part 1520, TSA's security experts carefully
reviewed each page of the submitted documents for the purpose of identifying SSI therein and
redacting the documents to delete SSI where possible. To minimize the impact on the litigation,
TSA's review withheld the minimum SSI material necessary to protect transportation security.

To that end, agency security and SSI experts performed multiple reviews of each
document. Each page was subjected to a line-by-line review for SSI, which review included
consultation with subject-matter experts, and reference to past precedents and open-source
(media and other public) information. For example, in order to ensure consistency in SSI
decision-making, and to ensure that no sensitive security information is inadvertently released,
TSA compared each document to the database it maintains of all documents that have been
reviewed previously for public release. TSA also paid particular attention to identifying any
older information that no longer needed to be protected, and TSA has authorized the disclosure
of all such information.

1

TSA's SSI determinations are based on the knowledge that the disclosure of even small pieces of seemingly innocuous information could be used by terrorists to construct a mosaic that can be analyzed and synthesized to reveal existing security measures and vulnerabilities. As provided in 49 C.F.R. Part 1520, only if a security countermeasure is obsolete, in that it will not be revived and therefore reveals nothing about current or future security countermeasures, or if security intelligence is overtaken by events, will information lose its SSI protection and be released publicly.

IV.    Final SSI Determination

TSA has completed its review of each document submitted by the Defendant Submittors, has identified SSI contained therein, if any, and has created redacted versions of the documents, where possible. The agency returned the submitted documents to the Defendant Submittor, together either with authorization to release the document as redacted or with instructions to withhold the document in full. The SSI Office has reviewed each submitted document, and I have determined that the withheld information is SSI, pursuant to 49 U.S.C. § 114(s) and 49 C.F.R. Part 1520.

The documents, as returned to the Defendant Submittor, are attached. As indicated on the attached pages, the redacted information constitutes SSI under 49 C.F.R. §§ 1520.5(b)(5), 1520.5(b)(8)(i), 1520.5(b)(9)(i), and 1520.5(b)(10).

V.    Final Order

This Order is issued under 49 U.S.C. § 114(s) and is final. Pursuant to 49 U.S.C. § 46110, any person disclosing a substantial interest in this Order may, within 60 days of its issuance, apply for review by filing a petition for review in an appropriate U.S. Court of Appeals.

Date:  4/25/2006

Andrew Colsky
Director, SSI Office

2

file:///C|/Documents%20and%20Settings/sara.hicks/Local%20Settings/Temp/EEO-Ware-03-Patdown-Retest%2001-09-06.html

| 0 | Employee | ware, raymond |
|---|----------|---------------|
| 0 | Score | 12 |
| 0 | Date | Nov 7 2003 12:00AM |
| 0 | Retest | Yes |
| 0 | Pass | No |
| 1 | Informs person and asks to divest; (offers private screening) | Meets Standard |
| 2 | Asks person to remove outer articles, belt, and shoes | Meets Standard |
| 3 | Tells person to take stance with arms stretched outward (slightly forward | Meets Standard |
| 4 | Position person facing his/her property | Meets Standard |
| 5 | Check head, collar, shoulder | Meets Standard |
| 6 | Screens ▮▮▮▮▮▮ using correct procedures; completes | Meets Standard |
| 6a | | |
| 6b | | 1520.5(b)(4)(i) |
| 6c | | |
| 6d | | |
| 7 | Screens ▮▮▮▮▮▮ using correct procedures; completes | Meets Standard |
| 7a | Ask to lower arms | |
| 7b | Pat down chest (females correctly) | |
| 7c | Pat down front | |
| 7d | Pat down front | |
| 7e | Crotch area | |
| 7f | Leg and Foot | |
| 8 | Asks person to sit down; pats down feet | Meets Standard |
| 9 | Refers shoes to further inspection (x-ry or examination) | Meets Standard |
| 10 | Communicates to person throughout process, explaining in clear and, conci | Meets Standard |
| 11 | Communicates with person in polite and respectful manner. | Meets Standard |
| 12 | When conducting the pat-down procedures uses back of hand in sensitive ar | Meets Standard |
| 13 | Finds Prohibited Item: | No |
| * | Please enter any additional comments: | Does not Meet Standard |
| a | Does not follow SOPs | No |
| b | Does not have ready familiarity of procedures | No |
| c | Too assertive when dealing with passenger | No |
| d | Too passive when dealing with passenger | No |
| e | Applies too much physical force with passengerr | No |
| f | Applies too little physical force with passenger | No |
| * | Please enter any additional comments: | Does not Meet Standard |
| g | Takes too much time performing function | No |
| h | Rushes through function | No |
| i | Does not proper actions with respect to prohibitive item found | No |
| j | Does not effectively explain regulations to passenger when prohibitive it | No |
| k | Does not exercise care when dealing with passengers' property | No |

file:///S/TSASharedFolders/COS/SSI/9000_Miscellaneous_Records/9895_Ware_v_Hayakawa/EEO-Ware-03-Patdown-Test%2001-09-06.htm

| 0 | Employee | ware, raymond | |
|---|---|---|---|
| 0 | Score | 7 | |
| 0 | Date | Nov 6 2003 12:00AM | |
| 0 | Retest | No | |
| 0 | Pass | No | |
| 1 | Informs person and asks to divest; (offers private screening) | Does not Meet Standard | |
| 2 | Asks person to remove outer articles, belt, and shoes | Does not Meet Standard | |
| 3 | Tells person to take stance with arms stretched outward (slightly forward | Meets Standard | |
| 4 | Position person facing his/her property | Meets Standard | |
| 5 | Check head, collar, shoulder | Does not Meet Standard | |
| 6 | Screens ███ using correct procedures; completes | Does not Meet Standard | |
| 6a | | Yes | |
| 6b | | No | |
| 6c | | Yes | 1520.5(b)(4)(i) |
| 6d | | No | |
| 7 | Screens ███ using correct procedures; completes | Does not Meet Standard | |
| 7a | Ask to lower arms | No | |
| 7b | Pat down chest (females correctly) | No | |
| 7c | Pat down front | No | |
| 7d | Pat down front | No | |
| 7e | Crotch area | Yes | |
| 7f | Leg and Foot | Yes | |
| 8 | Asks person to sit down; pats down feet | Meets Standard | |
| 9 | Refers shoes to further inspection (x-ry or examination) | Meets Standard | |
| 10 | Communicates to person throughout process, explaining in clear and, conci | Meets Standard | |
| 11 | Communicates with person in polite and respectful manner. | Meets Standard | |
| 12 | When conducting the pat-down procedures uses back of hand in sensitive ar | Meets Standard | |
| 13 | Finds Prohibited Item: | Yes | |
| * | Please enter any additional comments: | Does not Meet Standard | |
| a | Does not follow SOPs | Yes | |
| b | Does not have ready familiarity of procedures | Yes | |
| c | Too assertive when dealing with passenger | No | |
| d | Too passive when dealing with passenger | No | |
| e | Applies too much physical force with passengerr | No | |
| f | Applies too little physical force with passenger | No | |
| * | Please enter any additional comments: | Does not Meet Standard | |
| g | Takes too much time performing function | No | |
| h | Rushes through function | No | |
| i | Does not proper actions with respect to prohibitive item found | No | |
| j | Does not effectively explain regulations to passenger when prohibitive it | No | |
| k | Does not exercise care when dealing with passengers' property | No | |

file:///S/TSASharedFolders/COS/SSI/9000_Miscellaneous_R..._Ware_v_Hayakawa/EEO-Ware-03-Patdown-Test%2001-09-06.htm 2/10/2006 3:44:28 PM

file:///S)/TSASharedFolders/COS/SSI/9000_Miscellaneous_Records/9895_Ware_v_Hayakawa/EEO-Ware-03-ETD-Retest%2001-09-06.htm

| 0 | Employee | ware, raymond |
|---|---|---|
| 0 | Score | 11 |
| 0 | Date | Nov 7 2003 12:00AM |
| 0 | Retest | Yes |
| 0 | Pass | No |
| 1 | | Meets Standard |
| 2 | | Meets Standard |
| 3 | | Does not Meet Standard |
| 4 | | Meets Standard |
| 5 | | Meets Standard |
| 6 | | Meets Standard |
| 7 | | Does not Meet Standard |
| 8 | | Meets Standard |
| 9 | Electronic Items: Uses correct sampling procedures | Meets Standard |
| 9a | | 1520.5(b)(4)(i) |
| 9b | | |
| 9c | | |
| 10 | Inspects items for signs | Meets Standard |
| 11 | Communicates to person throughout process, explaining in clear and concis | Does not Meet Standard |
| 12 | Communicates with person in polite and respectful manner | Meets Standard |
| 13 | Thanks and offers passenger opportunity to repack bag/item | Meets Standard |
| 14 | Demonstrates correct bag control procedures | Meets Standard |
| * | Please enter any additional comments: | Does not Meet Standard |
| a | Does not follow SOPs | Yes |
| b | Does not have ready familiarity of procedures | No |
| c | Too assertive when dealing with passenger | No |
| d | Too passive when dealing with passenger | No |
| e | Applies too much physical force with passengerr | No |
| f | Applies too little physical force with passenger | No |
| * | Please enter any additional comments: | Does not Meet Standard |
| g | Takes too much time performing function | No |
| h | Rushes through function | No |
| i | Does not proper actions with respect to prohibitive item found | No |
| j | Does not effectively explain regulations to passenger when prohibitive it | No |
| k | Does not exercise care when dealing with passengers' property | No |

file:///S|/TSA/SharedFolders/COS/SSI/9000_Miscellaneous_Records/9895_Ware_v_Hayakawa/EEO-Ware-03-ETD-Test%2001-09-06.htm

| 0 | Employee | ware, raymond |
|---|---|---|
| 0 | Score | 9 |
| 0 | Date | Nov 6 2003 12:00AM |
| 0 | Retest | No |
| 0 | Pass | No |
| 1 | | Meets Standard |
| 2 | | Meets Standard |
| 3 | | Meets Standard |
| 4 | | Does not Meet Standard |
| 5 | | Meets Standard |
| 6 | | Does not Meet Standard |
| 7 | | Does not Meet Standard |
| 8 | | |
| 9 | Electronic Items: Uses correct sampling procedures | Does not Meet Standard |
| 9a | | No     1520.5(b)(1)(A) |
| 9b | | No |
| 9c | | Yes |
| 10 | Inspects items for signs | Meets Standard |
| 11 | Communicates to person throughout process, explaining in clear and concis | Meets Standard |
| 12 | Communicates with person in polite and respectful manner | Meets Standard |
| 13 | Thanks and offers passenger opportunity to repack bag/item | Meets Standard |
| 14 | Demonstrates correct bag control procedures | Meets Standard |
| * | Please enter any additional comments: | Does not Meet Standard |
| a | Does not follow SOPs | Yes |
| b | Does not have ready familiarity of procedures | No |
| c | Too assertive when dealing with passenger | No |
| d | Too passive when dealing with passenger | No |
| e | Applies too much physical force with passengerr | No |
| f | Applies too little physical force with passenger | No |
| * | Please enter any additional comments: | Does not Meet Standard |
| g | Takes too much time performing function | No |
| h | Rushes through function | No |
| i | Does not proper actions with respect to prohibitive item found | No |
| j | Does not effectively explain regulations to passenger when prohibitive it | No |
| k | Does not exercise care when dealing with passengers' property | No |

file:///S/TSA.SharedFolders/COS/SSI/9000_Miscellaneous_Records/9895_Ware_v_Hayakawa/EEO-Ware-03-HHMD1-Test%2001-09-06.htm

| 0 | Employee | ware, raymond |
|---|---|---|
| 0 | Score | 11 |
| 0 | Date | Nov 6 2003 12:00AM |
| 0 | Retest | No |
| 0 | Pass | No |
| 1 | Informs person of HHMD search | Meets Standard |
| 2 | Asks person to divest metallic items | Meets Standard |
| 3 | Asks person if there is anything on his/her person that may cause the HHM | Does not Meet Standard |
| 4 | Tests the HHMD before screening person | Meets Standard |
| 5 | Positions person facing his/her property §1520.5(b)(4)(i) | Meets Standard |
| 6 | Asks person to be seated | Does not Meet Standard |
| 7 | Hand wands footwear and removes if alarms | Does not Meet Standard |
| 8 | Hand wands feet without shoes | Does not Meet Standard |
| 9 | Asks person to stand with feet shoulder-width apart; arms outstretched | Meets Standard |
| 10 | Starts | Meets Standard |
| 11 | Uses correct HW | Does not Meet Standard |
| 12 | Hand wands between | Meets Standard |
| 13 | Wands          using correct procedures; completes | Does not Meet Standard |
| 13b | | No |
| 13c | | No |
| 13d | | No — 1520.5(b)(4) |
| 13e | | No |
| 13f | | No |
| 13g | | Yes |
| 13h | | No |
| 14 | Wands          correct procedures; completes | Does not Meet Standard |
| 14b | | No |
| 14c | | No |
| 14d | | No |
| 14e | | No |
| 14f |     Leg to the foot | Yes |
| 14g | | No |
| 15 | Informs and asks person to divest | Does not Meet Standard |
| 16 | Re-wands alarmed area ,if items are divested | |
| 17 | Informs and conducts pat-down | |
| 18 | On alarm, ask to | |
| 19 | | Meets Standard |
| 20 | Re-wand area | Meets Standard |
| 21 | On alarm, ask for | Does not Meet Standard |
| 22 | Correctly and completely performs step forward method | Does not Meet Standard |
| 22a | Screens front: asks person to step forward | No |
| 22b | HW | Yes |

file:///S/TSASharedFolders/COS/SSI/9000_Miscellaneous_Records/9895_Ware_v_Hayakawa/EEO-Ware-03-HHMD1-Test%2001-09-06.htm

| | | |
|---|---|---|
| 22c | Repeat with opposite leg: HW | Yes |
| 22d | Screens back: Ask the person to step forward | No |
| 22e | HW | No |
| 22f | Repeat with opposite leg. Ask the person to return to the original stance | No |
| 23 | Communicates to person throughout process, explaining in clear and concis | Meets Standard |
| 24 | Communicates with person in polite and respectful manner | Meets Standard |
| 25 | When conducting the ▮▮▮ pat-down procedures uses back of hand in sens | Does not Meet Standard |
| 26 | Finds prohibitive Item: | N/A |
| * | Please enter any additional comments: | Does not Meet Standard |
| a | Does not follow SOPs | Yes |
| b | Does not have ready familiarity of procedures | No (520.5(b)(4)(i) |
| c | Too assertive when dealing with passenger | No |
| d | Too passive when dealing with passenger | No |
| e | Applies too much physical force with passengerr | No |
| f | Applies too little physical force with passenger | No |
| * | Please enter any additional comments: | |
| g | Takes too much time performing function | No |
| h | Rushes through function | No |
| i | Does not proper actions with respect to prohibitive item found | No |
| j | Does not effectively explain regulations to passenger when prohibitive it | No |
| k | Does not exercise care when dealing with passengers' property | No |

file:///S|/TSASharedFolders/COS/SSI/9000_Miscellaneous_Records/9895_Ware_v_Hayakawa/EEO-Ware-03-HHMD2-Retest%2001-09-06_HTML.htm

| 0 | Employee | ware, raymond |
|---|---|---|
| 0 | Score | 22 |
| 0 | Date | Nov 7 2003 12:00AM |
| 0 | Retest | Yes |
| 0 | Pass | No |
| 1 | Informs person of HHMD search | Meets Standard |
| 2 | Asks person to divest metallic items | Meets Standard |
| 3 | Asks person if there is anything on his/her person that may cause the HH | Does not Meet Standard |
| 4 | Tests the HHMD before screening person | Meets Standard |
| 5 | Positions person facing his/her property    §1520.5(b)(4)(i) | Meets Standard |
| 6 | Asks person to be seated | Meets Standard |
| 7 | Hand wands footwear and removes if alarms | Meets Standard |
| 8 | Hand wands feet without shoes | Does not Meet Standard |
| 9 | Asks person to stand with feet shoulder-width apart; arms outstretched | Meets Standard |
| 10 | Starts | Meets Standard |
| 11 | Uses correct HW | Meets Standard |
| 12 | Hand wands between | Meets Standard |
| 13 | Wands          using correct procedures; completes | Meets Standard |
| 13b | | |
| 13c | | |
| 13d | | |
| 13e | | 1520.5(b)(4)(i) |
| 13f | | |
| 13g | | |
| 13h | | |
| 14 | Wands          correct procedures; completes | Meets Standard |
| 14b | | |
| 14c | | |
| 14d | | |
| 14e | | |
| 14f | Leg to the foot | |
| 14g | | |
| 15 | Informs and asks person to divest | Yes |
| 16 | Re-wands alarmed area,if items are divested | Meets Standard |
| 17 | Inform and conduct pat-down | Meets Standard |
| 18 | On alarm, ask to | Meets Standard |
| 19 | | Meets Standard |
| 20 | Re-wand area | Meets Standard |
| 21 | On alarm, ask for | Meets Standard |
| 22 | Correctly and completely performs step forward method | N/A |
| 22a | Screens front: asks person to step forward | |
| 22b | HW | |

file:///S/TSASharedFolders/COS/SSI/9000_Miscellaneous_Records/9895_Ware_v_Hayakawa/EEO-Ware-03-HHMD2-Retest%2001-09-06_HTML.htm

| 22c | Repeat with opposite leg: HW | |
|---|---|---|
| 22d | Screens back: Ask the person to step forward | |
| 22e | HW | |
| 22f | Repeat with opposite leg. Ask the person to return to the original stance | 1520.5(b)(4)(i) |
| 23 | Communicated to person throughout process, explaining in clear and concis | Meets Standard |
| 24 | Communicates with person in polite and respectful manner | Meets Standard |
| 25 | When conducting the ▮▮ pat-down procedures uses back of hand in sens | Meets Standard |
| 26 | Finds prohibitive Item: | No |
| * | Please enter any additional comments: | Does not Meet Standard |
| a | Does not follow SOPs | No |
| b | Does not have ready familiarity of procedures | No |
| c | Too assertive when dealing with passenger | No |
| d | Too passive when dealing with passenger | No |
| e | Applies too much physical force with passengerr | No |
| f | Applies too little physical force with passenger | No |
| * | Please enter any additional comments: | |
| g | Takes too much time performing function | No |
| h | Rushes through function | No |
| i | Does not proper actions with respect to prohibitive item found | No |
| j | Does not effectively explain regulations to passenger when prohibitive it | No |
| k | Does not exercise care when dealing with passengers' property | No |

Case 1:04-cv-00671-HG-LEK    Document 70-5    Filed 06/28/2006    Page 19 of 42

file:///S|/TSASharedFolders/COS/SSI/9000_Miscellaneous_Records/9895_Ware_v_Hayakawa/EEO-Ware-03-HHMD2-Test%2001-09-06_HTML.htm

| 0 | Employee | ware, raymond |
|---|---|---|
| 0 | Score | 17 |
| 0 | Date | Nov 6 2003 12:00AM |
| 0 | Retest | No |
| 0 | Pass | No |
| 1 | Informs person of HHMD search | Meets Standard |
| 2 | Asks person to divest metallic items | Does not Meet Standard |
| 3 | Asks person if there is anything on his/her person that may cause the HH | Does not Meet Standard |
| 4 | Tests the HHMD before screening person | Does not Meet Standard |
| 5 | Positions person facing his/her property | Meets Standard |
| 6 | Asks person to be seated                §1520.5(b)(4)(i) | Does not Meet Standard |
| 7 | Hand wands footwear and removes if alarms | Does not Meet Standard |
| 8 | Hand wands feet without shoes | Does not Meet Standard |
| 9 | Asks person to stand with feet shoulder-width apart; arms outstretched | Meets Standard |
| 10 | Starts | Meets Standard |
| 11 | Uses correct HW | Meets Standard |
| 12 | Hand wands between | Meets Standard |
| 13 | Wands          using correct procedures; completes | Meets Standard |
| 13b | | |
| 13c | | |
| 13d | | |
| 13e | | |
| 13f | | 1520.5(b)(i) |
| 13g | | |
| 13h | | |
| 14 | Wands          correct procedures; completes | Meets Standard |
| 14b | | |
| 14c | | |
| 14d | | |
| 14e | | |
| 14f | Leg to the foot | |
| 14g | | |
| 15 | Informs and asks person to divest | Yes |
| 16 | Re-wands alarmed area,if items are divested | Meets Standard |
| 17 | Inform and conduct pat-down | Meets Standard |
| 18 | On alarm, ask to | Meets Standard |
| 19 | | Does not Meet Standard |
| 20 | Re-wand area | Meets Standard |
| 21 | On alarm, ask for | Meets Standard |
| 22 | Correctly and completely performs step forward method | N/A |
| 22a | Screens front: asks person to step forward | |
| 22b | HW | |

file:///S/TSASharedFolders/COS/SSI/9000_Miscellaneous_Records/9895_Ware_v_Hayakawa/EEO-Ware-03-HHMD2-Test%2001-09-06_HTML.htm

| | | |
|---|---|---|
| 22c | Repeat with opposite leg: HW | 1520.5(b)(9)(i) |
| 22d | Screens back: Ask the person to step forward | |
| 22e | HW | |
| 22f | Repeat with opposite leg. Ask the person to return to the original stance | |
| 23 | Communicated to person throughout process, explaining in clear and concis | Meets Standard |
| 24 | Communicates with person in polite and respectful manner | Meets Standard |
| 25 | When conducting the ▮▮▮▮ pat-down procedures uses back of hand in sens | Meets Standard |
| 26 | Finds prohibitive Item: | Yes |
| * | Please enter any additional comments: | Does not Meet Standard |
| a | Does not follow SOPs | Yes |
| b | Does not have ready familiarity of procedures | Yes |
| c | Too assertive when dealing with passenger | No |
| d | Too passive when dealing with passenger | No |
| e | Applies too much physical force with passengerr | No |
| f | Applies too little physical force with passenger | No |
| * | Please enter any additional comments: | |
| g | Takes too much time performing function | No |
| h | Rushes through function | No |
| i | Does not proper actions with respect to prohibitive item found | No |
| j | Does not effectively explain regulations to passenger when prohibitive it | No |
| k | Does not exercise care when dealing with passengers' property | No |

Exhibit No. 

DAPHNE E. BARBEE    2911
Attorney At Law
1188 Bishop St., Suite 1909
Honolulu, Hawaii  96813
Telephone No.: (808) 533-0275

Attorney for Plaintiff

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 2 6 2005

at ___1___ o'clock and __00__ min. __V__ M
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| RAYMOND WARE, | ) CIVIL NO. 04-00671 HG LEK |
| | ) |
| Plaintiff, | ) FIRST AMENDED COMPLAINT; |
| | ) FIRST AMENDED SUMMONS |
| vs. | ) |
| | ) |
| SIDNEY HAYAKAWA, Director of | ) |
| Transportation Security Administration | ) |
| - Honolulu, KEN KAMAHELE, Deputy | ) |
| Director, Transportation Security | ) |
| Administration–Honolulu; | ) |
| TRANSPORTATION SECURITY | ) |
| ADMINISTRATION; THOMAS J. | ) |
| RIDGE, Secretary, Department  of | ) |
| Homeland Security,  DEPARTMENT | ) |
| OF HOMELAND SECURITY; | ) |
| LOCKHEED-MARTIN; JOHN DOES | ) |
| 2-5, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff RAYMOND WARE, by and through his

attorney, DAPHNE E. BARBEE  and complains against the above-named

Defendants as follows:

## PARTIES

1.      Plaintiff is an African-American male and is a resident of the State of

Hawaii, residing in Honolulu, Hawaii.

2.      Defendant SIDNEY HAYAKAWA is the TSA Security Director in

Honolulu at all times relevant herein and is sued in his official capacity.

3.      Defendant KEN KAMAHELE is the Deputy Federal Security Director

for TSA Honolulu and is sued in his official capacity.

4.      Defendant TRANSPORTATION SECURITY ADMINISTRATION

(TSA) is a federal agency which  at all times alleged employed more than forty (40)

federal employees in Honolulu, Hawaii.

5.      At all times relevant herein, Defendant DEPARTMENT OF

HOMELAND SECURITY ("DHS") is situated in Washington, D.C., and from on

or about March 1, 2003, is the Federal Agency which enables and empowers the

Federal TRANSPORTATION SECURITY ADMINISTRATION (TSA)for its

2

operations in providing airport security in the State of Hawaii, and at all times alleged herein employed more than forty (40) Federal employees.

6.    Defendant THOMAS J. RIDGE is the Secretary of Defendant DEPARTMENT OF HOMELAND SECURITY, and is named herein in his official capacity.

7.    Defendant LOCKHEED-MARTIN is substituted for John Doe 1 in the original Complaint. Said Defendant is sued in its official capacity, and is a company which does business in Hawaii and worked in concert with Defendant TSA to deprive Plaintiff of his civil rights.

8.    Plaintiff is ignorant of the true names and capacities of John Does 2-5 sued herein as Doe Defendants and therefore sue said Defendants by such fictitious names. Plaintiff will amend his Complaint to allege their true names and thereon allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages, as herein alleged, were proximately caused by their conduct. Plaintiff has made good faith and diligent efforts to identify said Defendants. Plaintiff alleges that at all times herein, Defendants and each of them were agents, servants, employees, contractors with other named Defendants herein and were acting with permission and consent of said agency and employment.

3

9.    At all times relevant herein, named Defendants acted under color of

Federal law. Defendants' conduct was reckless, willful, intentional, and deliberately

indifferent to the rights and protections of Plaintiff.

### JURISDICTION

10.    Jurisdiction of this action is proper in this Court under Title VII of the

Civil Rights Act as amended, 42 U.S.C. Sec. Sec. 2000e et seq. and 28 U.S.C. Sec.

1331.

11.    Plaintiff has complied with all the jurisdictional requirements to this

action as follows:

Plaintiff has filed this action after 180 days from filing of a formal EEO

complaint with the federal agency and after 60 days from requesting a final agency

decision and right to sue. 29 CFR 1614.407.

### VENUE

12.    Venue of this action is proper in this Court and district pursuant to 42

U.S.C. Sec. 2000e and 28 U.S.C. § 1391(b)(2) and (c) in that the events, acts, and

omissions giving rise to Plaintiff's claims herein are in Honolulu, Hawaii.

4

## FACTS

13.     Plaintiff Raymond Ware was employed at TSA Honolulu as a Checkpoint Screening Supervisor, from May 2002 to November 25, 2003, when he was terminated.

14.     At all times relevant to this action, Title VII of the Civil Rights Act was in full force and effect in the United States and applied to Federal agencies.

15.     Defendant TSA treated Plaintiff differently from other non African American employees by not assigning him as a rotating screening manager from October 2002 through February 2003 and not giving him training even though other non African American screening supervisors were selected as  rotating screening managers and given training.

16.     In May 2003, Plaintiff applied for a promotion as a screening manager at TSA Honolulu.

17.     In May 2003 Plaintiff filed an informal EEO complaint with TSA alleging Defendants discriminated against him on the basis of race when they did not select him  for promotion and for rotating screening manager.

18.     On June 15, 2003, Defendant TSA selected four screening supervisors who were  not African Americans  for the vacant screening manager positions.

5

19.    On August 19, 2003, Plaintiff filed a formal EEO complaint of discrimination against Defendant.

20.    Plaintiff applied for another promotion vacant position as screening manager in August 2003.

21.    On August 19, 2003, Plaintiff filed a formal EEO complaint of discrimination against Defendant.

22.    On September 8, 2003, Defendant TSA denied Plaintiff the promotion and selected non African Americans screeners to the vacant positions as screening manager.

23.    On September 9, 2003, Plaintiff wrote to Defendant Hayakawa expressing his belief that he was not promoted based upon discrimination, retaliation and requested reasons why he was not selected for promotion.

24.    Plaintiff amended his EEO complaint on September 5, 2003 to include retaliation and discrimination on the basis of race by Defendants.

25.    After amending his EEO complaint, Plaintiff met with Defendant Hayakawa who referred him to Defendant Kamahele as the person who made hiring decisions.

26.    Plaintiff met with Defendant Kamahele on October 2, 2003, and he was told for the first time that there were complaints in his personnel file.

6

27.    Plaintiff's last and only work evaluation at Defendant TSA was rated as "outstanding."

28.    After meeting with Defendants Hayakawa and Kamahele,and after filing EEO complaints, Plaintiff was told he had to undergo a re-certification test.

29.Defendant TSA contracted with Defendant LOCKHEED-MARTIN to administer and conduct recertification tests to Honolulu TSA screeners.

30.    In October 2003, Plaintiff completed the recertification test administered by employees of Defendant LOCKHEED-MARTIN, Defendants John Does 2 and 3, at the premises of the Honolulu Airport.

31.    Plaintiff was told by Defendant TSA that he did not pass the recertification test and was terminated November 25, 2003.

32.    Plaintiff asked for test results and facts from Defendants TSA and Lockheed- Martin, for proof showing  how and in what manner he failed the recertification test. Defendants refused his requests for the test result information claiming it was privileged.

33.    Plaintiff believes he was terminated by Defendant TSA in retaliation for complaining of race discrimination  and that the test results were not accurate reflections of his ability to screen passengers at Honolulu Air Port.

34.    Defendant TSA treated non-African American employees better in that

7

other screeners and screening supervisors were not required to take recertification

tests by Defendant Lockheed-Martin, were given promotional opportunities, were

not targeted and smeared with false complaints in their personnel file, and were not

terminated for failing the recertification test.

35.    The acts and conduct of Defendants created a hostile and offensive

work environment in violation of Title VII of the Civil Rights Act, as amended.

36.    As a direct result of the discriminatory acts of Defendants, Plaintiff has

suffered grievous harm including but not limited to substantial loss of income and

employment benefits, and emotional distress.

## COUNT I

## PLAINTIFF'S CLAIM OF RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

37.    The facts, statements, and allegations contained in paragraphs 1

through 36 of this Complaint are hereby reaverred and reaffirmed in every particular

and expressly incorporated herein by reference.

38.    Defendant TSA Honolulu treated non-African American screening

supervisors who were similarly situated as Plaintiff better in that they were granted

promotions, training, were not required to take the recertification test and/or were

not terminated for failing the re-certification test.

39.    In denying Plaintiff promotions and then subsequently terminating him, Defendants TSA Honolulu and LOCKHEED-MARTIN violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 and intentionally discriminated against him because of his race, African American.

## COUNT II

40.  The facts, statements, and allegations contained in paragraphs 1 through 39 of this Complaint are hereby reaverred and reaffirmed in every particular and expressly incorporated herein by reference.

41.  The manner in which    Defendant Lockheed-Martin conducted the recertification test on Plaintiff and the manner in which the result was calculated was discriminatory on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 because of Plaintiff's race, African American.

## **COUNT III**

## **RETALIATION**

42.    The facts, statements, and allegations contained in paragraphs 1 through 41 of this Complaint are hereby reaverred and reaffirmed in every particular and expressly incorporated herein by reference.

43.    Defendant's discriminatory acts and termination of Plaintiff was in retaliation for Plaintiff's opposing and complaining about discriminatory practices in violation of Sec.704 (a) of Title VII of the Civil Rights Act of 1964 , 42 U.S.C. Sec. 2000e-3(a).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant in the following particulars:

(a)    Compensatory damages in the amount not to exceed $300,000.00 for each Count;

(b)    Punitive damages in an amount not to exceed $300,000.00 for each Count;

(c)    Injunctive relief against Defendant and an order of reinstatement for plaintiff;

10

(d)    For the modification or elimination of practices, policies, customs and usages set forth herein and all of the practices shown to be in violation of applicable law so they do not discriminate on the race;

(e)    Compensating Plaintiff for all earnings, wages, special damages and other benefits he would have received but for the discriminating practices of Defendant;

(f)    Plaintiff's costs and expenses of this litigation, including reasonable attorney's fees as allowed by law; and

(g)    Such further relief which this Court, in its discretion, deems proper.

A demand for jury trial was made in the original Complaint filed herein.

DATED:  Honolulu, Hawaii, _____2-26-05_____.


_____
DAPHNE E. BARBEE
Attorney for Plaintiff

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of HAWAII

RAYMOND WARE,

          Plaintiff,

      V.

SIDNEY HAYAKAWA, Director of
Transportation Security Admin.-Hon.,
KEN KAMAHELE, Deputy Dir.,
Trans. Sec. Admin.-Hon.;
TRANSPORTATION SECURITY ADMINI-
STRATION; THOMAS J. RIDGE, Sec.,
Dept. of Homeland Security;
DEPT. OF HOMELAND SECURITY;
LOCKHEED-MARTIN; JOHN DOES 2-5,
            Defendants.

**FIRST AMENDED**
**SUMMONS IN A CIVIL CASE**

CASE NUMBER:  04-00671 HG LEK

TO: (Name and address of Defendant)

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

DAPHNE E. BARBEE    2911
Attorney At Law
1188 Bishop St., Suite 1909
Honolulu, Hawaii 96813
Telephone (808) 533-0275

An answer to the first amended complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the first amended complaint. Any answer that you serve on the parties to this action be filed with the Clerk of this Court within a reasonable period of time after service.

SUE BEITIA

JUL 2 6 2005

CLERK

/s/ Drew Tomimoto

DATE

(By) DEPUTY CLERK

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was duly served upon the following party at their last-known address by means of hand delivery, on _____6 - 22 - 06_____ .

THOMAS A. HELPER, ESQ.
Assistant U.S. Attorney
Rm. 6-100, Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii  96850
Attorney for Responding Agency

DATED:  Honolulu, Hawaii, _____6 · 22 - 0 6_____ .


_____
DAPHNE E. BARBEE
Attorney for Plaintiff

**Exhibit No.**  4



**DAPHNE E. BARBEE**

ATTORNEY AT LAW

1188 BISHOP STREET, SUITE 1909, HONOLULU, HAWAII 96813
TELEPHONE (808) 533-0275

March 16, 2006

Thomas A. Helper, Esq.
Assistant U.S. Attorney
PJKK Federal Building
300 Ala Moana Blvd., Rm. 6-100
Honolulu, Hawaii  96850

      **Re:**    **Ware v. Hayakawa, et al.**
              **Civil No. 04-00671 HG-LEK**
              **DISCOVERY**

Dear Mr. Helper:

        We are requesting discovery of the personnel files for the following employees who were given a promotion to the position of Screening Manager. The names of the employees who were selected for promotion in June 2003 are Warren Kadakawa, Danny Cappo, Edward Morrin, and William Waters.  (See F-10, EEO Investigative Report) These individuals' personnel files were not made available for review yet.  This was an issue in my client's underlying EEO complaint at page 2 of the EEO investigation.  My client alleged he was passed over for Screening Manager in June 2003 as well as September 2003.

        We also request the personnel files of all persons itemized under F-10, page 48, overview of 2-year record of Screening Manager by rates beginning with December 3, 2002 up through October 19, 2003, S-10 G48 in the investigative files.  My client alleges he was passed over for Screening Manager in June 2003 as well as September 2003.

        Please contact me when the personnel files are available for review.

        Sincerely,

        DAPHNE E. BARBEE
        Attorney at Law

DEB:kc
cc: Mr. Ware

other screeners and screening supervisors were not required to take recertification

tests by Defendant Lockheed-Martin, were given promotional opportunities, were

not targeted and smeared with false complaints in their personnel file, and were not

terminated for failing the recertification test.

35.    The acts and conduct of Defendants created a hostile and offensive

work environment in violation of Title VII of the Civil Rights Act, as amended.

36.    As a direct result of the discriminatory acts of Defendants, Plaintiff has

suffered grievous harm including but not limited to substantial loss of income and

employment benefits, and emotional distress.

## COUNT I

## PLAINTIFF'S CLAIM OF RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

37.    The facts, statements, and allegations contained in paragraphs 1

through 36 of this Complaint are hereby reaverred and reaffirmed in every particular

and expressly incorporated herein by reference.

38.    Defendant TSA Honolulu treated non-African American screening

supervisors who were similarly situated as Plaintiff better in that they were granted

promotions, training, were not required to take the recertification test and/or were

not terminated for failing the re-certification test.

39.    In denying Plaintiff promotions and then subsequently terminating him, Defendants TSA Honolulu and LOCKHEED-MARTIN violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 and intentionally discriminated against him because of his race, African American.

## COUNT II

40.  The facts, statements, and allegations contained in paragraphs 1 through 39 of this Complaint are hereby reaverred and reaffirmed in every particular and expressly incorporated herein by reference.

41.  The manner in which    Defendant Lockheed-Martin conducted the recertification test on Plaintiff and the manner in which the result was calculated was discriminatory on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 because of Plaintiff's race, African American.

## COUNT III

## RETALIATION

42.    The facts, statements, and allegations contained in paragraphs 1 through 41 of this Complaint are hereby reaverred and reaffirmed in every particular and expressly incorporated herein by reference.

43.    Defendant's discriminatory acts and termination of Plaintiff was in

retaliation for Plaintiff's opposing and complaining about discriminatory practices

in violation of  Sec.704 (a) of Title VII of the Civil Rights Act of 1964 , 42 U.S.C.

Sec. 2000e-3(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant in the

following particulars:

(a)    Compensatory damages in the amount not to exceed $300,000.00 for

each Count;

(b)    Punitive damages in an amount not to exceed $300,000.00 for each

Count;

(c)    Injunctive relief against Defendant and an order of reinstatement for

plaintiff;

(d)     For the modification or elimination of practices, policies, customs and usages set forth herein and all of the practices shown to be in violation of applicable law so they do not discriminate on the race;

(e)     Compensating Plaintiff for all earnings, wages, special damages and other benefits he would have received but for the discriminating practices of Defendant;

(f)     Plaintiff's costs and expenses of this litigation, including reasonable attorney's fees as allowed by law; and

(g)     Such further relief which this Court, in its discretion, deems proper.

A demand for jury trial was made in the original Complaint filed herein.

DATED:  Honolulu, Hawaii, ___2-26-05_____

_____
DAPHNE E. BARBEE
Attorney for Plaintiff

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of HAWAII

RAYMOND WARE,

        Plaintiff,

V.

SIDNEY HAYAKAWA, Director of
Transportation Security Admin.-Hon.,
KEN KAMAHELE, Deputy Dir.,
Trans. Sec. Admin.-Hon.;
TRANSPORTATION SECURITY ADMINI-
STRATION; THOMAS J. RIDGE, Sec.,
Dept. of Homeland Security;
DEPT. OF HOMELAND SECURITY;
LOCKHEED-MARTIN; JOHN DOES 2-5,

             Defendants.

**FIRST AMENDED
SUMMONS IN A CIVIL CASE**

CASE NUMBER:  04-00671 HG LEK

TO: (Name and address of Defendant)

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

DAPHNE E. BARBEE    2911
Attorney At Law
1188 Bishop St., Suite 1909
Honolulu, Hawaii  96813
Telephone (808) 533-0275

An answer to the first amended complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the first amended complaint. Any answer that you serve on the parties to this action be filed with the Clerk of this Court within a reasonable period of time after service.

SUE BEITIA

JUL 2 6 2005

CLERK

/s/ Drew Tomimoto

(By) DEPUTY CLERK

DATE

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was duly served upon the following party at their last-known address by means of hand delivery, on ___6 - 22 - 06___.

THOMAS A. HELPER, ESQ.
Assistant U.S. Attorney
Rm. 6-100, Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Attorney for Responding Agency

DATED: Honolulu, Hawaii, ___6 - 22 - 06___.

_____
DAPHNE E. BARBEE
Attorney for Plaintiff