DAPHNE E. BARBEE   2911
Attorney & Counselor at Law
Century Square, Suite 1909
1188 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 533-0275

**ORIGINAL**

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 2 8 2006

at [ ] o'clock and [ ] min. [ ] M
SUE BEITIA, CLERK

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RAYMOND WARE, ) | CIVIL NO. 04-00671 HG/LEK |
| ) | |
| Plaintiff, ) | **PLAINTIFF'S MEMORANDUM IN** |
| ) | **OPPOSITION TO FEDERAL** |
| vs. ) | **DEFENDANTS' MOTION TO** |
| ) | **DISMISS AND FOR SUMMARY** |
| ) | **JUDGMENT; CERTIFICATE OF** |
| SIDNEY HAYAKAWA, Director ) | **SERVICE** |
| of Transportation Security ) | |
| Administration - Honolulu, KEN ) | |
| KAMAHELE, Deputy Director, ) | |
| Transportation Security ) | **DATE:    September 18, 2006** |
| Administration–Honolulu; ) | |
| TRANSPORTATION SECURITY ) | **TIME:    9:45 a.m.** |
| ADMINISTRATION; THOMAS J. ) | |
| RIDGE, Secretary, Department of ) | **JUDGE:   Hon. Helen Gillmor** |
| Homeland Security, DEPARTMENT ) | |
| OF HOMELAND SECURITY; ) | |
| JOHN DOES 2-5, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## TABLE OF AUTHORITIES

PAGE

## CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)................... 9

Arogon v. Republic Silver Disposal, Inc., 292 F.3d 654 (9th Cir. 2002)...... 10

Bank Melli Iran v. Pahlavi, 58 F. 3rd 1406 (9th Cir. 1995)............... 16

Carmichael v. Birmingham Saw Works, 738 F.2d 1126 (11th Cir. 1984) ..... 14

Cleveland Bd of Education v. Loudermill, 470 U.S. 532 (1985)........... 20

Columbia Pictures Indus. Inc. v. Professional Real Estate Inv., Inc.,
   944 F. 2d 1525, 1529 (9th Cir. 1991) aff'd, 508 U.S. 49 (1993)........... 16

Cordova v. State Farms Inc. Cos., 124 F.3d 1145 (9th Cir. 1997)........... 12

EEOC v. Crown Zellerbach Corp. 720 F. 2d 1008 (9th Cir. 1994) .......... 18

Fadhl v. City and County of San Francisco, 741 F.2d 1163 (9th Cir. 1984).... 13

Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220-22 (9th Cir. 1998)...... 14

Grover v. Speedway Super America, LLC, 254 F. Supp. 2nd 695 (S. D. Ohio) .21

Hashimoto v. Dalton, 118 F.3d 671 (9th Cir. 1997)...................... 18

Hamdi v. Rumsfeld, 542 U.S. 507 (2004) ............................. 20

Hepting v. AT&T, USDC San Francisco, No. 066-06-671 (July 2006)....... 20

Jones v. Firestone Tire & Rubber Co., 977 F.2d 527 (11th Cir. 1992) ....... 13

i

Kassaye v. Bryant College, 999 F.2d 603 (1st Cir. 1993) . . . . . . . . . . . . . . . . . . 9

Lockridge v. Bd . of Trustees of the Univ. of Ark., 294 F.3d 1010 (8th Cir. 2002).13

Lujan v. National Wildlife Fed'n, 497 U.S. 871 (1990). . . . . . . . . . . . . . . . . . . .16

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). . . . . . . . . . . . . . . . .12

Miller v. Fairchild Industries, Inc., 885 F.2d 498, 505 (9th Cir. 1989). . . . . . . . . .19

O'Rourke v. City of Providence, 235 F.3d 713 (1st Cir. 2001). . . . . . . . . . . . . . 9

Payne v. Norwest Corp., 113 F. 3d 1079, 1080 (9th Cir. 1997) . . . . . . . . . . . . . .19

Pilgrim v. Trustees of Tufts College, 118 F.3d 864(1st Cir. 1997). . . . . . . . . . . . 9

Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). . . . . . . . . . . . . . . . . . . . . . 13

Reeves v. Sanderson Plumbing Products, Inc., 520 U.S. 132 (2000). . . . . . . 10, 11

Sicsho- Nowvejad v. Merced Community College, 934 F. 2d 1104 (9th Cir. 1991)11

Shirley v. Chrysler First, Inc., 970 F. 2d 39 (5th Cir. 1992). . . . . . . . . . . . . . . . 19

St. John v. Employment Development Dept., 642 F.2d 273 (9th Cir.1981 ). . . . . 19

Stone v. FDIC, 179 F.3d 1368 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Texas Dpt. of Community Affairs v. Burdine, 450 U.S.248  (1981). . . . . . . . . . 10

Wallis v. J.R. Simplot Co., 26 F.3d 885 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . 11

Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346 (9th Cir. 1984). . . . . . 18

U.S. CONSTITUTION

U.S. Constitution, 5ᵗʰ Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

STATUTES

Sec. 704(a) of Title VII, Civil Rights Act of 1964 . . . . . . . . . . . . . . . . . . . . 17

29 C.F.R. Sec. 1607.16(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

42 U.S.C. Sec. 20003-2(k)(1)(A)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

 49 C.F.R. part 1520. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20


RULES

Federal Rules of Civil Procedure:

Rule 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rule 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

TABLE OF CONTENTS

PAGE

COUNTER STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . 2

I. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I. DISMISSAL OF FEDERAL DEFENDANTS HAYAKAWA . . . . . . 8
    AND KAMAHELE

II.  PLAINTIFF DID NOT FAIL TO EXHAUST HIS . . . . . . . . . . . . 8
    ADMINISTRATIVE REMEDIES AS TO THE ROTATING
    SCREENING MANAGER POSITION

III. THE COURT SHOULD DENY SUMMARY JUDGMENT . . . . . . 9
    AS TO DEFENDANTS ON ALL OTHER PERSONNEL ACTIONS

    A.    Legal Standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B.    Plaintiff Has Established a Prima Facie Case of
        Race Discrimination.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        i.    Failure To Promote, Train, Place In Rotating
            Screening Manager Position.  . . . . . . . . . . . . . . . . . 10

        ii.    Retaliation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

iv

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO FEDERAL DEFENDANTS' MOTION TO
## <u>DISMISS AND FOR SUMMARY JUDGMENT</u>

Plaintiff RAYMOND E. WARE submits the following Memorandum

In Opposition To Federal Defendants' Motion To Dismiss and For Summary

Judgment.

### <u>COUNTER STATEMENT OF FACTS</u>

Plaintiff worked as a Mobile Screening supervisor out of Washington D.C.

before being hired in Honolulu Transportation Security Administration (TSA). Once

Plaintiff arrived at TSA Honolulu in September 2002, he was told the Mobile

screening supervisors would be given rotating screening manager assignments to

access their managerial skills and to be considered for promotion  to Screening

manager. Plaintiff is African American.  He is a former police detective from Detroit

and San Antonio, Texas.  See <u>Ware Decl., Exhibit 1</u>.

While at the Honolulu TSA, plaintiff experienced discrimination in terms and

condition of employment. Unlike other non African American screening supervisors

he was not  placed in the rotating screening manager position, not  given training, he

was involuntarily transferred to Hawaiian Airlines checkpoint, and he was not

selected or considered for promotion to Screening Manager ( six vacant positions) in

June 2003 and for three Screening Manager positions in September 2003.  For the

2

June 2003 Screening Manager positions, five of the six persons  hired by Mr. Kamahele previously worked for AKAL, the contractor which previously held the screening contract at Honolulu Airport.   For the September 2003 Screening Manager positions, Plaintiff had equivalent experience with prior law enforcement and had the added plus of being a Mobile Supervisor Screener.   None of the selected Screening Managers were African Americans or had prior screening manager experience.

Defendant argues that for the six vacancies in June 2003, six former FAA Aviation Security Inspectors transferred  to TSA for temporary hires.  Reviewing the applications and resume of the six hires reveal this is not true.  One of the six had no prior airport screening experience and was not a FAA Inspector. See Decl. of Counsel, Exhibit 19. All six became permanent TSA Screening Managers.

Plaintiff filed an informal EEO complaint June 23, 2003.  See Ware Decl., Exhibit 2 . His informal complaint of race discrimination was filed as a final complaint on August 19, 2003. See Ware Declaration, Exhibit 2 .

While Mr. Ware's EEO complaint was being investigated, Plaintiff met with Mr. Hayakawa, Director of Honolulu TSA on September 3, 2003  to discuss his concerns of discrimination and his desire to be promoted.   Mr. Hayakawa told him to speak with Mr. Kamahele, Deputy Director for TSA Honolulu.  Plaintiff wrote to

3

Mr. Hayakawa to confirm his meeting. See <u>Ware Decl, Exhibit 5,6</u> . After the
meeting, Plaintiff learned he was again not selected for promotion to Screening
Manager (for the three September 2003 vacancies) and not selected for rotating
Screening Manager again. He filed another EEO complaint on September 5, 2003
to include these adverse actions. See <u>Ware Decl. Exhibit 3.</u> Plaintiff received a
letter from Mr. Hayakawa acknowledging his previous meeting. <u>Ware Decl. Exhibit
7.</u>

Plaintiff requested to meet with Mr. Kamahele. See <u>Ware Decl., Ex.6.</u> In
October 2003 Mr. Kamahele finally agreed to meet Mr. Ware. See <u>Ware Decl.</u>
Before this meeting and after Mr. Ware complained of discrimination to Mr.
Hayakawa and the EEO office, letters were requested from two screening managers
about Mr. Ware. See <u>Ware Decl. Exhibit 4 .</u> At the October 2003 meeting with
Mr. Kamahele Plaintiff was told for the first time that there were complaints in his
personnel file. The complaints were used as a reason why Plaintiff was not
promoted.

Plaintiff disputes the veracity of the complaints. See <u>Ware Decl.</u> Complaints
written were not given to Plaintiff to respond to and related to incidents in 2002
which Mr. Ware was not aware of, and did not occur. Significantly, the only job

4

performance rating Plaintiff had as a supervisor screener was " far exceeds." See Ware Decl. Exhibit 8 .

While Plaintiff's EEO complaints were being investigated, TSA Honolulu scheduled a recertification test for screeners. On November 6, 2003, plaintiff was given the test by two persons he thought were TSA employees. Plaintiff passed the written portions practical skills, hands on portion of the test. He was told by the two unknown, unidentified testers he failed the hands on test portion. When plaintiff asked in what manner he failed, he was not told. The next day plaintiff took the test again. He was again told he failed.   Before being fired, plaintiff asked for information on the manner in which he failed.  Defendant Hayakawa first told Plaintiff he failed three parts which was then later changed to two parts. See Ware Declaration.  He was given a pass fail sheet. See Ware Decl. Ex 13.  When he requested to see the test results and criteria for grading, the data was not presented to him.   Plaintiff disputed the test results and requested an opportunity to see the results.  See Decl. of Counsel Ex. 25 . Plaintiff found a knife during the patdown test which Defendant alleges he failed.  Plaintiff wants proof that he was fairly tested by objective standards and that Defendant follow Constitutional due process requirement by notifying him the manner in which he failed the recertification test.

Defendant refused Plaintiff's request to see the results and grading criteria and terminated Plaintiff effective November 26, 2003 See Ware Decl., Exh 11 .

According to Defendant, two other Supervising screeners failed the test. Plaintiff is aware that the other two Screening supervisors who failed the test, Mr. Hennesy and Mr. Kidani were not terminated. Only Mr. Ware was terminated. See Ware Decl. Plaintiff filed another EEO complaint based upon his termination. See Ware Decl. Exhibit .17 .

As part of discovery requests, plaintiff wanted copies of the recertification practical hands on recertifcation test result and grading criteria.    In response to discovery Defendants presented a chart showing a percentage pass rate instead of pass fail. See Ware Decl., Exhibit 14 .   The recertification test and results and criteria were not produced as discovery. Defendant's allege the recertification test results for Plaintiff is Sensitive Security Information (SSI) and privilege.   Plaintiff filed a Motion to Compel Discovery. At the Motion to Compel hearing, the Magistrate Judge ordered Defendant produce a privilege log.

Defendant turned over recertification test result documents with "blacked out "portions making the document undecipherable. See Ware Decl., Exhibit 15. Plaintiff filed a Second Motion to Compel Discovery because the blacked out test results did not comply with Rule 26 FRCP and Constitutional due process.

6

In response to Plaintiff's Second Motion to Compel discovery,

Defendant TSA, issued an Order dated 4-25-06, signed by Andrew Cosly, Director

of SSI Office, refusing to turn over additional documents as "the withheld

information is SSI pursuant to 49 U.S. C. Sec. 114(s)and 49 C.F.R. Part 1520." See

Decla. of Counsel, Exhibit 21 .  The Magistrate Judge denied Plaintiff's  Second

Motion to Compel.

Plaintiff still does not know who performed the hands on test or the grading

criteria. Defendant originally stated that Lockheed Martin Employees were

contracted to give the recertification test in Honolulu to TSA employees.

Subsequent to Plaintiff's Motion to Compel, Defendant's acknowledge they do not

know who the testers are and which contractor company performed the test. Decl.

of Counsel, Exh.22.

An appeal of the Motion to Compel is pending before this Court.

A Ninth Circuit Appeal of the TSA Agency's decision not to turn over the

Recertifcation test results and grading criteria is pending. See Ware Declaration.

Plaintiff requested a FRCP Rule 56(f) continuance which was granted up

through September 18, 2006. Plaintiff has not yet received the Recertifcation test

results or grading criteria from defendant. Plaintiff requests this Court order full

discovery of the test results and grading criteria so Plaintiff can review the results

7

prior to trial and before summary judgement is decided. These documents are

needed to establish defendant's reason for termination are pretextual and to disprove

defendant's defense that Plaintiff failed this portion of the recertifcation test.

## I.    ARGUMENT

## 1. DISMISSAL OF FEDERAL DEFENDANTS HAYAKAWA
## AND KAMAHELE

       Plaintiff has not sued HAYAKAWA, KAMAHELE, and Secretary

Chertoff in their individual capacities, but rather in their official capacities. Insofar

as Defendants are arguing that Defendants should be dismissed in individual

capacities, Plaintiff has no objection and did not sue them in individual capacities.

As Michael Chertoff is now the Secretary for the DEPARTMENT OF

HOMELAND SECURITY, Plaintiff has no objection to substituting him in lieu of

Thomas Ridge, former Secretary of the DEPARTMENT OF HOMELAND

SECURITY.

## II.    PLAINTIFF DID NOT FAIL TO EXHAUST HIS
## ADMINISTRATIVE REMEDIES AS TO THE ROTATING
## SCREENING MANAGER POSITION

       Defendants argue that the Rotating Screening Manager position ended

in February 2003. However, this is incorrect. The Rotating Screening Manager

position went all the way through September 6, 2003. See Ware Declaration

Exhibit "3" attached thereto. Plaintiff was never placed in the Rotating Screening Manager up through September 6, 2003.

Where a Title VII violation is "of a continuing nature, the charge of discrimination filed ... may be timely as to all discriminatory acts encompassed by the violation so long as the charge is filed during the life of the violation or within the statutory period." Pilgrim v. Trustees of Tufts College, 118 F.3d 864, 868 (1st Cir. 1997) (quoting Kassaye v. Bryant College, 999 F.2d 603, 606 (1st Cir. 1993)) and O'Rourke v. City of Providence, 235 F.3d 713 (1st Cir. 2001) (discusses the applicability of continuing violation doctrine where discriminatory conduct is ongoing).

Plaintiff's EEO complaint was timely, within 45 days of September 6, 2003. Defendant's continual refusal to place Plaintiff in a rotating manager position was a continuous violation. Therefore, this portion of Plaintiff's Complaint should not be dismissed as untimely.

## III. THE COURT SHOULD DENY SUMMARY JUDGMENT AS TO DEFENDANTS ON ALL OTHER PERSONNEL ACTIONS

### A.    Legal Standards.

Under Federal Rules of Civil Procedure, Rule 56(f), summary judgment should be granted only if there "is no genuine issue of material fact and the moving party is entitled to judgment as a matter under law." See Anderson v.

9

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). In deciding whether the moving party
has proven there are no material facts or disputes to prevent summary judgment, the
court must regard the facts asserted by the non-moving party through affidavits,
declarations, and evidence as to resolve any doubt in that party's favor. <u>See</u>
<u>Reeves v. Anderson Plumbing Products, Inc.</u>, 520 U.S. 132, 150 (2000). The
requisite degree of proof necessary to establish a <u>prima</u> <u>facie</u> case for Title VII on
summary judgment is minimal and does not need to rise to a degree of
preponderance of the evidence. <u>See</u> <u>Arogon v. Republic Silver Disposal, Inc.</u>,
292 F.3d 654, 659 (9th Cir. 2002).

    **B.**    **Plaintiff Has Established a <u>Prima</u> <u>Facie</u> Case of**
            **<u>Race Discrimination.</u>**

        **1.**    **Failure To Promote, Train, Place In Rotating**
            **<u>Screening Manager Position.</u>**

    In failure to promote cases, the Supreme Court held in <u>McDonnell</u>
<u>Douglas</u> that the plaintiff can make out a <u>prima</u> <u>facie</u> case of discrimination by
showing that (1) he belongs to a statutorily protected class, (2) he applied for and
was qualified for an available position, and (3) he was rejected despite his
qualifications. "The burden of establishing a prima facie case of disparate treatment
is not onerous." <u>Texas Dpt. of Community Affairs v. Burdine</u>, 450 U.S.

10

248 , 253 (1981).  At the summary judgment stage, the "requisite degree of proof necessary to establish a prima facie case  ... is minimal and does not even need to rise to the level of a preponderance of the evidence."  Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994); accord Cordova v. State Farms Inc. Co. , 124  F. 3rd 1145, 1148, (9th Cir. 1997); Sicsho- Nowvejad v. Merced Community College Deist., 934 F. 2d 1104, 1111 (9th Cir. 1991) ( the amount of evidence for prima facie case is "very little").

       While the burden of persuasion remains at all times with the plaintiff this final burden shift does not necessarily impose a new burden of production.  In Reeves v. Sanderson Plumbing Prods, Inc., 530 U.S. 133 (2000), the Supreme Court held that the fact finder may infer "the ultimate fact of intentional discrimination" without additional proof once the plaintiff has made out her prima facie case if the fact finder believes that the employer's proffered nondiscriminatory reasons lack credibility.  Id. at 147. ("[A] disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons.").

       To establish a prima facie case of disparate treatment under Title VII,

11

a plaintiff must provide evidence that "give[s] rise to an inference of unlawful discrimination." Burdine, 450 U.S. at 253; Cordova v. State Farms Inc. Cos., 124 F.3d 1145, 1148 (9th Cir. 1997).  Absent direct evidence of discrimination, a Title VII plaintiff may prove his case through circumstantial evidence, following the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

In the instant case a prima facie case of disparate treatment in terms and conditions and failure to promote can be met.  Plaintiff was the only African-American Screening Supervisor who worked for TSA from September 2002 up until November 2003.  Plaintiff was qualified for the job as was a screening manager before being hired by TSA.  See Ware Declaration  Exhibit "1".  Plaintiff let it be known to his managers that he wanted a promotion when he first was hired in September 2002 to Screening Manager.  See Ware Declaration. Defendant filled six Screening Manager positions in June 2003 with people who had no screening experience, without considering Plaintiff.  Defendant promoted three other screeners in September 2003 .  Plaintiff applied for the Screening Manager position.  See Ware Dec.  None of the promoted employees were African American.

Plaintiff was not placed in a Rotating Screening Manager position,  not provided training to become a Screening Manager, transferred to Hawaiian Airlines

checkpoint and promoted others.    Other non African American employees were treated more favorably than Plaintiff by given training and rotations as Screening manager positions.

June 2003 Promotions. As to the June 2003 Screening Manager hires by Mr. Kamahele, it does not matter that Plaintiff did not apply for these positions. The courts do not require that a plaintiff prove that he applied for an available position when making a failure-to-promote claim against the employer if the trier of fact could reasonably infer that promotions were not awarded on a competitive basis. See Fadhl v. City and County of San Francisco, 741 F.2d 1163, 1165-66 (9th Cir. 1984) ("When an employer's discriminatory treatment consists of a failure to consider an applicant's qualifications, or in the use of evaluative criteria that are discriminatory, the applicant need not prove that he or she was qualified to fill the position sought in order to obtain some relief."), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also Lockridge v. Bd . of Trustees of the Univ. of Ark., 294 F.3d 1010, 1014 (8th Cir. 2002) (stating that "failure to apply is frequently excused where the employer has no formal application process or where the employee is unaware of the opportunity"), reh'g granted, 2002 WL 31004678 (8th Cir. 2002); Jones v. Firestone Tire & Rubber Co., 977 F.2d 527, 533 (11th Cir. 1992) (holding that the plaintiff need not establish that he applied for

13

an available position where the employer neither posted job openings nor accepted applications) (citing <u>Carmichael v. Birmingham Saw Works</u>, 738 F.2d 1126, 1133 (11th Cir. 1984) (excusing plaintiff's failure to apply because "defendant used no formal procedures for posting notice of available promotions or for determining who would be offered the promotion [[and instead] relied on 'word of mouth' and informal review procedures")).

For the June 2003 promotion, five of the six persons who were hired had worked for AKAL.  One person was not certified within the appropriate time period.  Applicant A did not have screening experience and qualifications as to be a Screening Manager. See <u>Decl. of Counsel, Exhibit 19</u>, resume of  Mr. A and application.  Contrary to the Declaration of Kamahele, applicant A was not a prior FAA manager.

<u>Pretext</u>. Courts have ruled that the plaintiff can prove pretext either "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." (quoting <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1220-22 (9th Cir. 1998)).  In addition, the courts view the cumulative evidence, and consider indirect with direct evidence to the extent that both are available.        Mr.

Kamahele states that he made this selection without going through the proper procedures because they were temporary promotions. However, the people who were selected are now permanent Screening Managers.

Defendant argues that Plaintiff was not selected for promotion because he had complaints in his personnel file.

Plaintiff was not aware of any complaints until after meeting with Mr. Kamahele in October. The complaints in Plaintiff's personnel file show that they were written after Plaintiff applied for promotion, and after he filed his two EEO complaints. Plaintiff filed his EEO complaint in June 2003 and then formal in August 2003. In addition to filing the informal EEO complaint pertaining to the lack of promotional opportunities, Rotating Screening Manager positions and training, Plaintiff wrote to Mr. Hayakawa directly in September confirming his complaints. Furthermore, it was only after Plaintiff met with Mr. Hayakawa and Mr. Kamahele to express his complaints about discrimination that negative documents about Plaintiff's work performance were placed in Plaintiff's personnel file. It is also important to note that Plaintiff's only work performance evaluation was "far exceeds." See Ware Declaration Exhibit "8". Plaintiff's excellent work evaluation raises the issue of pretext on the part of Defendants' rationale for not promoting him.

15

An independent investigation into the hiring practice and promotion selection practices of TSA-Honolulu revealed that Mr. Kamahele was unfair in his selection process.  See Decl. of Counsel, Exhibit "20".  Mr. Kamahele has since been terminated from his position at TSA-Honolulu in part because of the unfair selection processes for promotion.

Mr. Kamahele's Declaration includes misstatements of facts.  For example, he says that Jose Abrante is a Jamaican.  This is untrue.  Jose Abrante is Hispanic and not from the Island of Jamaica.  See Ware Declaration.  Mr. Kamahele states that Plaintiff was instructed on not making personal calls on his cell phone while working.  Plaintiff disputes this occurred.  Furthermore, there is no documentation of any of these instructions in Plaintiff's personnel file.

Mr. Kamahele's Declaration contains hearsay referring to Screening Manager, Leo Ventura, Ms. Chun, and others.  Hearsay is not admissible for the purposes of summary judgment. Bank Melli Iran v. Pahlavi, 58 F. 3rd 1406, (9th Cir. 1995).  Each Declaration must be based upon personal knowledge. Columbia Pictures Indus. Inc. v. Professional Real Estate Inv., Inc., 944 F. 2d 1525, 1529 (9th Cir. 1991) aff'd, 508 U.S. 49 (1993). Conclusions are not admissible.  See Lujan v. National Wildlife Fed'n, 497 U.S. 871 ,888 (1990) Therefore, Plaintiff requests that

this portion of Mr. Kamahele's Declaration be stricken and not considered for purposes of summary judgment.

September 2003 Promotion.

Plaintiff has established a prima facie case as he:  1) applied for a promotion; 2) was not selected for the promotion; 3) other non-African-Americans received the promotion; and 4) Defendants have not adequately explained why Plaintiff was not given the promotion.

For the September 2003 promotion, Defendants admit that none of the persons promoted were African-American.  Plaintiff's resume indicates vast experience as a police officer in Detroit and Texas.   The Declaration of  Kamahele does not indicate the reasons why Plaintiff was not selected for the promotion in September 2003 other than hearsay which should be stricken.  Any complaints about Plaintiff's performance was written after the decision to promote others in September. None of the persons selected for the promotion had previously complained about EEO discrimination.

## 2.    **Retaliation.**

Sec. 704(a) of Title VII, Civil Rights Act of 1964 protects an employee from discriminatory retaliation if he "has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing regarding an employer's

unlawful employment practices." <u>EEOC v. Crown Zellerbach Corp,</u> 720 F. 2d 1008 (9th Cir. 1994) The elements of a prima facie case for retaliation are set forth in <u>Wrighten v. Metropolitan Hospitals, Inc.,</u> 726 F.2d 1346, 1354 (9th Cir. 1984).  In order to prevail on a claim of unlawful retaliation, a plaintiff must establish (1) that he engaged in a protected activity, (2) that he suffered an adverse employment decision, and (3) that there was a causal link between plaintiff's activity and the employment decision.  <u>Hashimoto v. Dalton,</u> 118 F.3d 671, 679 (9th Cir. 1997).

        a.        **<u>September 2003 Promotion</u>.**

        Plaintiff has presented material issues of facts which establish a <u>prima facie</u> case of retaliation as:  1) Plaintiff complained of prior discriminatory activity through the EEO at the time of the September 2003 promotions; 2) Plaintiff applied for the promotion; 3) Plaintiff did not receive the promotion shortly after he complained about discrimination; and 4) Defendants' explanations for not giving him the promotion are not adequate.

        Plaintiff has established material issues of facts for which a jury can conclude he was discriminated against on the basis of race and/or in retaliation for his EEO complaint with regards to the failure to promote him in September 2003.  It is

significant to note that in Mr. Kamahele's Declaration, nothing is mentioned about Plaintiff's outstanding work evaluation.

Plaintiff was qualified for the promotion. Plaintiff's EEO complaint was filed in August 2003. The time between Plaintiff's discrimination complaint and the failure to promote was approximately a month, establishing a nexus for causation. Miller v. Fairchild Industries, Inc., 885 F.2d 498, 505 (9th Cir. 1989) (The timing of the adverse action and the fact that persons responsible for the adverse action know plaintiff's charge of discrimination satisfy the causation element of a prima facie case of retaliation.), cert. denied, 494 U.S. 1056 (1990), St. John v. Employment Development Dept., 642 F.2d 273, 274 (9th Cir.1981 ( five month time period between plaintiff's complaint of discrimination and his termination creates genuine issue of material fact of causation) Payne v. Norwest Corp., 113 F. 3d 1079, 1080 (9th Cir. 1997), Shirley v. Chrysler First, Inc., 970 F. 2d 39, 42-43 (5th Cir. 1992) (two month period from EEOC's dismissal of plaintiff's complaint and her termination establishes a nexus).

### b.    Termination.

Plaintiff was terminated in November 2003 after allegedly failing a recertification test given by unknown testers at TSA-Honolulu. Plaintiff requested copies of the test results for which he allegedly failed. TSA has refused to give

Plaintiff the test results claiming it is SSI privileged information.  All Plaintiff has is the blacked-out portions of the test results and no objective criteria for grading.  <u>See Decl. of Counsel, Exhibit "21"</u>.  Plaintiff is placed at a disadvantage because he does not know what area of the test he allegedly failed and, thus, can only speculate and conjecture that these test results are inaccurate.  It is very difficult for him to refute the test results without actually seeing them.  Plaintiff has filed a Ninth Circuit appeal on this discovery matter in addition to appealing the Magistrate's Order.  <u>See Ware Decl</u>. <u>Exhibit "15",</u> records and files in this case.  Plaintiff requests this Court, pursuant to Rule 56(f) not decide on this issue until complete discovery of these test results are given to Plaintiff.

Plaintiff disputes that the recertification test and grading criteria is SSI.  Title VII prohibiting employers from discrimination takes precedence over recent TSA SSI agency regulations. The regulation, 49 C.F.R.  part 1520  cited by Defendant has not passed  Constitutionality scrutiny  in Court.  In the instant case, it is unconstitutional as applied.

The U.S. Constitution, 5th Amendment requires federal agency employers to comply with due process before terminating a federal employee. See <u>Cleveland Bd of Education v. Loudermill</u>, 470 U.S. 532, 546 (1985) ("The tenured public employee is entitled to oral or written notice of the charges against him, an

explanation of the employers <u>evidence</u> and an opportunity to present his side of the story."); <u>Stone v. FDIC</u>, 179 F.3d 1368 (1999).  Due process means notice and an opportunity to respond to reasons for termination.  Without giving Plaintiff the test results and criteria, plaintiff is unable to respond and has not gotten notice from Defendant.

The declaration of Pete Marcello should be stricken and not considered as it contains hearsay and conclusions.  Pete Marcello did not administer the hands on test to Plaintiff, and did not see his performance.   <u>Lujan v.National Wildlife Fed'n</u>, 497 U.S. 871 ,888 (1990).  The declaration is not made from personal knowledge.  The declaration is based upon hearsay and conclusions from two unknown named persons who had no objective grading criteria for the hands on portion of recertification test given to Plaintiff.

The issue of governmental use of the SSI privilege was recently discussed in by Judge Vaughn R. Walker, U.S. District Court Judge, in <u>Hepting v. AT&T</u>, USDC San Francisco, No. 066-06-671 (July 2006). In <u>Hepting</u>, the Court ruled:

"(w)hile the court recognizes and respects the executive's constitutional duty to protect the nation from threats, the court also takes seriously its constitutional duty to adjudicate the disputes that come before it.  See <u>Hamdi v. Rumsfeld</u>, 542 U.S. 507, 536(2004) (plurality opinion) ("Whatever position the United States Constitution envisions for the executive in its exchanges with other nations or with enemy organizations in times of conflict, it most assuredly envisions a role for all three branches when individual liberties are at stake."). To defer to a

blanket assertion of secrecy here would be to abdicate that duty particularly because the very subject matter of this litigation has been so publicly aired." Id. p. 36.

Since Defendant refuses to provide Plaintiff with the test results, Plaintiff requests this Court make an adverse inference against the test scores since Defendant refuses to allow the results to be validation by Plaintiff. See Grover v. Speedway Super America, LLC, 254 F. Supp. 2nd 695 (S. D. Ohio) ( the Court refused to grant summary judgement when the Plaintiff was not allowed adequate discovery on the issue of pretext).

Under the law, an employment test has to be job-related. If it is not job-related, it can be deemed discriminatory. See 29 C.F.R. Sec. 1607.16(f), and 42 U.S.C.Sec. 20003-2(k)(1)(A)(i). In this particular case, without examining the actual test results, it is difficult to see how this test can be validated as non-discriminatory. Furthermore, the 2003 recertifcation test is no longer used to examine TSA airport screeners due to the numerous complaints about it. See Decl. of Counsel, Exh 24. New rules and regulations and test requirements were recently implemented in August 2006, to not allow liquids on airplanes. The test requirements are constantly changing. A test used in 2003 should not be shielded from review as it no longer is in use. Without a review, a determination as to its validity and accuracy can not be made. This leaves every TSA screener at the

22

whim and mercy of unknown testers who can subjectively grade in manner they want without adequate checks and balances.

## IV. CONCLUSION.

For the above reasons and other matters as maybe presented at a hearing on this Motion, Plaintiff requests this Honorable Court deny Defendant's Motion for Summary Judgement.

DATED: Honolulu, Hawaii, _____.

_____
DAPHNE E. BARBEE
Attorney for Plaintiff