EDWARD H. KUBO, JR.   2499
United States Attorney
District of Hawaii

THOMAS A. HELPER    5676
Room 6-100, PJKK Federal Bldg.
Assistant U.S. Attorney
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
E-mail: tom.helper@usdoj.gov

Attorneys for Federal Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RAYMOND WARE, ) | CIVIL NO. 04-00671 HG LEK |
| ) | |
| Plaintiff, ) | REPLY MEMORANDUM IN SUPPORT OF |
| ) | FEDERAL DEFENDANTS' MOTION TO |
| v. ) | DISMISS AND FOR SUMMARY |
| ) | JUDGMENT; TABLE OF CONTENTS; |
| SIDNEY HAYAKAWA, Director of ) | TABLE OF AUTHORITIES; SECOND |
| Transportation Security ) | DECLARATION OF PETE MARCELLO; |
| Administration - Honolulu, ) | DECLARATION OF ALLISON VASPER; |
| KEN KAMAHELE, Deputy ) | EXHIBIT "A" (CORRECTED COPY); |
| Director, TRANSPORTATION ) | CERTIFICATE OF SERVICE |
| SECURITY ADMINISTRATION; ) | |
| MICHAEL CHERTOFF, Secretary, ) | |
| Department of Homeland ) | |
| Security, DEPARTMENT OF ) | |
| HOMELAND SECURITY; JOHN DOES ) | |
| 1-5, ) | |
| Defendants. ) | |
| _____) | |

REPLY MEMORANDUM IN SUPPORT OF FEDERAL DEFENDANTS'
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

PRELIMINARY STATEMENT

Plaintiff, a former Screening Supervisor at Honolulu

International Airport, alleges that the Transportation Security

Administration ("TSA") discriminated against him because of his race and retaliated against him for filing an Equal Employment Opportunity ("EEO") complaint.  He claims four adverse employment decisions: three decisions not to promote him to Screening Manager, and a decision to terminate his employment.

In his initial memorandum and supporting documents, defendant Chertoff ("defendant") demonstrated that all claims against other defendants should be dismissed for lack of subject matter jurisdiction.  Defendant also showed that plaintiff's claim that he was not promoted to a rotating screening manager position prior to May 2003 is barred by plaintiff's failure to timely consult an EEO counselor.

Defendant further demonstrated that he is entitled to summary judgment on the three non promotion decisions.  For the decision not to promote him to rotating screening manager positions between October 2002 and February 2003 defendant showed that the deciding official, Kenneth Kamahele, awarded the positions to Screening Supervisors who received higher recommendations from their superiors and who did not have plaintiff's record of performance complaints from supervisors and others.  For Kamahele's decision not to promote plaintiff to temporary rotating screening manager positions in June of 2003, defendant showed that Kamahele did not consider plaintiff or any of twenty or so other permanent screening supervisors for the

temporary positions. For Kamahele's decision not to promote him to permanent screening manager positions in September 2003; defendant again demonstrated that the persons promoted did not have his record of performance problems.

Finally, defendant demonstrated that he is entitled to summary judgment on plaintiff's claim that TSA discriminated against him when it terminated his employment in November 2003. Through the declaration of TSA recertification database administrator Pete Marcello, defendant showed that plaintiff failed a mandatory recertification test administered by non-TSA employees and scored by a database in Washington.

In response to the motion to dismiss, plaintiff fails to present any argument to preserve his claims against defendants other than Chertoff, so the court should dismiss those claims. Plaintiff argues that the untimely claims for his nonpromotion to the rotating screening manager prior to May of 2003 are preserved under a "continuing violations" theory. Since the Supreme Court has explicitly rejected application of that theory in nonpromotion cases, the court should dismiss the untimely claims.

As to defendant's summary judgment motion, plaintiff fails to produce any material, competent and admissible evidence to rebut TSA's non-discriminatory grounds for the personnel actions at issue. For the nonpromotion decisions, plaintiff contends that the court should reject as hearsay Kamahele's reliance on

the evaluations of plaintiff's work provided by others; this application of the hearsay rule, however, has been rejected in every discrimination case which has considered it. Plaintiff also denies that he had performance problems or that anyone told him that he did; this denial, however, is both factually unfounded (since plaintiff himself provides copies of some of his attempts to defend his actions to his supervisors), and irrelevant to rebut the demonstration that (whether or not plaintiff agreed with their perceptions) plaintiff's supervisors reported numerous perceived performance problems to Kamahele.

    On the termination claims, plaintiff again raises an unfounded hearsay objection, this time to Marcello's declaration. Although plaintiff claims that he thought he passed the test, he does not dispute that the TSA database shows that he failed it. He also claims that others who failed the test were not terminated, but he lacks the necessary personal knowledge to make this assertion, and the assertion is in fact incorrect. Finally, he claims that summary judgment should be delayed until he is given a complete copy of the test, testing results, answer key and tester qualifications. The court should reject this argument because the information sought is barred from disclosure by the statutory Sensitive Security Information protection, and the information cannot rebut Marcello's key assertion that TSA's database shows that plaintiff failed the test.

ARGUMENT

I.  THE COURT SHOULD DISMISS ALL CLAIMS AGAINST DEFENDANTS OTHER THAN DEFENDANT CHERTOFF.

In its initial memorandum, defendant showed that Title VII is the exclusive remedy for alleged workplace discrimination, and that defendant Chertoff is the only proper defendant in such an action.  Plaintiff does not present any argument to the contrary.  Accordingly, the court should dismiss defendants TSA, Department of Homeland Security, Hayakawa and Kamahele.

II. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS FOR PERSONNEL ACTIONS PRIOR TO MAY 9, 2003.

In his initial memorandum and Concise Statement, defendant demonstrated that plaintiff first contacted an EEO counselor on June 23, 2003, and that his claim that he was not selected for rotating screening manager positions prior to that date (Amended Complaint ¶ 15) was untimely.  In response, plaintiff alleges that the promotion denial in this period was part of a "continuing violation" extending all the way through his September 2003 EEO complaint.  Pl. Mem. at 8-9.

In a case decided after the cases relied upon by plaintiff, the Supreme Court squarely rejected the "continuing violations" theory to preserve claims based on discrete acts of alleged discrimination, including a failure to promote.  <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 115-17 (2002).  The court limited application of the theory to allegations of hostile

work environment, and found that the "exception did not apply ... to claims based on 'discrete acts of discrimination,' i.e., personnel actions "such as termination, failure to promote, denial of transfer, or refusal to hire." Id. at 113. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Id.

Thus, plaintiff cannot rely on the continuing violations theory to preserve Paragraph 15's untimely claim based on his nonpromotion to rotating screening manager between October 2002 and February 2003, or any other claim arising before May 9, 2003. Accordingly, the court should dismiss such claims.

III. THE COURT SHOULD GRANT SUMMARY JUDGMENT ON PLAINTIFF'S NON-PROMOTION CLAIMS.

   A. The Nonpromotion to Rotating Screening Manager Between October 2002 and February 2003.

Plaintiff's complaint about his nonpromotion to rotating screening manager positions alleges discrimination only in the period between October 2002 and February 2003. ¶ 15. Kamahele, however, explained his decisions over a longer period. He explained that he did not select plaintiff for any rotating screening manager positions because of reports from incumbent screening managers that plaintiff had made a number of errors. Plaintiff's "name did not come up as among the top performers" among the twenty or so screening supervisors. Kamahele Dec. ¶ 4.

Under the burden-shifting analysis set forth in defendant's initial memorandum, this is more than sufficient to require plaintiff to produce sufficient evidence to raise a genuine issue of material fact as to whether the employer's proffered nondiscriminatory reason is merely a pretext for discrimination. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir. 2000). To defeat summary judgment, plaintiff's evidence "must be both specific and substantial." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054 at 1062 (9th Cir. 2002) citing Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998).

Plaintiff fails to meet this burden.[1]  As an initial matter, he does not introduce any direct evidence of discriminatory intent.  He fails to introduce any statements of hostility by decision-makers (or anyone else) toward African-Americans or persons who had filed EEO complaints, still less statements tied to the nonpromotion or termination decisions at issue.

Plaintiff also fails to produce circumstantial evidence of discriminatory intent.  At the outset, he mischaracterizes defendant's argument about why Kamahele believed he had poor performance.  Defendant showed not that "plaintiff was not

---

[1] Plaintiff devotes most of his memorandum, on this and other issues, to establishing a prima facie case of discrimination. Defendant's initial memorandum, however, assumed that plaintiff could establish such a case.  Plaintiff's discussion of the issue is irrelevant to rebutting defendant's proffered non-discriminatory grounds for the various personnel actions.

selected for promotion because he had complaints in his personnel file", but because three supervisors – screening managers Wong, Haneberg and Ventura -- had expressed concerns about plaintiff directly to Kamahele.  Kamahele Dec., ¶ 4, 8.  Kamahele gave seven specific examples of reports of plaintiff's poor judgment. Plaintiff did not depose Kamahele or any of the supervisors, nor does he introduce any evidence whatever to show that the managers did not in fact tell Kamahele that plaintiff made errors that led them to question his judgment.  Plaintiff makes no attempt to refute any of the specific examples of errors other than denying that he did anything wrong.  Pl. Mem. at 4; Concise Statement ¶¶ 3, 6, 24.  This cannot defeat summary judgment, because the key issue is not whether plaintiff actually committed every error with which he was charged, but whether an employer honestly believed its reasons for its actions, "even if its reason is 'foolish or trivial or even baseless.'"  <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1063 (9th Cir. 2002).

Plaintiff contends that he was not given the complaints about his performance and that the complaints were not documented until after he filed his second EEO complaint in September 2003. His own exhibits, however, show that in March and June 2003 he was informed of and responded to complaints.  Pl. Ex. 4. Although other reports were not reduced to writing until the agency had to respond to his September 2003 EEO complaint, he

fails to produce any evidence to rebut Kamahele's statement that the supervisors did report problems to him well before September.

Plaintiff contends that Kamahele's concerns about plaintiff's work are contradicted by an "excellent work evaluation." Pl. Mem. at 15, citing Pl. Ex. 8. In fact, Exhibit 8 is not a formal work evaluation. Instead, it consists mainly of the generic standards screening supervisors were expected to meet,[2] followed by an one-paragraph positive view of plaintiff's work by one screening manager, Mr. Abrante. This simply does not contradict Kamahele's assertion that other screening managers, and persons outside TSA, had complained about plaintiff's performance, and that Kamahele had not received similar complaints about the selectees for the positions.[3]

Finally, plaintiff contends that the reports to Kamahele are hearsay. Hearsay is an out-of-court statement used to prove the truth of the matter asserted. Fed.R.Evid. 801(c). Courts have

---

[2] On the third page of Exhibit 8, only the box labeled "Performance Agreement Initiation" is filled out. The boxes labeled "Mid-Cycle Performance Review and "Performance Assessment at the end of the appraisal period" are left blank, indicating that the document was filled out at the beginning, not the end, of a performance period.

[3] Plaintiff also fails to rebut Kamahele's assertion (Dec. ¶ 3; Concise Statement ¶ 2) that he was Hayakawa were aware of his EEO activity prior to September 2003. The only evidence plaintiff cites in his responsive statement is own declaration, which refers to his Exhibit 2, an August 2003 EEO Counseling Report. The Report does not indicate that Kamahele or Hayakawa was aware of this complaint.

routinely held that decision-makers in Title VII cases may testify about reports from others to the extent they relied on those reports in making personnel decisions. Garner v. Missouri Dept. of Mental Health, 439 F.3d 958, 959 (8th Cir. 2006) (reports to decision-maker of employee's wrongdoing offered to explain why decision-maker suspended employee, not for truth that employee committed wrongdoing); Capobianco v. City of New York, 422 F.3d 47, 55-56 (2d Cir. 2005) (document in an ADA discrimination plaintiff's file was admissible to show the employer's state of mind in firing him and thus properly considered at summary judgment in accord with Rule 56(e)); Luckie v. Ameritech Corp., 389 F.3d 708 (7th Cir. 2004) (decision-maker's account of negative information about employee given to decision-maker by another admissible to show decision-maker's state of mind, not truth of information); Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1317 (8th Cir. 1996) (affidavit of a supervisor containing a third party's description of an incident involving discrimination plaintiff was properly considered because the affidavit "was based on [the supervisor's] personal knowledge of the reasons underlying the challenged employment decision"); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1048, n. 4 (5th Cir. 1996) (supervisor's knowledge of reports of employee's misconduct admissible as offered to show supervisor's state of mind, not truth of reports).

Here, Kamahele's assertions as to what others told him about plaintiff's performance falls squarely within these holdings. Accordingly, the court should reject plaintiff's argument that Kamahele's assertions should be excluded as hearsay. Since plaintiff here does not introduce any evidence that Kamahele did not honestly believe that plaintiff was less qualified than the persons Kamahele selected to be rotating screening managers, plaintiff cannot defeat summary judgment on the rotating screening manager issue.

    B.    <u>The Nonpromotion to Temporary Screening Manager in June 2003</u>.

In its initial memorandum, defendant demonstrated that Kamahele did not consider any current TSA employee for temporary screening manager positions in June 2003. Kamahele Dec., ¶ 6. In response, plaintiff argues that one of the six temporary screening managers hired in June 2003 was not a former Federal Aviation Administration (FAA) Assistant Security Inspector (ASI). Response to Concise Statement ¶¶ 4; Pl. Mem. at 14. This appears to confuse two different assertions made by Kamahele. In Paragraph 5 of his Declaration, Kamahele stated that he filled six screening manager positions between November 2002 and April 2003 with FAA ASIs. In Paragraph 6, he stated that he filled additional temporary screening manager positions in June 2003 with non-TSA employees who had law enforcement or aviation experience. Thus plaintiff's assertion that one of the June

hires was not a former FAA employee does not contradict either paragraph. More importantly, plaintiff fails to introduce any evidence to rebut the crucial point that Kamahele did not consider any of the approximately twenty screening supervisors for the temporary screening manager positions.

    C.    <u>The NonPromotion to Permanent Screening Manager in September 2003</u>.

The discussion in Section II.A, above, of plaintiff's non-promotion to rotating screening manager, applies with equal force to his September 2003 nonpromotion to permanent screening manager. Kamahele's explanation that he made the decision based on reports of plaintiff's poor performance (Dec., ¶¶ 4, 8) shifts the burden to plaintiff to produce specific and substantial rebuttal evidence. Plaintiff's attempts to meet this burden fail because he is not competent to deny that Kamahele actually received such reports, because plaintiff fails to produce any evidence from the witnesses with personal knowledge of the reports, and because the reports are not inadmissible hearsay. Accordingly, defendant is entitled to summary judgment on the September 2003 nonpromotion claim.

IV.    <u>THE COURT SHOULD GRANT SUMMARY JUDGMENT ON PLAINTIFF'S TERMINATION CLAIMS</u>.

    A.    <u>Introduction</u>.

In its memorandum and supporting documents, defendant demonstrated that TSA required plaintiff to take a

12

recertification test in November 2003; that TSA contracted with Lockheed Martin to administer the "hands-on" part the test, and that Lockheed Martin may have subcontracted with other companies to administer that part of test; that the persons administering the tests transmitted the results directly to a TSA database in Washington; that the TSA database reflects that plaintiff twice failed the hands-on part of the test; and that written TSA policy required TSA to terminate plaintiff and anyone else who failed any part of the test twice.

   Plaintiff utterly fails to produce the specific and substantial evidence of discriminatory intent required to defeat summary judgment.  He does not even attempt to produce evidence of discriminatory animus other than the bare assertion that he is African-American, that he made an EEO complaint, and that he was terminated.  On this basis alone, defendant is entitled to summary judgment on plaintiff's termination claim.  Moreover, as will be shown in more detail below, the attempts plaintiff does make to dispute defendant's motion are either legally irrelevant, or are unfounded in (or actually contradicted by) the record of admissible evidence.

   B.   Plaintiff Fails to Show that TSA Treated
        Similarly Situated Employees Outside His
        Protected Class Differently.

   Plaintiff contends that two other screening supervisors, "Mr. Hennesy and Mr. Kidani," failed the test and were not

13

terminated.  Memorandum at 6; Concise Statement ¶ 29; Ware Dec. ¶ 28.  Plaintiff lacks personal knowledge to assert facts about TSA's personnel decisions for other employees, so his assertion cannot create an issue of material fact.  Moreover, plaintiff is simply wrong on the facts.  As set forth in the attached declarations, Richard Kidani failed the recertification test in 2003, appealed the failure, had the appeal denied, and was terminated in April 2004.  Second Marcello Dec. ¶ 3; Vasper Dec. ¶ 2.  John Hennessy passed the baggage recertification test, and did not take the passenger test, and so was permitted to remain as a baggage screener.  Second Marcello Dec., ¶ 4.

Plaintiff also contends that two Screening Managers failed the recertification test.  Again, plaintiff fails to demonstrate any personal knowledge or other basis for this statement.  Moreover, TSA policy does not require Screening Managers even to take the recertification test required of plaintiff and other Screening Supervisors.  Ex. A, second page, Sec. 2 ("Scope").  Thus, plaintiff fails to show that managers are similarly situated to him.

    C.    <u>The Details of Plaintiff's Failure to Pass the Recertification Test Are Not an Issue of Material Fact</u>.

Plaintiff protests that he did not really fail the test, and that if could have an unredacted copy of his test, the answer key, the identity of the Lockheed-Martin subcontractors who

administered the test and a statement of their qualifications, he could show that he actually passed. Plaintiff's Memorandum at 6-8. These issues have been the subject of considerable collateral litigation. TSA released substantial portions of the testing materials, but has asserted that other portions are Sensitive Security Information (SSI), protected by statute and regulation, and that exclusive jurisdiction to challenge an SSI determination is in the Courts of Appeals. On May 20, 2006, the Magistrate Judge ruled that the Ninth Circuit Court of Appeals has exclusive jurisdiction to consider plaintiff's challenge to TSA's SSI determination. Plaintiff has appealed the Magistrate's ruling to this court. Plaintiff has also filed a June 23, 2006 appeal of TSA's ruling to the Ninth Circuit.

 Whatever the outcome of this collateral SSI litigation, the details of how plaintiff failed the recertification tests are not in fact relevant to the determination of the instant summary judgment motion. Defendant did not administer the test, but only received the results from a third party, and then terminated plaintiff on the basis of that information. Plaintiff could have conducted discovery with Mr. Marcello, with Lockheed-Martin or with Lockheed-Martin's subcontractors to verify that the subcontractor really did inform defendant that plaintiff had failed. The details of how the third party determined that plaintiff failed the test, however, are simply are not relevant

to plaintiff's claims.  Indeed, plaintiff has never explained how release of the redacted portions of the test results could rebut Marcello's assertion that the TSA database shows that plaintiff twice failed the test, or Marcello's assertion that TSA policy required termination of any screening supervisor who failed the test twice.[4]  Accordingly, the court should reject plaintiff's request to delay decision on summary judgment.

CONCLUSION

For the foregoing reasons, the court should grant dismissal and summary judgment to defendant.

DATED: September 7, 2006, at Honolulu, Hawaii.

>   EDWARD H. KUBO, JR.
>   United States Attorney
>   District of Hawaii
>
>       /s/ Thomas A. Helper
>   By _____
>      THOMAS A. HELPER
>      Assistant U.S. Attorney
>
>   Attorneys for Federal
>   Defendants

---

[4] Because defendant inadvertently produced only the first page of the TSA policy on this issue as Exhibit A to its Concise Statement, defendant attaches to this memorandum a complete copy of the Exhibit.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the date and by the method of service noted below, a true and correct copy of the foregoing document was served on the following at their last known address:

Served Electronically through CM/ECF:   September 7, 2006

Daphne Barbee                desekmet@aloha.net

DATED: September 7, 2006, at Honolulu, Hawaii.

/s/ Coleen Tasaka-Shoda
_____