IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RAYMOND WARE, Plaintiff, v. MICHAEL CHERTOFF, Secretary, DEPARTMENT OF HOMELAND SECURITY, Defendant. | ) | CIVIL NO. 04-00671 HG LEK<br><br>MEMORANDUM IN SUPPORT OF DEFENDANT'S SECOND MOTION TO DISMISS AND FOR SUMMARY JUDGMENT |

MEMORANDUM IN SUPPORT OF DEFENDANT'S
SECOND MOTION FOR DISMISSAL AND SUMMARY JUDGMENT

Defendant Michael Chertoff reasserts and expands upon his previous motion for dismissal and summary judgment, which this court denied without prejudice on September 18, 2007. See Procedural Background section below.

Plaintiff Raymond Ware alleges that defendant discriminated against him in connection with his employment as a TSA airport security screener. His First Amended Complaint ("Complaint") claims that the defendant discriminated against him on the basis of his race by not rotating him to into screening manager positions between October 2002 and February 2003 and by not selecting him for a screening manager position in June 2003. After he filed an EEO complaint about these decisions in August, 2003, he complains, TSA discriminated against him on the basis of race and protected activity in two more decisions: the decision not to select him for a screening manager position in September

2003, and the decision to terminate his employment in November 2003. He also contends that he was subject to a hostile work environment on the basis of his race or protected activity.

Plaintiff cannot maintain any of these claims. The court should dismiss plaintiff’s claim about his nonselection as a rotating screening manager ending in February 2003; since plaintiff did not consult with an EEO counselor until August 2003, well after the 45-day time limit, the court lacks jurisdiction over the claim because he failed to exhaust his administrative remedies.

The court should also grant summary judgment to defendant on all four of plaintiff’s claims of discriminatory personnel actions. The undisputed facts show that TSA made each of the decisions for nondiscriminatory reasons, and plaintiff will be unable to produce evidence of discriminatory intent to rebut that showing. TSA did not select plaintiff as a rotating screening manager ending in February 2003 because the permanent screening managers did not mention him as one of the top performers. TSA did not select plaintiff for screening manager positions in June 2003 because TSA did not consider any current employee for the positions. TSA did not select plaintiff for screening manager position in September 2003 because, unlike the successful applicants, TSA supervisors had expressed substantial concerns about plaintiff’s performance and skills. Finally, TSA

terminated plaintiff’s employment in November 2003 pursuant to a mandatory policy that required termination of any screener who failed to pass a recertification test administered by a contractor; plaintiff was terminated because the contractor told TSA that plaintiff had failed the test. Because plaintiff will be unable to demonstrate that these reasons are a pretext for discrimination, defendant will be entitled to summary judgment on all of plaintiff’s adverse personnel action claims.

Finally, the court should also dismiss and grant summary judgment to defendant on plaintiff’s hostile work environment claim. Plaintiff never raised this issue in the administrative phase of this case, so the court lacks jurisdiction over it. Moreover, plaintiff has never identified any harassing conduct directed toward him on the basis of his race, much less harassing conduct of the severe or pervasive nature required to support a claim for a hostile work environment.

PROCEDURAL BACKGROUND

Defendant asserted in his initial summary judgment motion that TSA terminated plaintiff from his employment as a screening supervisor at Honolulu International Airport because he failed a mandatory recertification test of his ability to screen passengers. In response to plaintiff’s request for all testing materials, TSA released redacted portions, but declined to release the remainder because TSA deemed the redacted material to

be Sensitive Security Information (SSI). Plaintiff sought review of this decision in the Ninth Circuit.[1]

Defendant moved for summary judgment on the grounds that plaintiff's termination was required because he failed the recertification test. In response, plaintiff argued that the court should await the Ninth Circuit's decision to see if he could obtain the redacted SSI material. On September 18, 2006, the court agreed, denying the motion for summary judgment without prejudice to refiling following the close of discovery. The court also accepted plaintiff's arguments that he needed to conduct discovery on his hostile work environment claim, and on matters related to TSA supervisor Ken Kamahele's assertion that screening managers had complained about plaintiff's work.

On December 20, 2006, the Ninth Circuit ruled that plaintiff's appeal of TSA's withholding of SSI material was untimely. On January 22, 2007, however, TSA rescinded the SSI Order that Plaintiff had unsuccessfully appealed to the Ninth Circuit, because Congress had recently passed the Department of Homeland Security Appropriations Act, 2007, 109-295, which would allow disclosure to plaintiff's counsel of the testing material

[1] Plaintiff also filed a motion in this court to compel defendant to produce an unredacted version of the test, but this court ruled, pursuant to 49 U.S.C. § 46110, that only the Ninth Circuit had jurisdiction to compel production.

sought by plaintiff, subject to certain restrictions, and subject to counsel passing a background check.

TSA has forwarded the background check materials to plaintiff's counsel. Following receipt of the completed questionnaire, and assuming counsel clears the background check, TSA estimates that the unredacted testing materials would be made available for plaintiff's counsel to view within four weeks. Plaintiff's counsel, along with the attorney's involved in the 9/11 litigation, would be among the first persons to go through the new SSI process.

## STATEMENT OF FACTS

See accompanying Concise Statement of Material Fact.

## ARGUMENT

### I. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS ABOUT THE ROTATING SCREENING MANAGER POSITION BECAUSE PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES

To present a claim under Title VII of the Civil Rights Act, an employee must exhaust his administrative remedies by contacting an Equal Employment Opportunity (EEO) counselor "within 45 days of the date of the matter alleged to be discriminatory or ... within 45 days of the effective date of the [personnel] action." 29 C.F.R. § 1614.105(a)(1). Failure to raise an issue within 45 days deprives the court of subject matter jurisdiction over the claim. Lyons v. England, 307 F.3d 1092, 1105 (9th Cir. 2002). The 45-day time requirement

functions as a "statute of limitations for filing suit." Johnson v. United States Treasury Department, 27 F.3d 415, 416 (9th Cir. 1994).

Here, plaintiff claims that TSA discriminated against him "by not assigning him as a rotating screening manager from October 2002 through February 2003." Compl., ¶ 15. Plaintiff did not contact an EEO counselor, however, until June 23, 2003, well outside the 45-day limitations period. Ex. C to Concise Statement.

This fact does not end the inquiry, however. The timely filing of a charge of discrimination with the EEO "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). The Ninth Circuit has noted that the doctrine has been applied "sparingly; for example, the Supreme Court has allowed equitable tolling when the statute of limitations was not complied with because of defective pleadings, when a claimant was tricked by an adversary into letting a deadline expire, and when the EEOC's notice of the statutory period was clearly inadequate." Scholar v. Pacific Bell, 963 F.2d 264, 268 (9th Cir. 1992). In Santa Maria v. Pacific Bell, 202 F.3d 1170 (9th Cir. 2000), the court distinguished between equitable estoppel, "sometimes called

fraudulent concealment", which applies where a defendant has misled plaintiff in delaying a filing, and equitable tolling, which may be available when a reasonable plaintiff would not have known of the possibility of an EEO claim within the limitations period. Id. at 1176-79.

Plaintiff here will be unable to establish entitlement to equitable estoppel, equitable tolling or any other grounds to escape the running of the statute. Defendant did nothing to mislead plaintiff, and plaintiff was aware that he was not being assigned as a rotating screening manager when the assignments were made. Accordingly, the court dismiss these claims for lack of subject matter jurisdiction.

## II. THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DEFENDANTS ON ALL FOUR OF THE PERSONNEL ACTIONS

### A. Legal Standards

#### 1. General Standards Governing Motions for Summary Judgment

Federal Rule of Civil Procedure 56(c) allows a district court to grant summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.”

In Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1047 (9th Cir. 1995), the Ninth Circuit succinctly described the

showing a party moving for summary judgment must make and the corresponding burden a party opposing summary judgment must carry to thwart the motion. A party seeking summary judgment must "identify those parts of the record that indicate the absence of a genuine issue of material fact." Id. at 1048 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)). Once the party seeking summary judgment meets its burden, the nonmoving party must "designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting Celotex, 477 U.S. at 324). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587. Further, if the evidence proffered by the party opposing the motion is "merely colorable, or is not significantly probative," summary judgment may appropriately be granted. Id. (quoting Liberty Lobby, 477 U.S. at 249-50). "The possibility that the plaintiff may discredit the defendant's testimony at trial is not enough for the plaintiff to defeat a properly presented [summary judgment] motion." United Steelworkers of America v. Phelps

Dodge, 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc), cert. denied, 493 U.S. 809, 110 S.Ct. 51.

The party opposing summary judgment must demonstrate that the fact in contention is material, i.e., that it might affect the outcome of the suit under the governing law, Liberty Lobby, 477 U.S. at 248; T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. at 248-49. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322.

2. Summary judgment in Title VII cases

“Liability in a disparate treatment case ‘depends on whether the protected trait [national origin, race, and gender] actually motivated the employer’s decision.’” Raytheon Company v. Hernandez, 540 U.S. 44 (2003) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993). Accordingly, this race, national-origin and gender-based non-selection claim can be analyzed with the three-part burden shifting scheme first enunciated in McDonnell Douglas v. Green, 411 U.S. 792 (1973). In keeping with this scheme, plaintiff has the initial burden to establish a prima facie case of discrimination. If the plaintiff

establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for taking the action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The burden on the employer is one of production rather than proof or persuasion. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981) ("The defendant need not persuade the court that it was actually motivated by the proffered reasons").

If the defendant meets this burden, the plaintiff must then prove by a preponderance of the evidence that the employer's articulated reasons are a pretext for discrimination. Id. The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id. Plaintiffs may establish pretext (1) by direct evidence if it proves the fact of discriminatory animus without inference or presumption, or (2) by specific and substantial indirect circumstantial evidence. Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221-22 (9th Cir. 1998).

### B. Defendants Had Legitimate Reasons for Each of the Personnel Actions Complained of by Plaintiff

As set forth in the declarations attached to the government’s Concise Statement, TSA had legitimate non-discriminatory reasons for each of the personnel actions

challenged by lawsuit. The first three decisions were made by Kenneth Kamahele. As set forth in detail in defendant's Concise Statement, Kamahele did not select plaintiff as a rotating screening manager from October 2002 to February 2003 (Compl., ¶ 14) because the permanent screening managers told Kamahele that other screening supervisors were more qualified. Kamahele did not select plaintiff for promotion to screening manager (Compl., ¶¶ 16, 18) because he did not consider any current TSA employees for those temporary positions. Kamahele did not select plaintiff for promotion to screening manager in September 2003 (Compl., ¶¶ 20, 22) because Kamahele was aware that, unlike the successful applicants, plaintiff had a history of counselings, disciplinary reports and negative reports from supervisors. TSA terminated plaintiff from his position (Compl., ¶¶ 29-31) because termination was required after he failed a mandatory recertification test administered by a contractor.

Plaintiff will be unable to produce evidence of discriminatory intent, arising from either a racial or retaliatory animus, to rebut this showing of a legitimate non discriminatory grounds for each of the personnel actions. Accordingly, defendants will be entitled to summary judgment on all of plaintiff's claims.

III. THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DEFENDANT ON PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM.

A. Legal Standards.

Title VII is violated if harassment is so severe or pervasive as to create a hostile work environment. See Montero v. AGCO Corp., 192 F.3d 856, 860 (9th Cir. 1999); Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998). "An employer is liable under Title VII for conduct giving rise to a hostile environment where the employee proves (1) that he was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Pavon v. Swift Trans. Co., Inc., 192 F.3d 902, 908 (9th Cir. 1999). "'Conduct must be extreme to amount to a change in the terms and conditions of employment.' To be actionable under Title VII, 'a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" Montero, 192 F.3d at 860 (quoting Faragher v. City of Boca Raton, 524 U.S. 775 (1998)). Title VII is not "a general civility code for the American workplace". Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). There is no contention that there were threats, physical humiliation, or anything other than the "mere offensive

utterances" often found to be insufficient to create a hostile work environment. See e.g. Kortan v. California Youth Authority, 217 F.3d 1104 (9th Cir. 2000) (no hostile work environment when a supervisor called female employees "castrating bitches," "Madonnas," or "Regina" on several occasions in plaintiff's presence; the supervisor called the plaintiff "Medea"; the plaintiff complained about other difficulties with that supervisor; and the plaintiff received letters at home from the supervisor); Sanchez v. City of Santa Ana, 936 F.2d 1027 (9th Cir. 1990) (no hostile work environment despite allegations that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino).

B. Defendant is Entitled to Dismissal and Summary Judgment on Plaintiff's Hostile Work Environment Claim.

1. Plaintiff's hostile work environment claim should be dismissed because he failed to raise it in his EEO complaint.

As set forth in Section I, above, to present a claim under Title VII of the Civil Rights Act, an employee must exhaust his administrative remedies by contacting an Equal Employment Opportunity (EEO) counselor. Here, plaintiff did not allege a hostile work environment in either of his EEO complaints.

Exhibits C and D to Concise Statement. Accordingly, the court should dismiss that claim from this law suit.

2. Defendant is entitled to summary judgment on plaintiff's hostile work environment claim because plaintiff does not allege facts that come anywhere near meeting the standard for establishing a hostile work environment.

Plaintiff has never seriously pursued his hostile work environment claim. In addition to failing to raise the issue administratively, his eight-page declaration filed in response to defendant's initial summary judgment motion does not allege any facts to support such a claim. Exhibit E to Concise Statement. Because plaintiff will be unable to establish either the subjective or objective elements of a hostile work environment claim, the court should grant summary judgment to defendant on that claim.

CONCLUSION

For the foregoing reasons, the court should grant dismissal and summary judgment to defendant as set forth above.

DATED: May 14, 2007, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

/s/ Thomas A. Helper
By ______________________
THOMAS A. HELPER
Assistant U.S. Attorney

Attorneys for Defendant