EDWARD H. KUBO, JR.  2499
United States Attorney
District of Hawaii

THOMAS A. HELPER      5676
Room 6-100, PJKK Federal Bldg.
Assistant U.S. Attorney
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
E-mail: tom.helper@usdoj.gov

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RAYMOND WARE, | ) | CIVIL NO. 04-00671 HG LEK |
| | ) | |
| Plaintiff, | ) | CONCISE STATEMENT IN SUPPORT |
| | ) | OF DEFENDANT'S SECOND MOTION |
| v. | ) | TO DISMISS AND FOR SUMMARY |
| | ) | JUDGMENT; DECLARATION OF |
| MICHAEL CHERTOFF, Secretary, | ) | KENNETH K. KAMAHELE; |
| DEPARTMENT OF HOMELAND | ) | DECLARATION OF PETE MARCELLO; |
| SECURITY, | ) | DECLARATION OF THOMAS A. |
| Defendant. | ) | HELPER, EXHIBITS "A"-"E"; |
| | ) | CERTIFICATE OF SERVICE |
| | ) | |
| _____ | ) | |

CONCISE STATEMENT IN SUPPORT OF DEFENDANT'S SECOND
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, of the Local Rules of Practice

for the United States District Court for the District of Hawaii,

defendant submit his separate concise statement of material facts

in support of his second motion to dismiss and for summary

judgment.[1]  The motion is being filed contemporaneously with this

statement.

|  | EVIDENTIARY |
|---|---|
| FACTS | SUPPORT |

| | |
|---|---|
| 1.  Kenneth Kamahele has been the Assistant Federal Security Director for Screening at the Honolulu International Airport ("Honolulu Airport") for the Transportation Security Administration (TSA) since August 2002.  Kamahele supervised Screening Managers who in turn supervised Screening Supervisors, including Raymond Ware. | Kamahele Decl., ¶ 1. |
| 2.  Kamahele made the following personnel decisions regarding Mr. Ware: (a) Kamahele did not select him for several short-term acting Screening Manager details between November 2002 and September 2003; (b) Kamahele did not select him for a Screening Manager position in June 2003; (c) Kamahele did not select him for a Screening Manager position in September 2003. At the time that Kamahele made the above decisions, Kamahele was unaware that Mr. Ware had filed an EEO complaint or that he had otherwise engaged in any protected EEO activity. | Kamahele Decl., ¶¶ 2-3. |
| 3.  From November 2002 through March 2003, Kamahele did not select Mr. Ware for several short term (2-5 month) acting screening manager details because the general consensus among the permanent screening managers was that other screening | Kamahele Decl., ¶ 4. |

---

[1]  The originals of the three declarations and Exhibits A and B attached to this statement are already in the court file, attached to defendant's concise statement in support of his first motion for summary judgment, filed June 14, 2006.  Exhibits C and D are in the court's file as Exhibits 2 and 3, respectively, to plaintiff's responsive Concise Statement, filed August 28, 2006. The original of Exhibit E, plaintiff's declaration, was also submitted to the court with plaintiff's responsive Concise Statement.

2

supervisors were better qualified.  At the time the positions were being filled there were about twenty screening supervisors, and Mr. Ware's name simply did not come up as among the top performers.  Several Screening Managers had reported problems with Ware's performance.  This led Kamahele to believe that Mr. Ware was not ready to assume management duties.

4.    Between November 2002 and April 2003, Kamahele hired six screening managers into appointments that were not to exceed two years. The only persons Kamahele considered and hired for these positions were current Federal Aviation Administration (FAA) Assistant Security Inspectors (ASI).  Mr. Ware was never an FAA ASI, so Kamahele did not consider him these positions.

> Kamahele Decl., ¶ 5.

5.    Kamahele did not select Mr. Ware for a Screening Manager position in June 2003 because Kamahele did not consider any full-time TSA employee for the June 2003 vacancies.  Kamahele did not believe that any full-time TSA employee would want to sacrifice their career position for a temporary position that could have been eliminated at any time.  Because Mr. Ware was a full-time TSA employee and a supervisor, Kamahele did not consider him for filling any of the temporary positions in June 2003.

> Kamahele Decl., ¶6.

6.    The Screening Manager positions that Kamahele filled in August 2003 were full-time career positions.  Kamahele considered Mr. Ware for these positions, but Kamahele did not select him for any of the vacancies because Kamahele did not consider him among the most qualified applicant for the position.  Kamahele based his decision upon his review of each application and his knowledge of each applicant's work history with TSA. Kamahele's review of Ware's disciplinary record and work performance indicated that Mr. Ware was not prepared to become a Screening Manager.  At the time that Kamahele made his decision, Kamahele was aware that Mr. Ware' supervisors believed he exhibited poor decision making and that he had a weak grasp of standard operating procedures.  None

> Kamahele Decl., ¶¶ 7-8.

of the individuals selected for the Screening Manager position had a similar history of supervisor concerns and write-ups.

| | |
|---|---|
| 7.    A screener must score 80% or higher on <u>each</u> section to pass module 3.  Mr. Ware twice scored under 80% on sections within Module 3.  TSA policy required that Mr. Ware be removed from his screener position. | Marcello Decl., ¶ 7; Ex B. |
| 8.    Although Kamahele did think that Mr. Ware was African-American, it did not influence his decision making.  Indeed, at the time that Kamahele made these selections, Kamahele thought that one of the selected candidates, Jose Abrante, was African-American.  It was only later that Kamahele came to understand that Mr. Abrante was from Jamaica and that he was not African-American. | Kamahele Decl., ¶ 9. |
| 9.  Kamahele was not aware that he ever rejected a request by Mr. Ware for training. | Kamahele Decl., ¶ 10. |
| 10.  As of October 2003, all Screeners, including Lead and Supervisory Transportation Security Screeners, were required to have an annual proficiency review (re-certification). Aviation and Transportation Security Act (ATSA), Public Law 107-71, 115 Stat. 597.  Under TSA rules, Screeners who initially failed the re-certification process were given an opportunity to complete remedial training.  If the Screener again failed, the Screener must be removed. | Ex. A at 6 (Sec. 6.2). |
| 11.  The recertification test consisted of three Modules.  Raymond Ware, like all other screeners, was required to pass three modules. Module 1 was a job knowledge, occupation specific (Baggage or passenger) multiple choice test that assessed a screener's knowledge of standard operating procedures.  Module 2 measured a screener's skill and ability in the detection of threat/prohibited items within x-ray images of baggage.  Module 3 was a practical skills or hands-on skills demonstration used to evaluate a screener's knowledge, skill, and ability when performing specific screener tasks. | Marcello Decl. ¶ 4. |

12. TSA records show that a TSA employee administered Modules 1 and 2 to Mr. Ware, and found that he had passed those Modules.  Module 3 was administered by employees or contractors of Lockheed Martin.  No TSA employees at an airport were involved in the scoring of any screener's performance in Module 3.  The Lockheed Martin employee or subcontractor would observe the screener performing the tasks on Module 3 and enter scores into a handheld electronic device. At the end of the test the employee or subcontractor would link the device to the TSA database and transmit the recertification test results to the database.

Marcello Decl., ¶ 5.

13. Module 3 had six sections.  In order to pass the test, screeners were required to demonstrate proficiency in each section.  According to the TSA database, on November 6, 2003 Mr. Ware failed four sections of module 3.  TSA records indicate that Mr. Ware was provided a second attempt to pass module 3 on November 7, 2003 and failed three sections

Marcello Decl., ¶ 6.

14. Raymond Ware first contacted an EEO counselor on June 23, 2003.

Ex. C., at 1, Box 4.

15. Ware's EEO complaints did not allege hostile work environment, and his declaration filed in this court does not allege any facts to support a claim of hostile work environment.

Ex. C, D and E

    DATED:  May 14, 2007, at Honolulu, Hawaii.

          EDWARD H. KUBO, JR.
          United States Attorney
          District of Hawaii

              /s/ Thomas A. Helper
          By _____
            THOMAS A. HELPER
            Assistant U.S. Attorney

          Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
RAYMOND WARE,                 )      CIVIL NO. 04-00671 HG LEK
                              )
              Plaintiff,      )      CERTIFICATE OF SERVICE
                              )
       v.                     )
                              )
MICHAEL CHERTOFF, Secretary,  )
DEPARTMENT OF HOMELAND        )
SECURITY,                     )
              Defendant.      )
_____)
```

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on the date and by the method of service noted below, a true and correct copy of the foregoing document was served on the following at their last known address:

<u>Served Electronically through CM/ECF</u>:

Daphne Barbee                    May 14, 2007
desekmet@aloha.net

DATED:  May 14, 2007, at Honolulu, Hawaii.


                                 /s/ Coleen Tasaka-Shoda
                                 _____