UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| RAYMOND WARE,<br><br>Plaintiff,<br><br>vs.<br><br>SIDNEY HAYAKAWA, Director of Transportation Security Administration-Honolulu, KEN KAMAHELE, Deputy Director, Transportation Security Administration-Honolulu; TRANSPORTATION SECURITY ADMINISTRATION; MICHAEL CHERTOFF, SECRETARY, Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; JOHN DOES 1-5<br><br>Defendant. | Case No. CV:04-00671-HG-LEK |

## DECLARATION OF KENNETH K. KAMAHELE

I, Kenneth K. Kamahele, make the following declaration in lieu of an affidavit, as permitted by Section 1746 of Title 28 of the United States Code. I am aware that this declaration will be filed with the United States District Court for the District of Hawaii and that it is the legal equivalent of a statement under oath.

1. I am the Assistant Federal Security Director for Screening at the Honolulu International Airport ("Honolulu Airport") for the Transportation Security Administration (TSA). I have been in this position since August 2002. The Screening workforce for the Honolulu Airport was federalized in October 2002. I never directly supervised Raymond Ware because he was a Supervisory Transportation Security Screener, and an employee in that position reports to a Screening Manager. The Screening Managers report directly to me.

1

2. I made the following personnel decisions regarding Mr. Ware: (a) I did not select him for several short-term acting Screening Manager details between November 2002 and September 2003; (b) I did not select him for a vacant Screening Manager position in June 2003; (c) I did not select him for a vacant Screening Manager position in September 2003.

3. At the time that I made the above decisions, I was unaware that Mr. Ware had filed an EEO complaint or that he had otherwise engaged in any protected EEO activity. Even if I had been aware of Mr. Ware's alleged protected activity, it would not have factored into any decision that I made regarding him. Although I did believe that Mr. Ware was African-American, his race was not a factor in any of my decision making.

4. From November 2002 through March 2003, I did not select Mr. Ware for several short term (2-5 month) acting screening manager details because the general consensus among the permanent screening managers was that other screening supervisors were better qualified. At the time the positions were being filled there were about twenty screening supervisors, and Mr. Ware's name simply did not come up as among the top performers. This is reflected in various reports from different Screening Managers that led me to believe that Mr. Ware was not ready to assume management duties. For instance, I received information that either Screening Manager Haneberg or Wong found it necessary to instruct Mr. Ware on more than one occasion that he was not permitted to accept or make personal telephone calls on his cell phone while working at the checkpoint. I was also aware that on March 26, 2003, Screen Manager Wong counseled Mr. Ware about his handling of an unclaimed jacket that had been left at the checkpoint—he took it to and left it in a men's restroom rather than contact his supervisor for direction. According to the counseling form prepared by Ms. Wong, Ware acknowledged making an incorrect decision. Ms.

*KK*

Wong declined to investigate another employee's complaint that Ware had actually stolen the jacket until the employee had written an incident report. I also recall receiving oral reports that Mr. Ware was demonstrating poor decision making skills. For instance, Screening Manager Haneberg reported that Mr. Ware confiscated a GI Joe toy gun, which was green, made out of plastic and approximately two inches long. Screening Manager Haneberg also reported that Mr. Ware had confiscated small travel irons which he said might be used as weapons.

I also recall receiving reports that Mr. Ware did not have a strong working understanding of the standard operating procedure regarding prohibited items. For instance, Screening Manager Haneberg reported that Mr. Ware would not let a passenger carry her diabetic syringes even when she had medical documentation supporting her need to carry them. Although Screening Manager Haneberg reported that the passenger and many of the screeners present verified the incident to Screening Manager Haneberg, Mr. Ware denied that it occurred. Screening Manager Haneberg also reported that she had observed Mr. Ware improperly processing a laptop computer, and that he was unaware of the proper protocol for the procedure.

5. Between November 2002 and April 2003, I hired six screening managers into appointments that were not to exceed two years. The only persons I considered and hired for these positions were current Federal Aviation Administration (FAA) Assistant Security Inspectors (ASI). Mr. Ware was never an FAA ASI, so I did not consider him these positions.

6. I did not select Mr. Ware for a Screening Manager position in June 2003 because I did not consider any full-time TSA employee for the June 2003 vacancies. The Screening Manager positions that I filled in June 2003 were temporary, not-to-exceed two year positions that were provided to our airport because we were understaffed for managers. At the time that I was

considering filling these temporary positions, I did not believe that any full-time TSA employee would want to sacrifice their career position for a temporary position that could have been eliminated at any time. Because Mr. Ware was a full-time TSA employee and a supervisor, I did not consider him for filling any of the temporary positions in June 2003. However, I did not consider any TSA employee for these positions. The individuals that I recruited for these positions all were non-TSA employees who had some combination of law enforcement or aviation experience. All of the individuals that I recruited for these positions were reviewed and deemed qualified for the positions by NCS Pearson, a human resources company, contracted by TSA.

7.    The Screening Manager positions that I filled in September 2003 were full-time career positions. The positions were posted and Mr. Ware and other candidates competed for the positions. I considered Mr. Ware for these positions, but I did not select him for any of the vacancies because I did not consider him among the most qualified applicant for the position. I based my decision upon my review of each application and my knowledge of each applicant's work history with TSA.

8.    I did not select Mr. Ware for a Screening Manager position in September 2003 because my review of his disciplinary record and my knowledge of Mr. Ware's work performance indicated to me that Mr. Ware was not prepared to become a Screening Manager. At the time that I made my decision, I was aware that Mr. Ware' supervisors believed he exhibited poor decision making and that he had a weak grasp of standard operating procedures. In addition to the concerns described in Paragraph 6, above, I was also aware that on June 12, 2003, Johnell Chun, an employee of a private security contractor at Honolulu International, complained in writing to Ms. Wong about Mr. Ware's handling of her report of an abandoned bag. Ms. Chun complained that Mr. Ware was

Mr. Ware's handling of her report of an abandoned bag. Ms. Chun complained that Mr. Ware was not responsive to her request that he send someone to test an unattended bag for explosives, and that he ended up hanging up on her. Finally, I knew that Screening Manager Leo Ventura also had concerns about Mr. Ware's performance, including his indecisiveness regarding whether certain items were prohibited. None of the individuals selected for the Screening Manager position had a similar history of supervisor concerns and write-ups.

9. Although I did think that Mr. Ware was African-American, it did not influence my decision making. Indeed, at the time that I made these selections, I thought that one of the selected candidates, Jose Abrante, was African-American. It was only later that I came to understand that Mr. Abrante was from Jamaica and that he was not African-American. However, my perception of the candidates' races did not influence my decision making in any way.

10. I am not aware that I ever rejected a request by Mr. Ware for training

5

*KK*

I have read the above 5 pages, and I declare under penalty of perjury that the information stated there is true and correct to the best of my knowledge.

Executed on June 30, 2006 [13]

KK

_____
KENNETH K. KAMAHELE