

DAPHNE E. BARBEE    2911
Attorney & Counselor at Law
Century Square, Suite 1909
1188 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 533-0275

ORIGINAL

Attorney for Plaintiff

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 0 3 2007

at _____ o'clock and _____ min. ___ M
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RAYMOND WARE,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL CHERTOFF, Secretary,<br>Department of Homeland Security;<br>JOHN DOES 2-5,<br><br>Defendants. | CIVIL NO. 04-00671 HG/LEK<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS AND FOR SUMMARY JUDGMENT; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE**<br><br>**DATE:**   July 23, 2007<br><br>**TIME:**   10:30 a.m.<br><br>**JUDGE:**   Hon. Helen Gillmor |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**PAGE**

## CASES

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). . . . . . . . . . . . . . . . . 10,11

<u>Arogon v. Republic Silver Disposal, Inc.</u>, 292 F.3d 654 (9th Cir. 2002). . . . . . . . 11

<u>Bank Melli Iran v. Pahlavi</u>, 58 F. 3rd 1406 (9th Cir. 1995). . . . . . . . . . . . . . . . . . .16

<u>Bd. of Curators, University of Mo. v. Horowitz</u>, 435 U.S. 781 (1978). . . . . . . . . 25

<u>Carmichael v. Birmingham Saw Works</u>, 738 F.2d 1126 (11th Cir. 1984) . . . . . . . 15

<u>Cleveland Bd of Education v. Loudermill</u>, 470 U.S. 532 (1985). . . . . . . . . . . . . 24

<u>Columbia Pictures Indus. Inc. v. Professional Real Estate Inv., Inc.</u>,
944 F. 2d 1525 (9th Cir. 1991) aff'd, 508 U.S. 49 (1993). . . . . . . . . . . . . . . . . 18

<u>Cordova v. State Farms Inc. Cos.</u>, 124 F.3d 1145 (9th Cir. 1997). . . . . . . . . . . 12,13

<u>EEOC v. Crown Zellerbach Corp.</u>, 720 F. 2d 1008 (9th Cir. 1994) . . . . . . . . . . . 21

<u>Elmenayer v. ABF Freight System</u>, Inc., 318 F.3d 130 (2nd Cir. 2003). . . . . . . . . . 9

<u>Fadhl v. City and County of San Francisco</u>, 741 F.2d 1163 (9th Cir. 1984). . . . . . 14

<u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217 (9th Cir. 1998). . . . . . . . . . . . . . . 15

<u>Grover v. Speedway Super America</u>, LLC, 254 F. Supp. 2nd 695 (S. D. Ohio). . 25

<u>Hashimoto v. Dalton</u>, 118 F.3d 671 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . 21

<u>Jones v. Firestone Tire & Rubber Co.</u>, 977 F.2d 527 (11th Cir. 1992) . . . . . . . 14,15

<u>Kassaye v. Bryant College</u>, 999 F.2d 603 (1st Cir. 1993) . . . . . . . . . . . . . . . . . . 9

i

Lockridge v. Bd . of Trustees of the Univ. of Ark., 294 F.3d 1010 (.13
8th Cir. 2002), reh'g granted, 2002 WL 31004678 (8th Cir. 2002). . . . . . . . . . . . . 14

Lujan v. National Wildlife Fed'n, 497 U.S. 871 (1990). . . . . . . . . . . . . . . . 16,24

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). . . . . . . . . . . . . . . 11,13

Miller v. Fairchild Industries, Inc., 885 F.2d 498, 505 (9th Cir. 1989)
cert. denied, 494 U.S. 1056 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). . . . . . . . . . . . . . . . 9

O'Rourke v. City of Providence, 235 F.3d 713 (1st Cir. 2001). . . . . . . . . . . . . . . 9

Payne v. Norwest Corp., 113 F. 3d 1079, 1080 (9th Cir. 1997) . . . . . . . . . . . . . 22

Petrosino v. Bell Atlantic, 385 F.3d 201 (2nd Cir. 2004). . . . . . . . . . . . . . . . . . . . 9

Pilgrim v. Trustees of Tufts College, 118 F.3d 864(1st Cir. 1997). . . . . . . . . . . . 9

Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). . . . . . . . . . . . . . . . . . . . . . . 14

Reeves v. Sanderson Plumbing Products, Inc., 520 U.S. 132 (2000). . . . . . . . 11,12

Sicsho- Nowvejad v. Merced Community College,
934 F. 2d 1104 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Shirley v. Chrysler First, Inc., 970 F. 2d 39 (5th Cir. 1992). . . . . . . . . . . . . . . . 22

St. John v. Employment Development Dept., 642 F.2d 273 (9th Cir.1981 ). . . . . 21

Stone v. FDIC, 179 F.3d 1368 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Texas Dpt. of Community Affairs v. Burdine, 450 U.S.248  (1981). . . . . . . . . 11,12

Wallis v. J.R. Simplot Co., 26 F.3d 885 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . 12

Webster v. DOE, 486 U.S. 592 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346 (9th Cir. 1984). . . . . . . 21

## U.S. CONSTITUTION

U.S. Constitution, 5th Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## STATUTES

Sec. 704(a) of Title VII, Civil Rights Act of 1964 . . . . . . . . . . . . . . . . . . . . . . . 20

29 C.F.R. Sec. 1607.16(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

29 C.F.R. Sec. 1614.105(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

49 C.F.R. part 1520. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5 U.S.C. 701-706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

42 U.S.C. Sec. 20003-2(k)(1)(A)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

49 U.S.C. Sec. 114(s) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## RULES

Federal Rules of Civil Procedure:

Rule 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF CONTENTS

PAGE

COUNTER STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.   PLAINTIFF DID NOT FAIL TO EXHAUST HIS
     ADMINISTRATIVE REMEDIES AS TO THE ROTATING
     SCREENING MANAGER POSITION . . . . . . . . . . . . . . . . . . . . . . . 9

II.  THE COURT SHOULD DENY SUMMARY JUDGMENT
     AS TO DEFENDANTS ON ALL OTHER
     PERSONNEL ACTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     A.   Legal Standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     B.   Plaintiff Has Established a Prima Facie Case of
          Race Discrimination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          I.   Failure To Promote, Train, Place In Rotating
               Screening Manager Position. . . . . . . . . . . . . . . . . . . . . . 11

          II.  Retaliation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

               a.   September 2003 Promotion. . . . . . . . . . . . . . . . . . 21

               b.   Termination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

III. HOSTILE WORK ENVIRONMENT . . . . . . . . . . . . . . . . . . . . . . . . 26

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

DAPHNE E. BARBEE    2911
Attorney & Counselor at Law
Century Square, Suite 1909
1188 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 533-0275

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RAYMOND WARE, | CIVIL NO. 04-00671 HG/LEK |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS AND FOR SUMMARY JUDGMENT; CERTIFICATE OF SERVICE** |
| vs. | |
| MICHAEL CHERTOFF, Secretary, Department of Homeland Security; JOHN DOES 2-5, | |
| Defendants. | **DATE:    July 23, 2007** |
| | **TIME:    10:30 a.m.** |
| | **JUDGE:    Hon. Helen Gillmor** |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

Plaintiff RAYMOND E. WARE submits the following Memorandum

In Opposition To Defendants' Second Motion To Dismiss and For Summary

Judgment, filed on May 14, 2007.

1

## COUNTER STATEMENT OF FACTS

Plaintiff worked as a Mobile Screening supervisor out of Washington D.C. before being transferred to Honolulu Transportation Security Administration (TSA). Plaintiff arrived at TSA Honolulu in September 2002. After he arrived at TSA Honolulu, he was told that Mobile screening supervisors would be given rotating screening manager assignments to access their managerial skills and to be considered for promotion to Screening manager. Plaintiff is African American. He is a former police detective from Detroit, Michigan and San Antonio, Texas. See Ware Decl., Exh 1. Other airports hired "Mobile Screeners" as Screening Managers. See Third Ware Decl. Exh 32 .

Plaintiff experienced discrimination in terms and condition of employment while working at TSA Honolulu. Unlike other non African American screening supervisors he was not placed in the rotating screening manager position, not given training, he was involuntarily transferred to Hawaiian Airlines checkpoint, and he was not selected for promotion to Screening Manager (six vacant positions) in June 2003 and for three Screening Manager positions in September 2003. For the June 2003 Screening Manager positions, five of the six persons hired by Mr. Kamahele, Deputy Director of TSA Honolulu, previously worked for AKAL, a security firm. None of the six selectees had "screening experience". See Exh 26, Kamahele Depo,

2

pg 36, 37. For the September 2003 Screening Manager positions, Plaintiff had equivalent experience with prior law enforcement ,was a screening supervisor at Honolulu and had the added plus of being a Mobile Supervisor Screener.   Mr. Kamahele did not hold interviews before selecting the six screening managers in June 2003.  Id. p. 39. None of the selected Screening Managers were African Americans or had prior screening manager experience.

Defendant argues that for the six vacancies in June 2003, six former FAA Aviation Security Inspectors were transferred  to TSA for temporary hires. Reviewing the applications and resume of the six hires reveal this is not true. None of the six had  prior airport screening experience. See Decl. of Counsel, Exh 19, Exh. 26, Kamehele depo pages 36-37.  Despite  inexperience with screening, all six became permanent TSA Screening Managers, a job overseeing airport screeners. These promotions were criticized in a subsequent Management Inquiry (MI)  report. See Exh 20.    The hires were approved by Mr. Hiyakawa, Director of TSA Honolulu , who was also criticized for the manner of promotions.  See Exhibit 27 (under seal).

Plaintiff filed an informal EEO complaint against Defendant on June 23, 2003.  See Ware Decl., Exh 2 . His informal complaint of race discrimination was filed as a formal complaint on August 19, 2003. See Ware Declaration, Exh 2 .

3

While Mr. Ware's EEO complaint was being investigated, Plaintiff met with Mr. Hayakawa, Director of Honolulu TSA on September 3, 2003 to discuss his concerns of discrimination and his desire to be promoted.    Mr. Hayakawa told him to speak with Mr. Kamahele, Deputy Director for TSA Honolulu.  Plaintiff wrote to Mr. Hayakawa to confirm his meeting. See Ware Decl, Exh 5,6 . After the meeting, Plaintiff learned he was again not selected for promotion to Screening Manager (for the three September 2003 vacancies) and not selected for rotating Screening Manager again on September 6, 2003.  He filed another EEO complaint on September 8, 2003 to include these adverse actions.  See Ware Decl. Exh 3. Plaintiff received a letter from Mr. Hayakawa acknowledging his previous meeting. Ware Decl. Exh 7.

Plaintiff requested to meet with Mr. Kamahele. See Ware Decl., Exh 6.  In October 2003 Mr. Kamahele finally met with Mr. Ware.  See Ware Decl. Mr. Kamahele admits he did not have any written complaints about Mr. Ware at this time. Exh 26, Kamahele Depo. p 69. Before this meeting and after Mr. Ware complained of discrimination to Mr. Hayakawa and the EEO office, letters were requested from two screening managers about Mr. Ware.  See Ware Decl. Exh 4. Exh 26, Kamahele Depo., pg 72. At the October 2003 meeting with  Mr. Kamahele,

4

Plaintiff was told for the first time that there were complaints about him in his personnel file. Yet, there were no written complaints in Mr. Ware's file.

Plaintiff disputes the veracity of the alleged complaints. See Ware Decl. Complaints written were not given to Plaintiff to respond to and related to incidents in 2002 which Mr. Ware was not aware of, and did not occur. Significantly, the only job performance rating Plaintiff had as a supervisor screener was " far exceeds." from supervisor Jose Abrante. See Ware Decl. Exh 8. Mr. Leo Ventura's another supervisor, wrote a general counseling form for Mr .Ware which did not contain any complaints or negative remarks. Exh 26, pg 67. Milagros Drake, a former screener, who worked with Mr. Ware verifies he was an excellent Screening Supervisor. See Decl. of Drake.

While Plaintiff's EEO complaint was being investigated, a recertification test was scheduled for screeners. On November 6, 2003, plaintiff was given the test by two persons he thought were TSA employees. Plaintiff passed the written portions practical skills, hands on portion of the test. He was told by the two unknown, unidentified testers he failed the "hands on" subjective performance test portion. When plaintiff asked in what manner he failed, he was not told. The next day, November 7, 2003, Plaintiff took the test again. He was again told he failed and placed on leave.

Before being fired, Mr. Kamahele sent Plaintiff a proposed termination letter. See <u>Exh. 9, Ware Decl</u>. Plaintiff asked for information on the manner in which he failed from Defendant. Defendant Hayakawa first told Plaintiff he failed three parts which was then later changed to two parts. See <u>Ware Declaration</u>. He was given a pass fail document. See <u>Ware Decl. Exh 13.</u> When he requested to see the test results and criteria for grading, the data was not presented to him. Plaintiff disputed the test results and requested an opportunity to see the results. See <u>Decl. of Counsel Exh. 25</u>. His request to see and challenge the test was denied and he was terminated by Mr. Hayakawa on November 26, 2003. See <u>Ware Decl., Exh 11</u>.

Plaintiff found a knife during the patdown test which Defendant alleges he failed. See <u>Third Ware Decl</u>. Plaintiff wants proof that he was fairly tested by objective standards and that Defendant follow Constitutional due process requirement by notifying him the manner in which he failed the recertification test. Defendant refused Plaintiff's request to see the results and grading criteria and terminated Plaintiff effective November 26, 2003 See <u>Ware Decl., Exh 11</u>. Other Screeners who failed the test were given several opportunities and retests. See <u>Decl. of Drake</u>.

According to Defendant, two other Supervising screeners failed the test. Plaintiff is aware that the other two Screening supervisors who failed the test, Mr.

6

Hennesy and Mr. Kidani were not terminated. Only Mr. Ware was terminated. See Ware Decl. Plaintiff filed another EEO complaint based upon his termination. See Ware Decl. Exh 17.

As part of discovery requests, plaintiff requested copies of the recertification practical hands on recertifcation test result and grading criteria.    In response to discovery Defendants presented a chart showing a percentage pass rate instead of pass fail. See Ware Decl., Exh 14.

After filing a lawsuit, Defendant turned over recertification test result documents with "blacked out "portions making the document undecipherable. See Ware Decl., Exh 15.

Defendant TSA issued an Order dated 4-25-06, signed by Andrew Cosly, Director of SSI Office, refusing to turn over additional documents as "the withheld information is SSI (Sensitive Security Information) pursuant to 49 U.S.C. Sec. 114(s) and 49 C.F.R.  Part 1520." See Decl. of Counsel, Exh 21.

In October 2006, Congress amended the law, to make SSI documents available in civil lawsuits like the instant case, and the ongoing September 11th civil litigation in New York. See Decl. of Counsel, Exh 33. On June 13, 2007, Defendant mailed Plaintiff a copy of the "test results" pursuant to discovery request. See Exh 25 (Under seal pursuant to protection order). The documents still shed little light on

7

the grading criteria and manner in which Plaintiff failed. It is still unknown who performed the test on Plaintiff, and so verification and a deposition of the "testor" is impossible.

Plaintiff recalls passing the test and disputes veracity of the documents contained in Exh 25. The documents are hearsay without a declaration from the testors. Exh 25 contradicts Exh 11 in showing Mr. Ware "found a prohibited item"in the patdown. There is no pass fail or percentage rates assigned as scores. There is no explanation of terms such as SOP or proper procedures or what prohibited items were missed if any.

Plaintiff still does not know who performed the hands on test or the grading criteria. Ware Decl. Defendant originally stated that Lockheed Martin Employees were contracted to give the recertification test in Honolulu to TSA employees. Subsequent to Plaintiff's Motion to Compel, Defendant's acknowledge they do not know who the testers are and which contractor company performed the test. Decl. of Counsel, Exh 22, Exh 24, Answers to Pl. Interrogs. pg 2, 3. Defendant admits the test has not been validated. Mr. Kamahele admitted that before sending the proposed termination to Mr. Ware, he never spoke with the testors and never saw the test performed. Id. pg 3, 4. Defendant admits that presently, a TSA Screener is

8

not automatically terminated for "failing the test". Id. pg 5. Furthermore, screeners

are now given more than two times to pass the test. Id. pg 5.

## I.    PLAINTIFF DID NOT FAIL TO EXHAUST HIS ADMINISTRATIVE REMEDIES AS TO THE ROTATING SCREENING MANAGER POSITION

Defendant argues that the Rotating Screening Manager position ended

in February 2003 and that Plaintiff's EEO complaint was therefore continuing. This

is incorrect. The vacant Rotating Screening Manager positions were available up to

September 6, 2003. See Ware Declaration Exh "3" attached thereto and Defendants

Concise Statement of Facts 2 (admits this Rotating Screening Manager position was

available on September 6, 2003). Plaintiff was never placed in the Rotating

Screening Manager positions up through September 6, 2003, despite his requests

and availability. See Decl. of Plaintiff, Exh 3 and 5. This denied him experience and

opportunity to be accessed on his ability to be a supervisor.

Where a Title VII violation is "of a continuing nature, the charge of

discrimination filed ... may be timely as to all discriminatory acts encompassed by

the violation so long as the charge is filed during the life of the violation or within

the statutory period." Pilgrim v. Trustees of Tufts College, 118 F.3d 864, 868

(1st Cir. 1997) (quoting Kassaye v. Bryant College, 999 F.2d 603, 606 (1st Cir.

1993)) and O'Rourke v. City of Providence, 235 F.3d 713 (1st Cir. 2001) (discusses

9

the applicability of continuing violation doctrine where discriminatory conduct is ongoing).

For hostile work environment claims, it is appropriate to apply the continuing violation doctrine to the incidents comprising plaintiff's hostile work environment claim. Where a plaintiff alleges a hostile work environment, conduct outside the applicable limitations period may be considered so long as one act giving rise to the hostile environment claim is within the limitations period. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002); see also Petrosino v. Bell Atlantic, 385 F.3d 201, 220 (2nd Cir. 2004). The rationale is that such a claim "is comprised of a series of separate acts that collectively constitute one unlawful employment practice". Morgan, 536 U.S. at 117; see also Elmenayer v. ABF Freight System, Inc., 318 F.3d 130, 134 (2nd Cir. 2003). Here, plaintiff has alleged at least one act within the forty-five day limitations period set out in 29 C.F.R. § 1614.105(a)(1). (See, e.g., Compl. ¶¶ 22(dd)-(gg).) Thus, all acts alleged in the complaint should be examined as part of the hostile work environment claim.

In Plaintiff's September 8, 2003, Exh 9, pg 3, EEO complaint, he wrote: "On September 6, 2003, I found out that three screening supervisors were placed in rotation for screening manager. I am not included in this rotation". Plaintiff's August 19, 2003 and September 7, 2003 EEO complaints were timely, within 45 days of

10

September 6, 2003, the last date Rotating Screening Manager was available.

Therefore, this portion of Plaintiff's Complaint should not be dismissed as untimely,

as September 8, 2003 is within 45 days of the September 6, 2003 action.

## II. THE COURT SHOULD DENY SUMMARY JUDGMENT AS TO DEFENDANT ON ALL OTHER PERSONNEL ACTIONS

### I. Legal Standards.

Under Federal Rules of Civil Procedure, Rule 56(f), summary

judgment should be granted only if there "is no genuine issue of material fact and

the moving party is entitled to judgment as a matter under law." See Anderson v.

Liberty Lobby, Inc., 477 U.S. 242 (1986). In deciding whether the moving party

has proven there are no material facts or disputes to prevent summary judgment, the

court must regard the facts asserted by the non-moving party through affidavits,

declarations, and evidence as to resolve any doubt in that party's favor. See

Reeves v. Sanderson Plumbing Products, Inc., 520 U.S. 132, 150 (2000). The

requisite degree of proof necessary to establish a prima facie case for Title VII on

summary judgment is minimal and does not need to rise to a degree of

preponderance of the evidence. See Arogon v. Republic Silver Disposal, Inc.,

292 F.3d 654, 659 (9th Cir. 2002).

### B. Plaintiff Has Established a Prima Facie Case of Race Discrimination.

11

## I.    Failure To Promote, Train, Place In Rotating Screening Manager Position.

In failure to promote cases, the Supreme Court held in McDonnell Douglas that the plaintiff can make out a prima facie case of discrimination by showing that (1) he belongs to a statutorily protected class, (2) he applied for and was qualified for an available position, and (3) he was rejected despite his qualifications. "The burden of establishing a prima facie case of disparate treatment is not onerous." Texas Dpt. of Community Affairs v. Burdine, 450 U.S. 248 , 253 (1981). At the summary judgment stage, the "requisite degree of proof necessary to establish a prima facie case ... is minimal and does not even need to rise to the level of a preponderance of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994); accord Cordova v. State Farms Inc. Co. , 124 F. 3rd 1145, 1148, (9th Cir. 1997); Sicsho- Nowvejad v. Merced Community College Deist., 934 F. 2d 1104, 1111 (9th Cir. 1991) ( the amount of evidence for prima facie case is "very little").

While the burden of persuasion remains at all times with the plaintiff this final burden shift does not necessarily impose a new burden of production. In Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133 (2000), the Supreme Court held that the fact finder may infer "the ultimate fact of intentional discrimination" without

12

additional proof once the plaintiff has made out her prima facie case if the fact finder believes that the employer's proffered nondiscriminatory reasons lack credibility. Id. at 147. ("[A] disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons.").

To establish a prima facie case of disparate treatment under Title VII, a plaintiff must provide evidence that "give[s] rise to an inference of unlawful discrimination." Burdine, 450 U.S. at 253; Cordova v. State Farms Inc. Cos., 124 F.3d 1145, 1148 (9th Cir. 1997). Absent direct evidence of discrimination, a Title VII plaintiff may prove his case through circumstantial evidence, following the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

In the instant case a prima facie case of disparate treatment in terms and conditions, hostile work environment and failure to promote has been met. Plaintiff was the only African-American Screening Supervisor who worked for TSA from September 2002 up until November 2003. Plaintiff was qualified for the job as he was a screening manager before being hired by TSA. See Ware Declaration Exh "1". Plaintiff told his supervisors that he wanted a promotion to Screening Manager

13

when he first arrived in September 2002 to Screening Manager.  See <u>Ware</u> <u>Declaration</u>. Defendant filled six Screening Manager positions in June 2003 with people who had <u>no screening experience,</u> without considering Plaintiff. Defendant promoted three other screeners in September 2003 .  Plaintiff applied for these Screening Manager positions.  See <u>Ware Dec</u>.  None of the six promoted employees were African American.

Plaintiff was not placed in a Rotating Screening Manager position,  not provided training to become a Screening Manager, transferred to Hawaiian Airlines checkpoint and not promoted.    Other non African American employees were treated more favorably than Plaintiff by given training and rotations as Screening manager positions. See <u>Decl. of Plaintiff</u>.

<u>June 2003 Promotions</u>. As to the June 2003 Screening Managers hired by Mr. Kamahele, it does not matter that Plaintiff did not apply for these positions.  The courts do not require that a plaintiff prove that he applied for an available position when making a failure-to-promote claim against the employer if the trier of fact could reasonably infer that promotions were not awarded on a competitive basis. See <u>Fadhl v. City and County of San Francisco</u>, 741 F.2d 1163, 1165-66 (9th Cir. 1984) ("When an employer's discriminatory treatment consists of a failure to consider an applicant's qualifications, or in the use of evaluative criteria that are

14

discriminatory, the applicant need not prove that he or she was qualified to fill the

position sought in order to obtain some relief."), abrogated on other grounds by

Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also Lockridge v. Bd . of

Trustees of the Univ. of Ark., 294 F.3d 1010, 1014 (8th Cir. 2002) (stating that

"failure to apply is frequently excused where the employer has no formal application

process or where the employee is unaware of the opportunity"), reh'g granted, 2002

WL 31004678 (8th Cir. 2002); Jones v. Firestone Tire & Rubber Co., 977 F.2d 527,

533 (11th Cir. 1992) (holding that the plaintiff need not establish that he applied for

an available position where the employer neither posted job openings nor accepted

applications) (citing Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1133

(11th Cir. 1984) (excusing plaintiff's failure to apply because "defendant used no

formal procedures for posting notice of available promotions or for determining who

would be offered the promotion [[and instead] relied on 'word of mouth' and

informal review procedures")).

   In the instant case, Mr. Kamahele admitted he did not tell Screeners that

Screening Managers positions were available at TSA Honolulu. See Exh 26, pg 45-

46 Kamahele Depo. Despite not alerting Screeners to vacant Screening Manager

positions, Mr. Kamahele was aware Plaintiff wanted to be a Screening Manager. Id

pg 56. Mr. Kamahele's promotions were criticized by a management investigation (MI). See Exh 20.

Pretext. Courts have ruled that the plaintiff can prove pretext either "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." (quoting Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220-22 (9th Cir. 1998)). In addition, the courts view the cumulative evidence, and consider indirect with direct evidence to the extent that both are available. Mr. Kamahele admitted that he promoted persons without going through the proper procedures because they were temporary promotions. Kamahele Depo., Exh 26 pg 2. The people he were selected became permanent Screening Managers and were not temporary. None of the persons promoted had screening experience. See Kamahele Depo., pg 36-37.

Defendant argues that Plaintiff was not selected for promotion by Mr. Kamahele because he had complaints in his personnel file. However, during deposition Mr. Kamahele admitted there were no written complaints in Mr. Ware's file before the October 2, 2003 meeting. See Kamahele Depo., Exh 26 pg 12. Mr. Kamahele lost Mr. Ware's resume. Id. pg 69.

16

Plaintiff was not aware of any complaints until after meeting with Mr. Kamahele in October. The complaints in Plaintiff's personnel file show that they were written after Plaintiff applied for promotion, and after he filed his two EEO complaints. Plaintiff filed his EEO complaint in June 2003 and then formal in August 2003. In addition to filing the informal EEO complaint pertaining to the lack of promotional opportunities, Rotating Screening Manager positions and training, Plaintiff wrote to Mr. Hayakawa directly in September confirming his complaints. See Decl. of Plaintiff, Exh 5. Only after Plaintiff met with Mr. Hayakawa and Mr. Kamahele to express his complaints about discrimination that negative documents about Plaintiff's work performance were placed in Plaintiff's personnel file. Plaintiff's only work performance evaluation was "far exceeds." See Ware Declaration Exh "8". A former Screener, Mr. Drake, verifies Mr. Ware was an excellent Screener Supervisor. See Drake Decl. Plaintiff's excellent work evaluation raises the issue of pretext on the part of Defendants' rationale for not promoting him.

An independent investigation into the hiring practice and promotion selection practices of TSA-Honolulu revealed that Mr. Kamahele was unfair in his selection process. See Decl. of Counsel, Exh "20". Mr. Kamahele has since been terminated

17

from his position at TSA-Honolulu in part because of his lack of credibility during the MI and retaliatory acts towards screeners. See Exh. 27 (under seal)

Mr. Kamahele's Declaration includes misstatements of facts. For example, he says that Jose Abrante is a Jamaican. This is untrue. Jose Abrante is Hispanic and not from the Island of Jamaica. See Ware Declaration. Another misstatement is Mr. Kamahele stated that Plaintiff was instructed on not making personal calls on his cell phone while working. Plaintiff disputes this occurred. Id. Furthermore, as admitted by Mr. Kamahele, there was no written documentation of any of these complaints in Plaintiff's personnel file. Kamahele Depo., Exh 26 pg 79, 80.

Mr. Kamahele's Declaration contains hearsay referring to Screening Manager, Leo Ventura, Ms. Chun, and others. Hearsay is not admissible for the purposes of summary judgment. Bank Melli Iran v. Pahlavi, 58 F. 3rd 1406, (9th Cir. 1995). Each Declaration must be based upon personal knowledge. Columbia Pictures Indus. Inc. v. Professional Real Estate Inv., Inc., 944 F. 2d 1525, 1529 (9th Cir. 1991) aff'd, 508 U.S. 49 (1993). Conclusions are not admissible. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990) Therefore, Plaintiff requests that this portion of Mr. Kamahele's Declaration be stricken and not considered for purposes of summary judgment.

18

Plaintiff states that his only supervisors were Robin Wong, Jose Abrante and Leonard Ventura, none of whom submitted declarations of complaints concerning his work performance. See Ware Declaration. Plaintiff states Ms. Wong and Mr. Ventura did not complain about his work performance. Id. There is no evidence to the contrary by way of Declaration from Ms. Wong or Mr. Ventura.

When Mr. Kamahele met with Plaintiff Ware in October, he did not know how old the alleged complaints were, did not provide written complaints about Mr. Ware to him, and told him he would investigate the complaints and get back to Mr. Ware. Id pg 71. Mr. Kamahele never discussed the alleged complaints or showed them to Plaintiff. See Decl. of Plaintiff. Plaintiff therefore had no opportunity to respond to the alleged "complaints" before Defendant's adverse action, i.e. failure to promote, and termination, occurred.

After being terminated due to his abuse as Deputy Director, Mr. Kamahele himself filed an EEO charge against Defendant based upon race, therefore acknowledging a hostile racially charged work environment. See Kamahele Depo., Exh 62 pg 61. Additionally, Mr. Hayakawa, Director of TSA, has also been relieved of his duties as TSA Director in Honolulu. See Ware Decl. Plaintiff has requested discovery to review the reason for Mr. Hayakawa's termination. This request is pending. See Decl. of Counsel, Exh. 35.

19

September 2003 Promotion.

Plaintiff has established a prima facie case as he: 1) applied for a promotion; 2) was not selected for the promotion; 3) other non-African-Americans received the promotion and 4) Defendant has not adequately explained why Plaintiff was not given the promotion.

For the September 2003 promotion, Defendants admit that none of the persons promoted were African-American. Plaintiff's resume indicates vast experience as a police officer in Michigan and Texas. The Declaration of Kamahele does not indicate the reasons why Plaintiff was not selected for the promotion in September 2003 other than hearsay which should be stricken. Any complaints about Plaintiff's performance were written after the decision to promote others in September. None of the persons selected for the promotion had previously complained about EEO discrimination. Furthermore, Mr. Kamahele's credibility is tainted as acknowledged by TSA attorney and due to his termination. See Exh 27 and 28.

## II.    Retaliation.

Sec. 704(a) of Title VII, Civil Rights Act of 1964 protects an employee from discriminatory retaliation if he "has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing regarding an employer's

20

unlawful employment practices." EEOC v. Crown Zellerbach Corp. 720 F. 2d 1008

(9th Cir. 1994) The elements of a prima facie case for retaliation are set forth in

Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346, 1354 (9th Cir. 1984).  In

order to prevail on a claim of unlawful retaliation, a plaintiff must establish (1) that

he engaged in a protected activity, (2) that he suffered an adverse employment

decision, and (3) that there was a causal link between plaintiff's activity and the

employment decision.  Hashimoto v. Dalton, 118 F.3d 671, 679 (9th Cir. 1997).

### a.    September 2003 Promotion.

Plaintiff has presented material issues of facts which establish a prima facie

case of retaliation as: 1) Plaintiff complained of prior discriminatory activity to the

EEO at the time of the September 2003 promotions, see Exh 2, 3, 5, Decl. of

Plaintiff; 2) Plaintiff applied for the promotion; 3) Plaintiff did not receive the

promotion shortly after he complained about discrimination; and 4) Defendants'

explanations for not giving him the promotion are not adequate.

Plaintiff has established material issues of facts for which a jury can conclude

he was discriminated against on the basis of race and/or in retaliation for his EEO

complaint with regards to the failure to promote him in September 2003.  It is

significant to note that in Mr. Kamahele's Declaration, nothing is mentioned about

Plaintiff's outstanding work evaluation. Mr. Kamahele was aware of Plaintiff's

21

complaint as he was cc'd on this letter complaining of discrimination. See Exh 26, Kamahele Depo. pg 59-60.

Plaintiff was qualified for the promotion. Plaintiff's EEO complaint was filed in August 2003. The time between Plaintiff's discrimination complaint and the failure to promote was approximately a month, establishing a nexus for causation. Miller v. Fairchild Industries, Inc., 885 F.2d 498, 505 (9th Cir. 1989) (The timing of the adverse action and the fact that persons responsible for the adverse action know plaintiff's charge of discrimination satisfy the causation element of a prima facie case of retaliation.), cert. denied, 494 U.S. 1056 (1990), St. John v. Employment Development Dept., 642 F.2d 273, 274 (9th Cir.1981) ( five month time period between plaintiff's complaint of discrimination and his termination creates genuine issue of material fact of causation) Payne v. Norwest Corp., 113 F. 3d 1079, 1080 (9th Cir. 1997), Shirley v. Chrysler First, Inc., 970 F. 2d 39, 42-43 (5th Cir. 1992) (two month period from  EEOC's dismissal of plaintiff's complaint and her termination establishes a nexus).

Mr. Kamahele has a history of retaliatory actions against screeners. See Exh 27, 28. In fact, Mr. Kamahele was terminated due to his retaliatory behavior such as mock shooting of screeners he considered problem employees, hiring his friends for

promotions and not being truthful in a TSA independent investigation. See <u>Exh 27,</u>
<u>28</u>.

Pretext can be established circumstantially. In this case, Plaintiff, an African
American, was not provided equal opportunity for promotion to Screening Manager
as non- African Americans with less experience.

A question of fact and credibility exist concerning Mr. Kamahele, Defendants
reasons for failure to promote Plaintiff. Complaints about Mr. Ware's performance
were not documented in his file and requests were made for complaints by Mr.
Kamahele <u>after</u> Mr. Ware filed an EEO charge.

After he filed an EEO charge, Mr. Ware was not promoted. The reasons
offered by defendant for the failure to promote are pretextual.

Therefore, this Court should not grant Summary Judgment on Plaintiff's
failure to promote claims.

### b.    Termination.

Plaintiff was terminated in November 2003 after allegedly failing a
recertification test given by unknown testers at TSA-Honolulu. Plaintiff requested
copies of the test results for which he allegedly failed. At first, Defendant TSA
refused to give Plaintiff the test results claiming it is SSI privileged information. In
June 2007, the alleged test results were given to Plaintiff with no objective criteria
for grading. <u>See</u> <u>Decl. of Counsel, Exh "21"</u>. Even with the newly produced

23

documents, Plaintiff is still disadvantaged because he does not know what grading

criteria and standards were used and what area of the test he allegedly failed. See

Ware Third Decl. Plaintiff disputes that he failed the recertification test. See Ware

Third Decl.

Under Title VII, employers are prohibited from using discriminatory tests.

The test results do not indicate the grading criteria or the "SOP", or if a prohibited

item was not found, what the item was, or explains what a "HW Outline" is. See

Exh. 25 Under Seal; Ware Decl. Under the law, an employment test has to be job-

related. If it is not job-related, it can be deemed discriminatory. See 29 C.F.R. Sec.

1607.16(f), and 42 U.S.C.Sec. 20003-2(k)(1)(A)(i). In this particular case,

Defendant admits the hands on test results provided, this test was not validated as

non-discriminatory. See Exh 24, Defendant's Answer to Fourth Interrogatory.

Failure of the 2003 recertifcation test no longer results in automatic termination. Id.

The test requirements are constantly changing.

The U.S. Constitution, 5th Amendment requires federal agency employers to

comply with due process before terminating a federal employee. See Cleveland Bd

of Education v. Loudermill, 470 U.S. 532, 546 (1985) ("The tenured public

employee is entitled to oral or written notice of the charges against him, an

explanation of the employers evidence and an opportunity to present his side of the

story."); See 5 U.S.C. 701-706, Webster v. DOE, 486 U.S. 592 (1988), Stone v.

24

FDIC, 179 F.3d 1368 (1999). Due process means notice and an opportunity to respond to reasons for termination. Bd. of Curators, University of Mo. v. Horowitz, 435 U.S. 781 (1978). Neither Mr. Kamahele or Mr. Hayakawa gave Plaintiff an opportunity to review and dispute the test results. See Exh 11, Exh 26, Kamahele Depo, pg 76. Mr. Kamahele never asked any testers how Mr. Ware failed the test, nor viewed the test results before sending him a proposed termination letter. See Kamahele Depo., pg 76. How could plaintiff dispute tests results he does not see?

The declaration of Pete Marcello should be stricken and not considered as it contains hearsay and conclusions. Mr. Marcello did not administer the hands on test to Plaintiff, and did not see or grade Plaintiff's performance. He does not know who tested Mr. Ware. Lujan v.National Wildlife Fed'n, 497 U.S. 871 ,888 (1990). The declaration is not made from personal knowledge. The declaration is based upon hearsay and conclusions from two unknown named persons who had no objective grading criteria for the hands on portion of recertification test given to Plaintiff.

Plaintiff requests this Court make an adverse inference against the Defendant's assertion that Plaintiff failed the test. The results are not validated and verified by the testers. See Grover v. Speedway Super America, LLC, 254 F. Supp. 2nd 695 (S. D. Ohio) (the Court refused to grant summary judgement when the Plaintiff was not allowed adequate discovery on the issue of pretext).

The test and results were discriminatory applied to Plaintiff. Another

Screening Supervisor (Mr. Kidani) failed the written objective portion of the test

and was not terminated immediately. See Ware Decl., Kamahele Depo. pg 78. Other

TSA screeners who failed the "hands on" test were not terminated. Instead they

were given several opportunities to pass. See Decl. of Drake. There are questions of

fact that Plaintiff failed the hands on test. Defendant TSA acknowledges that TSA

acknowledges that TSA no longer automatically terminates screeners who fail the

"hands on test". See Exh 24. Defendant TSA also admits that screeners are given at

least three opportunities to pass the hands on test. See Ans. to Interrogs., Exh 24.

Yet Mr. Ware was only allowed to take the test twice before he was terminated.

### III.   Hostile Work Environment.

Defendant misinterprets Plaintiff's EEO complaint to read hostile work

environment on the basis of sex and ancestry. This is not correct. Plaintiff filed a

retaliation claim which described a hostile work environment against him as TSA

Screener employees who complained about race discrimination and unfair labor

practices. See Ware Decl. Exh. 2.    The hostile work environment claim is part of

the retaliation EEO complaint. See Exh 2, EEO Complaint, Ware Decl. See Exh 3,

Ware Decl., EEO Complaint, dated September 8, 2003. Exh 5, Plaintiff's complaint

and request for documents in his personnel file, addressed to administrative officer

Abreu. Plaintiff's Exh 17, Plaintiff's EEO Complaint dated November 26, 2003.

Plaintiff states on his EEO complaint "I feel this termination was in retaliation of my prior EEO complaints on the basis of race discrimination". Furthermore, when Plaintiff was interviewed by the EEO investigator, a declaration specifies in detail the retaliation and hostile work environment. See Ware Decl., Exh 18.

Plaintiff's concerns about the hostile work environment at TSA Honolulu were borne out by several other screeners who complained to the MI about Mr. Kamahele and Mr .Hayakawa. See Willey Decl.

Mr. Kamahele was terminated from his position, in part due to his retaliatory treatment of screeners. See Decl of Counsel, Exh 20, 27, 28. The basis of his termination was his actions towards screeners as well as his credibility. See Exh 28. Mr. Kamahele reacted in a negative manner towards screeners who complained and his retaliation against Plaintiff for complaining about race discrimination was part of a pattern of practice. Mr. Kamahele's retaliatory behavior is circumstantial evidence of discrimination towards Plaintiff in failing to promote, in failing to give him a rotating Screening position, and terminating Plaintiff after he complained of race discrimination. Adverse actions such as failure to promote and termination are part of a hostile, retaliating environment.

Defendant's Motion for Summary Judgment on the hostile work environment is in essence a Motion in Limine, which should be more properly addressed by the trial court with respect to Mr. Kamahele's retaliatory pattern and practice of taking

27

adverse actions towards screeners who were brave enough to complain about discriminatory and unfair treatment.

## III. CONCLUSION.

For the above reasons and other matters as may be presented at the hearing on this Motion, Plaintiff requests this Honorable Court deny Defendant's Motion for Summary Judgement as material issues of fact are present.

DATED: Honolulu, Hawaii,    ⁊-3-0⁊    .

DAPHNE E. BARBEE
Attorney for Plaintiff

28

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RAYMOND WARE, | ) | CIVIL NO. 04-00671 HG/LEK |
| | ) | |
| Plaintiff, | ) | CERTIFICATE OF COMPLIANCE |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL  CHERTOFF, Secretary, | ) | |
| Department of Homeland Security, | ) | |
| DEPARTMENT OF HOMELAND | ) | |
| SECURITY; | ) | |
| JOHN DOES 2-5, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**CERTIFICATE OF COMPLIANCE PURSUANT TO
LR7.5 AND 56.1**

Pursuant to LR7.5 and LR  56.1, I certify that Plaintiff's Memorandum

in Opposition to Defendant's Motion for Summary Judgment  is

proportionately spaced, has a typeface of 14 points or more and contains 5,970

words and 576 lines of text.

DATED: Honolulu, Hawaii ___7 - 3 - 07_____.

_____
DAPHNE E. BARBEE
ATTORNEY AT LAW

-1-

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was duly served upon the following parties at their last known addresses by means of hand delivery on this date.

EDWARD H. KUBO, JR., ESQ.
U.S. Attorney
THOMAS A. HELPER, ESQ.
Assistant U.S. Attorney
Rm. 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii  96850

Attorneys for Federal Defendants

DATED:   Honolulu, Hawaii,_____7-3-07_____.


_____
DAPHNE E. BARBEE
Attorney for Plaintiff