IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RAYMOND WARE, )<br>)<br>       Plaintiff, )<br>)<br>  v. )<br>)<br>MICHAEL CHERTOFF, Secretary, )<br>DEPARTMENT OF HOMELAND )<br>SECURITY, )<br>       Defendant. )<br>)<br>)<br>_____) | CIVIL NO. 04-00671 HG LEK<br><br>MEMORANDUM IN SUPPORT OF THIRD<br>MOTION FOR SUMMARY JUDGMENT OF<br>DEFENDANT MICHAEL CHERTOFF |

MEMORANDUM IN SUPPORT OF THIRD MOTION FOR
<u>SUMMARY JUDGMENT OF DEFENDANT MICHAEL CHERTOFF</u>

PRELIMINARY STATEMENT

Plaintiff claims that defendant discriminated against him in connection with his employment as a TSA airport security screener. This court is familiar with the background and facts of this case, as set forth in its Order of August 1, 2007. In that Order, the court dismissed or granted summary judgment on plaintiff's claims of hostile work environment, failure to promote to rotating screening manager between October 2002 and February 2003, and failure to promote to temporary screening manager in June 2003. The court denied summary judgment on plaintiff's claims of discrimination in TSA's failure to hire him for a permanent screening manager position in September 2003, and in TSA's termination of him in November 2003, but extended the motions deadline to file another dispositive motion if subsequent

discovery should warrant such a motion. Defendant now renews its motion for summary judgment on plaintiff's termination claim.

TSA has consistently proffered a nondiscriminatory reason for the termination: that TSA's procedures required termination of plaintiff because he twice failed a mandatory recertification test of screening procedures. Plaintiff's only allegation to dispute this reason arose from a declaration from former TSA screener Milagros Drake, who suggested that other screeners were given more than the two chances TSA gave plaintiff to pass the recertification test.

Defendant has now deposed Ms. Drake. Her sworn deposition testimony establishes that plaintiff was not treated any differently from Ms. Drake or any other screener that Ms. Drake knows about. On the key point of retesting, Ms. Drake clarified that although TSA and contractor testers both allowed her to take multiple <u>practice</u> run-throughs of the recertification test, she was allowed only two chances at the test that actually counted. She was not aware – from personal knowledge or any other source – of any screener who was allowed to take the recertification test more than twice.

Thus Drake's testimony confirms, rather than contradicts, the declaration of the TSA official responsible for recertification, Pete Marcello. Marcello establishes that screeners who failed the recertification test on the first try

were retrained and then given one, and only one, more chance to pass it. Since it is undisputed that this is exactly the way TSA treated plaintiff, defendant is entitled to summary judgment on plaintiff's termination claim.

Although it is not part of defendant's burden at this stage of summary judgment, defendant will also respond to one argument that plaintiff has raised in response to earlier summary judgment motions: that defendant should have disclosed more information about the test and the contractors who administered it. To ensure a complete record defendant will show herein that plaintiff has long had ample information from which he could obtain whatever information on those topics that he believed he needed.

ARGUMENT

I. BECAUSE MILAGROS DRAKE'S TESTIMONY CONFIRMS THAT PLAINTIFF WAS NOT TREATED ANY DIFFERENTLY FROM OTHER SCREENERS, THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DEFENDANT ON PLAINTIFF'S TERMINATION CLAIM.

   A. Ms. Drake's Declaration Created the Only Potential Issue of Material Fact Raised by Plaintiff to the Court Granting Summary Judgment on Plaintiff's Termination Claim.

This court has set forth the appropriate legal standards governing summary judgment and Title VII in general, and governing consideration of plaintiff's termination claim in particular, in its August 1, 2007 Order (at 2-7). Here, defendant concedes for the purposes of argument that, on his

3

termination claim, plaintiff has made out a prima facie case of discrimination and retaliation under the McDonnell-Douglass burden-shifting analysis. There is no real dispute that defendant has proffered a legitimate non-discriminatory reason for terminating plaintiff: that nationwide TSA policy required the termination because plaintiff failed a mandatory recertification test administered by a contractor. Plaintiff took the test once, failed, received retraining, took the test again, failed again, and was terminated. Concise Statement, ¶¶ 4-5.

Thus, the burden shifts to plaintiff to produce evidence of discriminatory or retaliatory intent, arising from either a racial or retaliatory animus, to rebut this showing of a legitimate non discriminatory grounds for the termination. The only potential issue of material fact raised by plaintiff in response to previous summary judgment motions arose from the declaration of screener Milagros Drake, who suggested that TSA treated plaintiff differently than other screeners who took the recertification test. If the assertions in Drake's declaration are inadmissible in evidence, or if Ms. Drake's clarification of those assertions at her deposition makes clear that there is no issue of material fact, the court should enter summary judgment for defendant.

    B.    <u>Ms. Drake's Deposition Testimony Makes Clear that She Has No Admissible Evidence that Plaintiff Was the Victim of Discriminatory Treatment</u>.

A trial court can only consider admissible evidence in ruling on a motion for summary judgment. <u>See</u> Fed.R.Civ.P. 56(e); <u>Beyene v. Coleman Sec. Servs., Inc</u>., 854 F.2d 1179, 1181 (9th Cir. 1988). A witness's testimony must be based on personal knowledge. Federal Rule of Evidence 602.

In addition, if there is a conflict between a witness's sworn deposition and the witness's declaration submitted for summary judgment purposes, the deposition testimony controls. "[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." <u>Kennedy v. Allied Mut. Ins. Co.</u>, 952 F.2d 262, 266 (9th Cir. 1991).

Here, at Drake's deposition, she repudiated or clarified the key assertions of her declaration on which plaintiff relied to defeat summary judgment. The following comparison of Drake's declaration assertions to her deposition testimony shows that the key assertions in her declaration are misleading, inaccurate or lacking in a proper basis in personal knowledge.

In her declaration Drake claimed that "TSA screeners retook the test several times, more than two times over until we passed." Drake Dec. ¶ 8. At her deposition, however, Drake made clear that she had no personal knowledge about how other

5

screeners were treated, and that even through hearsay she was not aware that any screener took the test more than twice.

Thus Drake testified did not actually observe any other screener being tested. Ex. I to Concise Statement, at 13-14, 18. She was tested once by contractor employees (who she recalled as being employed by McDonnell-Douglas). Id. at 13. She failed one portion of the test – what she called the "lavalava" portion of the test, in which screeners were asked to search a subject wearing Samoan garb. After the initial failure, she was retrained by TSA employees. Id. at 18. She was also given multiple practice run-throughs by the contractor employee before taking the test a second time, and passing. Id. at 16-17. Her declaration's claim about screeners taking the test more than twice was a reference to this process of taking the test for practice, after being explicitly informed that the attempt did not count. Depo at 36-37. She did not know of anyone who was allowed to take the test more than twice where the results were counted. Id. at 20, 37, 48.

Drake's Declaration asserted:

> I was present when Mr. Kamahele became upset when the testers said everyone was failing and took them out of the screening line. As a result, Mr. Kamahele ordered the screeners to be retrained and retested until they passed.

Drake Declaration, ¶ 8. At her deposition, however, Drake says that an order for retraining and retesting came through her

supervisory chain, not from Kamahele directly.  Ex. I at 35.  She did not hear Kamahele or any other supervisor direct or suggest that any screener be given the test more than twice.  Id. at 30, 35-36.

Drake's declaration asserted that almost all the screeners failed the recertification test; she estimated that "99% of the screeners failed the hands on recertification test."  Drake Dec. ¶ 4, 6.  At her deposition, however, she concedes that she knew only about the 18 to 20 screeners who worked at the same checkpoint as her, not about the hundreds of other screeners at Honolulu International.  Ex. I at 27-28.  Her best estimate is that half of those 18-20 screeners failed the recertification test on their first try.  Id. at 29.

Drake's declaration alleged that Ware was the only screening supervisor terminated for failing the test.  Drake Dec. ¶ 11.  At her deposition, however, she concedes that this allegation relied on the fact that there was a lot of talk about plaintiff being terminated, but that she did not hear such talk about other screening supervisors.  Ex. I at 39-40.  She had never even heard of Richard Kidani, another screening supervisor who was terminated for failing the test.  Id. at 40.

Drake asserted in her declaration that:
> The recertification test was given in an arbitrary subjective manner to the screeners. Whether we passed or failed was up to the testers.

7

Drake Dec., ¶ 8. At her deposition, however, Drake clarified that what she thought was unfair about the test was that the lavalava portion of the test, in which screeners were tested on a procedure they had never been trained for. Ex. I at 33-35. She believes that the rest of the testing process was fair. Id. at 34-35. She also states that the word "arbitrary" in her declaration was inaccurate, and that she is not even sure what the word means. Id. at 32-33.

    Thus, Ms. Drake's deposition testimony is entirely consistent with (and indeed confirms) the key assertions of Pete Marcello: that the "hands-on" portion of the recertification test was administered by non-TSA employees; that any screener who failed the test the first time was retrained by TSA; and that any screener who failed the first time was then given one, and only one, more chance the test a second time, again by non-TSA employees. Marcello Dec., ¶¶ 2-6; Ex. F (indicating that Ware was given "the opportunity for remedial training and additional practice"); Ex. G, 7th unnumbered page (plaintiff's declaration conceding that he was retrained twice after failing the first recertification test and before retaking the test). Accordingly, Drake's declaration, even if resubmitted in response to this motion, will not create a genuine issue of material fact to rebut defendant's nondiscriminatory grounds for terminating plaintiff.

The court should therefore enter summary judgment for defendant on plaintiff's termination claim.

II. PLAINTIFF HAS RECEIVED AMPLE DISCOVERY REGARDING THE IDENTITY OF THE PERSONS WHO ADMINISTERED THE CRUCIAL TEST TO PLAINTIFF.

In response to defendant's previous summary judgment motions, plaintiff has argued that there may have been problems with the format, scoring, validation or administration of the test that plaintiff failed, and that plaintiff's supposed inability to discover the identities of the testers prevented him from fully responding to defendant's proffered nondiscriminatory reason for termination. Essentially, plaintiff sought to place the burden of discovering the identity of the third-party testers on defendant, and to argue that the court should draw a negative inference against defendant because defendant was unable to provide the names of the testers. See e.g. Plaintiff's Memorandum in Opposition to Defendant's Second Motion to Dismiss and for Summary Judgment, at 8, 23-25.

The court has properly rejected this argument: "Even if Lockheed Martin improperly administered, or unfairly graded, the test ... this is not evidence of discrimination by Defendant." Order at 26. The court, however, expressed concern that defendant did not produce more information on the subject. Id.[1]

---

[1] In addition, during oral argument on the government's second summary judgment motion, government counsel failed to provide the court with a complete account of the discovery that

To address plaintiff's anticipated argument, as well as the court's concern, and to ensure a complete record, defendant will show that plaintiff has long had enough information to thoroughly investigate any possible flaws in the testing process.

On at least three occasions plaintiff has received contact information regarding the contractor or subcontractor employees responsible for Module 3 of his recertification testing.  On June 2, 2004, before plaintiff filed suit, TSA completed its investigation of his administrative complaint.  The report of investigation included a declaration from Honolulu Training Officer Kevin Byrnes describing the training process.  Attached to Byrnes' declaration was a March 12, 2004 email giving the name and telephone numbers of the Lockheed-Martin employees responsible for Module 3.  <u>See</u> Exhibit I to Defendant's Concise Statement.

Plaintiff filed this suit against TSA and Lockheed-Martin November 12, 2004.  On September 30, 2005, plaintiff dismissed all claims against Lockheed-Martin.  On February 6, 2006 Lockheed-Martin's counsel, Steven M. Nakashima, in a letter to plaintiff's counsel, provided the company names of the two Lockheed-Martin subcontractors responsible for performing the

---

has been provided to plaintiff on the identity of the testers, and may have left the impression that the government had not provided any information to plaintiff on the topic beyond the basic fact that Lockheed-Martin subcontracted the testing to some unidentified subcontractor.

10

recertification testing, as well as contact names and numbers for the employees for each subcontractor.  Exhibit J to Concise Statement.

    Finally, on August 6, 2007, defendant produced an October 13, 2003 email received by Kevin Byrnes from Lockheed-Martin, which Byrnes had recently discovered while cleaning out a desk drawer.  The email includes the names and cell phone numbers "of the Evaluators that will be conducting the Re-cert testing" at Honolulu International Airport.  See Exhibit K to Defendant's Concise Statement and Declaration of Thomas A. Helper, ¶ 5.

    It is unclear what, if anything, plaintiff has done to follow up on this information.  It is clear, however, that any implication that plaintiff has no idea who performed the Module 3 testing, and no reasonable way of finding out is inaccurate.

## CONCLUSION

    For the foregoing reasons, the court should grant summary judgment to defendant on plaintiff's termination claim.  This leaves for adjudication only plaintiff's claim that defendant

//
//
//
//
//
//

denied him promotion in September 2004 in retaliation for prior projected activity.

    DATED: September 27, 2007, at Honolulu, Hawaii.

                            EDWARD H. KUBO, JR.
                            United States Attorney
                            District of Hawaii

                                /s/ Thomas A. Helper
                      By_____
                          THOMAS A. HELPER
                          Assistant U.S. Attorney

                          Attorneys for Defendant