DAPHNE E. BARBEE   2911
Attorney & Counselor at Law
Century Square, Suite 1909
1188 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 533-0275

**ORIGINAL**

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

NOV 21 2007

at 3 o'clock and 05 min P.M.
SUE BEITIA, CLERK

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RAYMOND WARE, ) | CIVIL NO. 04-00671 HG/LEK |
| ) | |
| Plaintiff, ) | MEMORANDUM IN OPPOSITION |
| ) | TO THIRD MOTION FOR |
| vs. ) | SUMMARY JUDGMENT OF |
| ) | DEFENDANT MICHAEL |
| MICHAEL CHERTOFF, Secretary, ) | CHERTOFF; CERTIFICATE OF |
| Department of Homeland Security; ) | SERVICE |
| JOHN DOES 2-5, ) | |
| ) | DATE:   December 10, 2007 |
| Defendants. ) | TIME:   10:30 a.m. |
| ) | JUDGE:  Hon. Helen Gillmor |

**MEMORANDUM IN OPPOSITION TO THIRD MOTION FOR
SUMMARY JUDGMENT OF DEFENDANT MICHAEL CHERTOFF**

COMES NOW, Plaintiff RAYMOND WARE, by and through his attorney,

Daphne E. Barbee, and files this Memorandum in Opposition to Third Motion for

Summary Judgment of Defendant Michael Chertoff filed September 27, 2007.

Defendant filed two previous motions for summary judgement which were

denied in part by Judge Helen Gillmor. To the extent, defendant makes similar arguments as were previously made in the other motions for summary judgment plaintiff relies on the memorandum and declarations and exhibits filed in opposition to the prior summary judgment motions and incorporate them in the instant motion. The bulk of defendant's Third Motion for Summary Judgment relies on the deposition of plaintiff's witness Milagros Drake.

Plaintiff takes issue with defendant's characterization that Ms. Drake's testimony establishes plaintiff was not treated any different from her. In fact, the testimony of Ms. Drake at her testimony establishes that she was treated better than plaintiff during the subjective hands-on recertification test. See <u>Defendant's Exh. K</u>. Ms. Drake acknowledged that when she failed the first hands-on portion of the recertification test in 2003, the tester told her about her failure. She was then shown how to pass the test by given retraining 6 to 7 times from the tester. She, along with 3 other screeners, were retrained prior to taking the test again. Ms. Drake testified that once she was comfortable, the tester tested her a second time in which she passed.

Unlike Ms. Drake, plaintiff was not given retraining 6 to 7 times by the testers to ensure he would pass. See <u>Declaration of Plaintiff</u>. Thus, plaintiff was not given the same opportunity of having 6 to 7 times practices before retaking the test.

2

Plaintiff also was not informed that he failed the test by the testers. It further appears as though there were different testers for Ms. Drake than for plaintiff. Ms. Drake indicates that she was tested by a female and a male. Plaintiff was only tested by males.

Defendant's main bone of contention is that Ms. Drake's declaration should not be considered because she disavowed that use of the term "arbitrary" in describing the test. Even without the "arbitrary" term, Ms. Drake's deposition establishes her view that the recertification hands-on test was subjective in that it was up to the testers whether or not a person passed or failed. There was no objective criteria or grading criteria. It is telling that when Ms. Drake was first questioned about the testing, she stated:

> "Q. You thought that (hands on recertification test) was arbitrary?
> A. Yes because it's really up to them whether we are
> doing it, you know, right or not." Page 31, Defendant's Exh. K.

She did not question the term arbitrary when it was first posed to her by the Assistant US Attorney. Only later did she change her descriptive terminology. Even with the terminology change, she testified:

> "The subjective manner, what I meant about that is that it
> is really up to the tester whether we pass or not." Id. pg 48.

3

When Ms. Drake performed the recertification hands-on test, her tester asked whether she was comfortable. Ms. Drake testified:

> "And then the tester said, okay. Now you're comfortable now. Now this is the actual test, and of course by that time, you know, <u>you do it repeatedly many times</u>, and now when they said, 'This is the actual test now'. Okay you're done you're perfect super. You passed." <u>Id</u>. pg 17. (Emphasis added)

This is far different from the tester's treatment of plaintiff who was not retrained several times. See <u>Declaration of Plaintiff</u>. Ms. Drake's testimony confirms rather than contradicts plaintiff's differential treatment in the recertification hands-on testing process.

Ms. Drake confirmed that she heard Ken Kamahele "talk about his concern that a lot of people were failing the test the first time around". See <u>pg 19</u>.

The Declaration of Pete Marcello, which defendant relies upon, is not based on personal knowledge and should be stricken from consideration. Mr. Marcello, who works out of Virginia, was not present during the testing of Ms. Drake, nor the testing of plaintiff. Mr. Marcello did not observe the testing, did not verify the test results with the testers, did not provide the testing criteria or SOP and is simply reiterating information from an unknown source that plaintiff failed. This is hearsay and insufficient proof to establish that the hands-on test was administered in a fair and equal manner and that plaintiff failed. Mr. Marcello does not know anything

4

about the recertification hands-on portion of the test other than what he was told. The Court should therefore disregard Mr. Marcello's declaration as not based upon personal knowledge.

In the instant case, defendant did not treat plaintiff the same as another TSA screening supervisor who was not African-American, Richard Kidani. Richard Kidani failed the objective written portion of the recertification test in 2003. Instead of terminating him immediately, TSA management kept Mr. Kidani throughout his appellate process. See Exh. 26 p. 77-78. Mr. Ware also filed an appeal once he was told he failed the hands-on portion of the recertification test. See Exh. 29. Unlike Mr. Kidani, TSA management immediately terminated Mr. Ware. The differences between these two persons are race and the portion of test failed. In an objective written test, it is fairly easy to determine right or wrong. In a hands-on subjective performance test where the testers are unidentified, the SOP and grading criteria not disclosed, it is very difficult to show a person passed or failed.

Without any objective criteria, Defendant cannot establish that the recertification test given to plaintiff was valid and job related, as is required under 29 C.F.R. Sec. 1607.16(f) and 42 U.S.C. 2003-2(k)(1)(a)(i). Failure of the recertification test for TSA Screeners is no longer a basis for automatic termination. See Exh. 24 p. 5. Defendant's recertification hands-on test is constantly changing

as are the rules for screeners.

In order for a test to be valid, it must be job related. Job related "cannot be proved through vague and unsubstantiated hearsay". <u>Albemarle Paper Co. v. Moody</u>, 422 U.S. 405 at 428 (1975), <u>Gulino v. New York State Educ. Dept.</u>, 460 F.3d 361, 386-387 (2nd Cir. 2006). As defendants have produced no evidence that the test is valid, the test should not be considered legitimate to terminate plaintiff.

Under the 5th Amendment of the U.S. Constitution, federal agency employers must comply with due process before terminating a federal employee. See <u>Cleveland Board of Education v. Lauder Mill</u>, 470 U.S. 532, 546 (1985), <u>Webster v. DOE</u>, 486 U.S. 592 (1988), <u>AFGE v. Stone</u>, No. 05-15206 (9th Cir. 9-5-07) attached. In the instant case, plaintiff was denied due process when defendant refused to explain in what manner plaintiff failed the recertification hands-on test.

Ms. Drake's deposition does not conflict with her declaration except for the term "arbitrary". Without the term arbitrary, there is no conflict establishing that plaintiff was treated differently from others who were given the recertification test. There is no dispute that Richard Kidani, who failed the written portion of the recertification test, was allowed to remain pending his appeal while plaintiff was not. This established different treatment for similar activities. Ms. Drake does not have to testify as to how other screeners were treated by the testers. Her own

6

testimony establishes that she was treated much better than plaintiff. Her own testimony establishes that she was treated much better than plaintiff. Her deposition testimony that at least half of the 18 to 20 screeners failed the recertification test on their first try does not show that plaintiff was treated the same as all others.

Plaintiff was the only screening supervisor terminated for failing the hands-on portion of the recertification test. Richard Kidani was terminated for failing the written portion of the test. Therefore, Ms. Drake's deposition does not contradict her declaration that plaintiff was the only supervisor terminated for failing the hands-on test.

Defendant's assertion that Ms. Drake's deposition shows that she is in agreement with Pete Marcello concerning the hands-on portion of the recertification test administered by non-TSA is incorrect. As made clear in the deposition, Ms. Drake did not know who performed the hands-on recertification test. Nor does Mr. Marcello, who never observed the hands on recertification test.

Defendants argue that because plaintiff is unable to identify the testers who tested him, that therefore his claim that he passed the test should not be considered is incorrect. Once a defense is raised, it is the burden on defendant to present evidence of this defense. Defendant raised in its answer, paragraph 33, that plaintiff was terminated because he failed the recertification test. As of this date, defendant

7

has not presented sufficient proof that plaintiff failed the recertification test. Plaintiff has established pretext as defendant refuses or is unable to present: 1) the name of the persons who tested plaintiff and verification the test was administered in a fair and equal manner, 2) objective criteria for grading the hands-on portion of the test administered to plaintiff, and 3) proof that the recertification test is valid. Obviously since plaintiff is no longer employed by TSA, he does not have access to this information. Up until the time of the last Court hearing, defendants informed plaintiff's counsel through interrogatories and production of documents that the testers were from Lockheed Martin. Defendant has given plaintiff various names of different people who may have been testers. See Exhibits H, I, and J.

Once Lockheed Martin's attorney appeared in Court and informed the parties that employees from Lockheed Martin were not the testers, (Exh. 33) defendant claimed the testers could not be identified due to SSI privacy concerns, and objected to plaintiff's discovery attempts. The names in Exh. H were not plaintiff's testers as they are female, and plaintiff was tested by males. See Declaration of Plaintiff.

In summary judgement, the Court must view the evidence in the light most favorable to the non moving party, ie. plaintiff. See Reeves v. Anderson Plumbing Products, Inc., 520 U.S. 132, 150 (2000). In the instant case, the Court should

accept plaintiff's viewpoint that he passed the test since there is no evidence contradicting him. It is not plaintiff's burden to go on a wild goose chase, searching throughout the entire United States for a person who may have tested him. Defendant paid an organization and/or persons to perform the recertification test, and would have documents reflecting this fact. If defendant claims plaintiff failed the test, verified evidence of this failure should properly be presented.

According to defendant's response to plaintiff's Fourth Request for Answers to Interrogatories and Production of Documents, <u>Exh 24</u>, defendant was asked for the name, address, and phones numbers of all persons who designed the recertification test. Defendant was also asked for the name, address, persons responsible for administering the score grading recertification test for TSA screener. Defendant's response was that:

> "it has contracted with Lockheed Martin to conduct the administration of the recertification process for all screener personnel nationwide....Defendant is <u>unaware</u> of the names of addresses of the Lockheed Martin (or subcontract) employees who administered the recertification process in Hawaii from 2003 to 2006". <u>Exh. 24</u> page. 3. (Emphasis added)

The Court should accept plaintiff's viewpoint that he passed the test since defendant has not presented any evidence showing the test was valid and administered in a fair manner. Defendant did not present declarations from the

9

testers. Defendant did not present evidence of the SOP and grading criteria of the test. See Exh 25, Under Seal. Therefore, all of the results are hearsay and uncorroborated.

Defendant's argument that since it did not administer the test, it should not be liable is disingenuous. In Poland v. Chertoff, 494 F.3d 1174, 1183 (9th Cir. 2007) the Court ruled:

> "We hold that if a subordinate, in response to a plaintiff's protected activity, sets in motion a proceeding by an independent decisionmaker that leads to an adverse employment action, the subordinate's bias is imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process. This standard is consistent with what we have suggested in previous Title VII retaliation cases, see Bergene v. Salt River Project Agric. Improvement & Power Dist., 272 F.3d 1136, 1141 (9th Cir. 2001) ("Even if a manager was not the ultimate decisionmaker, that manager's retaliatory motive may be imputed to the company if the manager was involved in the [adverse employment] decision."); Galdamez v. Potter, 415 F.3d 1015, 1026 n. 9 (9th Cir. 2005) ("Title VII may still be violated where the ultimate decision-maker, lacking individual discriminatory intent, take an adverse employment action in reliance on factors affected by another decision-maker's discriminatory animus."), and with the law in a majority of the circuits, see e.g., Laxton v. Gap Inc., 333 F.3d 572, 584 (5th Cir. 2003) (holding that "the discriminatory animus of a manager can be imputed to the ultimate decisionmaker if the [manager]....'had influence or leverage over'" the ultimate decisionmaker (quoting Russell v. McKinney Hosp. Venture, 235 F.3d 219, 226 (5th Cir. 2000)); Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 286 (3rd Cir. 2001) (holding that an employer is liable for the discriminatory actions of employees exhibiting discriminatory animus if they "influenced or participated in the

10

[adverse employment] decision"); Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 55 (1st Cir. 2000) ("One method [of proving pre-text] is to show that discriminatory comments were made by.... those in a position to influence the decisionmaker."); Griffin v. Wash. Convention Ctr., 142 F.3d 1308, 1312 (D.C. Cir. 1998) ("Evidence of a subordinate's bias is relevant where the ultimate decision maker is not insulated from the subordinate's influence.")

In the instant case, it was Defendant who fired plaintiff, not the testers. Defendant hired the testers. The ultimate adverse employment decision was defendant's, who is responsible for discrimination in the administration of the test and the manner in which different screeners were given different treatment.

Defendant asserts plaintiff failed to find a prohibited item during the hands on recertification test. Plaintiff denies this and states that he did find an item, i.e. knife, during both phases of the recertification hands-on test. See Third Decl of Plaintiff. Thus the matter of credibility has been raised. When there is a matter of credibility, there is a triable genuine issue of material fact for which a jury should determine. See Reeves v. Anderson Plumbing Products, Inc., 520 U.S. 132, 150 (2000) (The court must draw all reasonable inferences in favor of the non-moving party and it will not make credibility determinations one way or the other).

Plaintiff has presented sufficient evidence of pretext. The fact that there were different reasons provided to plaintiff for his "failure" of the recertification test

11

raise genuine issues of fact. See Carlton v. Mystic Trans. Inc, 202 F. 3d 192 (2nd Cir. 2000) ( different reason offered by the employer for dismissal raise genuine issue of material fact). Plaintiff was first told he failed the test using a pass/fail grading criteria. Then he was told it was a percentage criteria. He was later told he failed four parts, then three parts, then two parts. See Declaration of Ware, Third Declaration of Plaintiff. Defendant told plaintiff he could not see the test results. He was told various different names for testers. All of these responses by defendant raise a genuine material issue of fact of pretext.

Timing of an adverse action also presents evidence of pretext. See St. John v. Employment Development Dpt., 642 F. 2d 273, 274 (9th Cir. 1981) (five month time period between plaintiff's complaint of discrimination and his termination creates a genuine issue of material fact for retaliation case). In the instant case, plaintiff filed a formal discrimination complaint in August 2003 , and three months later he was terminated for allegedly failing a recertification test.

A pretext also arises when similar employees are treated differently for similar conduct. See Jones v. Southwest Airlines, 99 F. Supp. 2d 1322, 1325 (D. N. M. 2000) (Court denied summary judgement where two employees of different races were treated differently by employer for similar conduct) , and Graham v. Long Island Rail Road, 230 F. 3d 34, 38 (2nd Cir. 2000) ( whether two employees are similarly situated is a question fo fact fo the jury to determine). In the instant

12

case, plaintiff was immediately terminated despite his appeal, while another non African American screening supervisor was allowed to remain on the job pending his appeal. See Exh. 26. All of these facts, taken in the light most favorable to plaintiff, are evidence that defendant's reason for terminating him is pretextual, and due to plaintiff's race and/ or retaliation for complaining about defendant's discriminatory treatment.

## CONCLUSION

Plaintiff requests that this Court deny defendant's Third Motion for Summary Judgment and allow this matter Court to proceed to trial. There is insufficient evidence that plaintiff failed the recertification test, that the test was valid, and that plaintiff was treated the same as other non African-Americans who took the test. There are genuine disputed issues of material fact.

DATED: Honolulu, Hawaii, 11-21-07

_____
DAPHNE E. BARBEE
Attorney for Plaintiff RAYMOND WARE

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| RAYMOND WARE,                )<br>                                              )<br>              Plaintiff,           )<br>                                              )<br>    vs.                                    )<br>                                              )<br>MICHAEL CHERTOFF, Secretary, )<br>Department of Homeland Security, )<br>DEPARTMENT OF HOMELAND  )<br>SECURITY; JOHN DOES 2-5,   )<br>                                              )<br>              Defendants.         )<br>_____ ) | CIVIL NO. 04-00671 HG LEK<br><br>CERTIFICATE OF SERVICE |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was duly served upon the following parties at their last known addresses by means of hand delivery on this date.

        EDWARD H. KUBO, JR., ESQ.
        U.S. Attorney
        THOMAS A. HELPER, ESQ.
        Assistant U.S. Attorney
        Rm. 6-100, PJKK Federal Building
        300 Ala Moana Blvd.
        Honolulu, Hawaii  96850

Attorneys for Federal Defendants

DATED: Honolulu, Hawaii, _____11-21-07_____.

_____
DAPHNE E. BARBEE
Attorney for Plaintiff