Re-certification 03-04.

Test results for Mr. Raymond Ware (SSN: 4947) for Module 3

| Iteration | Date | Module 3 | | | | | |
|---|---|---|---|---|---|---|---|
| | | Hand Held Metal Detector 1 | Hand Held Metal Detector 2 | Full Body Pat Down | Explosive Trace Detection (ETD) | Physical Bag Search 1 | Physical Bag Search 2 |
| Test | 11/6/03 | 50% | 71% | 58% | 59% | 100% | 93% |
| Retest | 11/7/03 | 96% | 0%* | 0%* | 79% | | |

* A score of 0 means a screener failed to locate a prohibited item during the demonstration. It is a critical failure and results in an automatic failure regardless of the actual score.

Ex. 14

# AFFIDAVIT

STATE of HAWAII

CITY OF HONOLULU

IN RE: Raymond E. Ware v. TSA          Case No. 7-03-7200

I, Raymond E. Ware, affirm the truth of the following statement freely and voluntarily to Ron Lehman who has identified himself to me as a contract EEO Investigator. I am aware that this statement may be used in evidence, that it is not confidential and that it may be shown to any interested party to the complaint investigation.

My position before I was terminated was Checkpoint Screener Supervisor, Honolulu International Airport. My race is African American and I was hired by TSA while in Washington, DC. Much of the discrimination I faced at Honolulu International Airport began after I filed my first EEO complaint on June 23, 2003. I filed additional EEO complaints alleging that I was subjected to discrimination that were accepted by the TSA as

> Whether the complainant a Checkpoint Screener Supervisor at the Honolulu International Airport was discriminated against on the basis of his race (African American) and/or in retaliation for prior EEO activity when: (1) he was not selected for the position of Screening Manager, Honolulu International Airport, on June 7, 2003; (2) he was denied training in June 2003; (3) he was not allowed to rotate from October 2002 through February 2003 as other Mobile Screeners; and (4) he was reassigned to the Hawaiian Airlines Checkpoint as a Checkpoint Screener Supervisor on July 11, 2003.

Background

initials

In May 2002, I applied for and was accepted as a candidate for the position of Screening Manager prior to arriving at Honolulu International Airport (HNL). This was accomplished by applying to Washington D.C. by mail, email and faxed applications. Once approved, I was told by NSC Pearson that my name was forwarded to the Federal Security Director (FSD) at HNL, Sidney Hayakawa. Upon arrival in Honolulu, I asked Mr. Hayakawa when he expected to hold interviews for the position. Mr. Hayakawa informed me that he had developed a new selection program. Instead of selecting from the best qualified list he was going to rotate all of the Mobile Screeners (such as myself) into the position on an interim basis. He further stated that each member would remain in the position for 1 month, that way he would be able to determine who was "best suited" for the position based on their performance at HNL. He rotated several who it was said were ones he knew that he wanted to select but their names were not on the NCS Pearson selection list.

**ISSUE-- NO.1: I was not selected for Screening Manager on June 7, 2003.**

On June 15, 2003, we were notified of the selection of Warren Kadakawa, Danny Cappo, Edward Morin and William Waters as new Screening Managers. None of the 4 had any prior screening experience. The only things they had in common were that they were either former Honolulu Police Officers, former AKAL Officers (airport police) or a combination of both. Assistant Federal Security Director for Screening, Mr. Ken Kamahele is also a former Honolulu Police Officer, and was the Director for AKAL, prior to joining the TSA. Also, 3 of the 4 newly hired Screening Managers are of either Hawaiian or Japanese descent as are the FSD Mr. Hayakawa, the AFSD Mr. Kamahele, AFSD Mr. Standford Miyamoto, and Scheduling Operation Officer, Mr. Lance Kaonohi.


initials

I do not know of any vacancy announcement being issued other than the NCS Pearson call for applications to which I responded and was told I was on the list of candidates eligible for selection to Screening Manager. I did not see or hear of any other vacancy announcement for Screening Manager positions at HNL. It is uncertain how, when or if the newly hired Screening Managers ever applied for their positions. It is alleged that Mr. Kadokawa and Mr. Cappo failed the test for the position of Screener. That position is 2 levels BELOW the position they are currently holding. I am a former Police Officer from 2 different States, Hawaii not being one of them.

**ISSUE-- NO. 2, I was denied training in June 2003.**

I believe that because I was not rotated into the position of Screening Manager, as others screeners were, that I was denied the opportunity of additional training which was afforded other Mobile Screeners. I had already been a Screening Manager with a private contractor before TSA assumed all screening. However, it would have been useful to have experience as a Screening Manager at HNL with its unique physical plant and heavy tourist traffic.

**ISSUE-- NO.3, I was not allowed to rotate to the Screening Manager position from October 2002 through February 2003 as other Mobile Screeners were allowed:**

Mr. Hayakawa stated he would rotate all of the Mobile Screeners to act as Screening Managers, however, he only rotated 6 of us, 7 if you include Ms. Masunaga. Neither I, nor the only other African- American, David Norton, were included in the rotation. Fact is, no White or African- American were ultimately selected as a Screening Manager.


initials

ISSUE-- NO.4: I was reassigned to the Hawaiian Airlines Checkpoint on July 11, 2003.

Despite the fact that I was either a Screening Manager or a Screener Supervisor for 3 years with a private contractor prior to joining the TSA, and the fact that I participated in the pilot program for 3 months for the TSA, when I arrived at HNL, I was assigned to the Commuter Checkpoint. This location has only 3 percent of the passenger flow of the other checkpoints. When HNL began it's baggage screening system, I never participated in it or was consulted despite the fact that I had baggage screener supervisor experience and certification. When I complained that I felt my vast knowledge and experience was being wasted, I was then re-assigned to Checkpoint 5 which is the busiest checkpoint. However, I was sent to Checkpoint 5 without ANY supervisory assistance. ALL of the other Checkpoints had at least 2 supervisors and some had as many as 6 per shift, however I had NONE. At Checkpoint 5, I trainied and certified at least 200 new hire screeners. I felt this was retaliation against me for complaining about being banished to the commuter checkpoint. I complained to my Supervisor Robin Wong and she mentioned it to her supervisor Mr. Kamahele. She was told that they were aware of the situation and that she was not to mention it again.

Despite their refusal to provide me with any supervisory assistance, I managed, because of my abilities, experience and hard work, to have the best checkpoint month after month. This was based on workload statistics and the lack of passenger and screener complaints.

On July 11, 2003 I was involuntarily assigned to Hawaiian Checkpoint. At the time it was considered the worst checkpoint because of the number of breaches and low


initials

screener morale. I was told that the reason for the reassignment was because there needed to be an investigation of the Hawaiian Checkpoint supervisor and I would return to Checkpoint 5 after the investigation was complete. I was the only Supervisor reassigned to another checkpoint involuntarily. I was told unofficially that the reason for my transfer was so that I could "whip" the Hawaiian Checkpoint into shape. Again I felt this difficult assignment was retaliation because I had complained about being banished to the commuter checkpoint and that I was not assigned any other screening supervisors to assist me at Checkpoint 5.

    The truth is that I quickly "Whipped" the Hawaiian Airlines Checkpoint into one of the best performing checkpoints and Checkpoint 5 developed numerous problems in my absence. I believed that if I was considered good enough to repair and properly supervise a checkpoint, then I should be recognized as more than good enough to be a Screening Manager. I feel my transfer was in retaliation for my filing an EEO complaint.

    As resolution of my complaint I request:

1. Restoration to employment with all lost pay and benefits.
2. Retroactive promotion to Screening manager with pay effective back to June 2003 when new screening managers were hired.
3. Full seniority for future reduction-in-force.
4. Unspecified monetary damages to be determined later.
5. All attorney fees and costs.
6. Transfer to San Antonio, TX, if Mr. Haykawa remains as FSD

I have read the above statement consisting of ___ pages and I declare under the penalty of perjury that my statement is true, correct, and complete to the best of my knowledge, information, and belief. I understand that the


initials

information I have given is not to be considered confidential and that it may be shown to the interested parties to the investigation and complaint settlement.

_____     _____
signature                            date

_____
investigator's signature



ADDENDUM

I filed two additional EEO complaints concerning three incidents of discrimination. I was not selected for a rotational assignment to Screening Manager on September 6, 2003; I was not selected for promotion to Screening Manager on September 8, 2003, and I was terminated from employment on November 25, 2003.

When I realized I had again not been selected for rotation to Screening Manager, I discussed my nonselection with Mr. Hayakawa. He told me that he had only approved the selections, they were actually made by Ken Kamahale, AFSD for screening. He sent me to talk with Mr. Kamahale who was very difficult to reach for an appointment.

Finally Mr. Kamahale told me the reason I was not selected for rotation or promotion to Screening manager was that my performance was not fully satisfactory. He brought up a customer complaint from a year before that had never been discussed with me. He also brought up a letter in my file by Leo Ventura that was not a counseling letter and certainly nothing negative.

Mr. Ventura had approached me two days before he transferred to another job and said he wanted to discuss "His expectations" with me. I asked him why are you discussing this now since you have been transferred and only have two days left as my supervisor? He said he always did it with new employees but he had never gotten around to doing it with me so he wanted to do it to document the record.

1

His evaluation form mentioned disciplinary counseling and I asked him to delete that since it was not disciplinary counseling and he said to forget it and he wrote on the form that there was no disciplinary counseling. It was only intended to document his expectations that I would follow the rules and regulations and how I would perform as a supervisor. He never said that I was not doing things correctly. He said he did the expectations discussion and letter with all the supervisors but I found out later that he only did it with me.

Four days later, Mr. Kamahale cited Mr. Ventura's expectations evaluation form along with the old customer complaint that really did not concern my performance as the reasons I was not being rotated to or selected for promotion to Screening Manager. In short there were no valid reasons for my treatment. I was never counseled that my performance was not satisfactory and my only evaluation was an "outstanding" performance review as a screening supervisor.

I was terminated because reportedly I did not pass the recertification examination. The objective phase of the examination was taken by computer and scored by TSA employees in Washington. I passed this phase. Two other phases were subjective and given by contractor employees. The first time I took the test I was told that I had failed four parts. I was allowed to take training from subordinates but when I went to take a retest, I was told they had trained me incorrectly and I returned to training again. The second time I was told that I passed two of the four tests I had previously failed.



Upon questioning the results I was told at first by Mr. Hayakawa that I had only failed one test. Then he came back and said I had failed a second one that he had previously said I had passed. In fact, at this point I do not know how or what I failed in the recertification testing. It is extremely difficult to believe that I failed this subjective test and my attorney's request for test scores and criteria have been denied by the TSA.

I do know that I have been treated differently from other employees because of my race and in retaliation for my prior EEO complaints. Richard Kidiana, Asian, with no known EEO complaint activity, failed the first phase and could not take the second and third phases. He is still on the employment rolls drawing pay on administrative leave. I have been told that three screening supervisors acting as interim screening managers also failed the recertification examination and are still employed. Another failed the IMT, but I was the only one terminated. Not everyone was tested. TSA informed me that I was ranked 20th out of 27. They refuse to inform me who ranked me, the criteria for ranking. Employees no. 21-17 presumably still work there. I was the only Screening Supervisor fired for failing certification.

As resolution in addition to the resolution requested in my first compliants: Restoration to employment back to November 25, 2003, as a Screening Manager with full pay and benefits and compensatory damages.



3

I have read the above statement consisting of ___ pages and I declare under the penalty of perjury that my statement is true, correct, and complete to the best of my knowledge, information, and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties to the investigation and complaint settlement.

_Raymond E. Hare_    _March 30, 2004_
signature                date

_____
investigator's signature

