```
              IN THE UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF HAWAII

RAYMOND WARE,                   )   CIVIL NO. 04-00671 HG-LEK
                                )
                                )
              Plaintiff,        )
                                )
        vs.                     )
                                )
MICHAEL CHERTOFF, Secretary,    )
Department of Homeland          )
Security,                       )
                                )
              Defendant.        )
                                )
_____ )
```

**ORDER GRANTING DEFENDANT'S THIRD MOTION FOR SUMMARY JUDGMENT**

This is a Title VII race discrimination and retaliation in employment case against Defendant Michael Chertoff, Secretary of the Department of Homeland Security. Plaintiff Raymond Ware, an African-American male, worked as a Transportation Security Administration security screening supervisor at the Honolulu International Airport. Plaintiff claims that Defendant discriminated against him on the basis of his race by not selecting him for screening manager positions and in ultimately terminating him.

Before the Court is Defendant's third motion for summary judgment. The issue in the present motion is limited to whether there is a material issue of fact in dispute with respect to

1

Plaintiff's November 2003 unlawful termination claim.

For the reasons set forth below, Defendant's third motion for summary judgment is GRANTED.

## BACKGROUND

On August 1, 2007, the Court entered an Order Granting In Part and Denying in Part Defendant's Second Motion to Dismiss and for Summary Judgment. (Order, Doc. 114.) The Court granted Defendant's Motion with regard to Plaintiff's claims for: (1) hostile work environment; (2) failure to promote to rotating screening manager position from October 2002 to February 2003; and (3) failure to promote to temporary screening manager position in June 2003. The Court denied Defendant's motion with respect to Plaintiff's claims for: (1) discrimination and retaliation in failing to hire Plaintiff for a permanent screening manager position in September 2003; and (2) unlawful termination in November 2003.

The Court also extended the dispositive motions deadline to October 15, 2007 so that the Defendant could have the opportunity to file another motion for summary judgment after deposing Milagros Drake, a key witness relied upon by Plaintiff in support of his unlawful termination claim. Ms. Drake, by her affidavit, had provided the only allegation that disputed Defendant's proffered legitimate reason for terminating Plaintiff. Having had the opportunity to depose Ms. Drake, Defendant now moves for

summary judgment on Plaintiff's unlawful termination claim and submits a separate concise statement of facts in support. (Doc. 117, 118.) Plaintiff has filed a memorandum and concise statement of facts in opposition, (Doc. 122, 123), to which Defendant has filed a reply. (Doc. 124.) This matter came on for hearing on December 10, 2007.

The factual background is set forth in the Court's August 1, 2007 Order and need not be repeated here.

### STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). There must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 916 (9th Cir. 1996).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. The moving party need not produce any evidence at all on matters for which it does not have

the burden of proof.  Celotex, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met simply by pointing out to the district court that there is an absence of evidence to support the nonmovant's case.  Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979).  The opposing party must present admissible evidence showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party.  State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989).

Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.  The opposing party cannot, however, stand on its pleadings or simply

assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994). Nor can the opposing party rest on conclusory statements. National Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

## LEGAL FRAMEWORK

**A.   Title VII Disparate Treatment Claim**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin".

"A person suffers disparate treatment in his employment when he or she is singled out and treated less favorably than others similarly situated on account of a protected characteristic." Cornwell v. Elctra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006). To prevail on a disparate treatment claim, a plaintiff must "prove that the employer acted with conscious intent to discriminate." Costa v. Desert Palace, Inc., 299 F.3d 838, 854 (9th Cir. 2002).

When a defendant moves for summary judgment on a Title VII

discrimination claim, the plaintiff alleging disparate treatment may respond in one of two ways:

> when responding to a summary judgment motion, the plaintiff is presented with a choice regarding how to establish his or her case. [The plaintiff] may proceed by using the McDonnell Douglas framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the defendant].

McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 (9th Cir. 2004). "Under the McDonnell Douglas burden shifting framework, a plaintiff must first establish a prima facie case of unlawful discrimination," which requires the plaintiff to show that "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." Id. at 1122 n. 16 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)); Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1123 (9th Cir. 2000). "The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the action. If the employer does so, the plaintiff must show that the articulated reason is pretextual." McGinest, 360 F.3d at 1122 n. 16.

**B.   Title VII Retaliation Claim**

Title VII also prohibits retaliation:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ...

>because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). "This section protects an employee or former employee from retaliation for engaging in a protected activity, such as opposing any practice made an unlawful employment practice by Title VII, or participating in any manner in an investigation, proceeding, or hearing under Title VII." Rhodes v. Electronic Data Systems Corp., 2007 WL 1988750, at *6 (E.D. Cal. July 3, 2007) (citing Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1065 (9th Cir. 2003)).

To establish a claim of retaliation, a plaintiff must prove that (1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment action. Poland v. Chertoff, 494 F.3d 1174, 1180 (9th Cir. 2007).

If plaintiff makes this initial showing, then the burden shifts to the employer to articulate a legitimate reason for the adverse action. Rhodes, 2007 WL 1988750, at *7. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Id. (citing Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000). "Only then does the

case proceed beyond the summary judgment stage." Id. (citing Brooks, 229 F.3d at 928).

## ANALYSIS

Defendant contends that it terminated Plaintiff because he failed a recertification test given to airport screeners. The validity of the recertification test is not at issue. Defendant has shown that the recertification test, mandated by federal regulation, was a valid, job-related test. The Court has also rejected Plaintiff's challenge to the form of the test as a basis for a claim of discrimination by Defendant against him.[1] (Aug. 1, 2007 Order at 25-26.) The evidence in the record shows that Defendant contracted with Lockheed Martin, who, in turn, contracted with subcontractors to administer the test. (Declaration of Pete Marcello ("Marcello Decl.") at ¶5, attached to Def. CSF.) No TSA employees at the airport were involved in the evaluation or scoring of any screener's performance in Module 3 of the test. (Id.) Plaintiff has not put forth any evidence to contradict this and show that TSA employees were involved in the administration or scoring of the recertification test. The

---

[1] At the hearing on Defendant's Second Motion for Summary Judgment, Defendant had indicated that it was unable to identify the individuals who actually administered the hands-on portion of the recertification test. (Order. at 25.) Defendant's third motion for summary judgment clarifies that Lockhead Martin, who it contracted with to administer the test, did, in fact provide information as to the subcontractor test administrators to Plaintiff in February 2006, and that Defendant recently provided Plaintiff a complete list of names and contact information for the test administrators. (Motion at 9-11; Def. CSF at I and J.)

8

test results show that Plaintiff failed three sections within Module 3 of the recertification test. (Id. at 6-7.)[2]

In the motion before the Court the question is whether Defendant discriminated against Plaintiff in some way in the circumstances surrounding the administration of the test. Plaintiff's only argument and evidence on this point is that: (1) Ms. Drake, after failing the recertification test the first time, was allowed several practice tests before taking it a second time, while Plaintiff was not; and (2) Richard Kidani, a non-African-American who failed the written portion of the recertification test was, unlike Plaintiff, not terminated immediately, but rather, Defendant continued to employ Kidani while he appealed his termination.

In sum, the basis for Plaintiff's termination claim is that Defendant treated Plaintiff differently from these two similarly situated employees by not giving Plaintiff the opportunity to take multiple practice tests before he had to take the recertification test for a second time, and by not retaining Plaintiff while he appealed his termination for failing the

---

[2] Plaintiff's argument that Mr. Marcello is without knowledge to testify as to the test results is without merit. Mr. Marcello is the Program Manager for recertification in the Office of Human Capital for the Transportation Security Administration (TSA) in Arlington, Virginia. (Marcello Decl. at 1.) Mr. Marcello helped design the TSA database that contains the results of the recertification tests for all screeners nationwide. (Id.) He obtained the information regarding Plaintiff's tests results from the TSA database. (Id.)

recertification test.

Plaintiff avers that he was only allowed to take the practice test once without the tester present. (Plaintiff's Third Decl. at ¶11, attached to Plaintiff's CSF, Doc. 123.) Plaintiff also avers that, unlike Mr. Kidani, he was immediately terminated upon failing the recertification test. (Id. at ¶9.)

Much of the remaining portions of Plaintiff's Third Declaration are argumentative and not based on personal knowledge. (See e.g., Plaintiff's Third Decl. at ¶¶ 14-19.) Plaintiff, for instance, avers that "[n]o other screening supervisor failed the subjective phase of the hands-on test other than me." (Id. at ¶9.) Such information is not within Plaintiff's personal knowledge. Plaintiff could have, but did not obtain evidence through discovery showing the test results for screening supervisors for a particular period of time. In any event, this statement does little to support Plaintiff's claim. The fact that, according to Plaintiff, no other supervisor failed the hands-on portion of the test, is not circumstantial evidence of discrimination.

Moreover, Plaintiff himself hypothesizes a non-discriminatory reason as to why he failed the test. In paragraph 7 of his Declaration, Plaintiff avers that the testers were upset with him because he requested that they provide proper identification before passing through the check point and that this "factored into their subjective decision" that he failed the

test.  (Plaintiff's Third Decl. at ¶7.)  Such a reason has nothing to do with Plaintiff's race.

### Ms. Drake Evidence

The evidence of Ms. Drake's experience with the testers does not support the theory that Plaintiff had been proceeding under, that is, that others got a number of chances to pass the test. The evidence presented by Plaintiff does not create a genuine issue of material fact.  The undisputed evidence presented by Defendant through Ms. Drake undermines Plaintiff's theory.  As Defendant points out, Plaintiff's first disparate treatment argument hinges on the evidence that Ms. Drake was given multiple opportunities to practice the test while Plaintiff was not.[3]  By Plaintiff's own admission, such treatment was due to the particular test administrators who administered the test to Plaintiff.  (Plaintiff Decl. at ¶3.)  Plaintiff avers that the test administrators allowed him only one practice run, were harsh, and did not provide him encouragement.  (Id.)  Such statements do not give rise to an inference of discrimination, much less an inference of discrimination by Defendant.  As

---

[3] Previously, Plaintiff had argued, based on Ms. Drake's declaration submitted in opposition to Defendant's second motion for summary judgment, that other screeners were permitted to take the test until they passed.  At deposition, Ms. Drake conceded that this was incorrect. Rather, she was given the opportunity to take multiple *practice* tests.  She was not aware of any screener who took the recertification test more than twice, or of any direction from any TSA supervisor that anyone should be allowed to take the test more than twice. (Def. CSF at ¶7, citing Deposition of Milagros Drake (Exh. H) at 13-20, 36-37, 48.)

Plaintiff concedes, he and Ms. Drake had different test administrators (id. at 5), and Plaintiff does not produce any evidence that the practice run-throughs given to Drake were given to anyone else.

Plaintiff's own testimony regarding his training and practice opportunities is also contradictory. In his November 20, 2007 Declaration, Plaintiff states: "During my *single time* being retrained, I was told by the tester that the screeners showed me the wrong way to screen. Then I was told immediately to take the test." (Plaintiff Decl. at ¶12) (emphasis added.) In his earlier signed statement, dated March 30, 2004, Plaintiff stated: "The first time I took the test I was told that I had failed four parts. I was allowed to take training from subordinates but when I went to take the retest, I was told they had trained me incorrectly and *I returned to training again*." (Pl. CSF at Exh. 14 (Addendum to Plaintiff's Affidavit) (emphasis added).)

### Mr. Kidani Evidence

Plaintiff's contention that he was treated differently than Mr. Kidani because he was not placed on administrative leave pending termination similarly fails to support his discrimination claim. Mr. Kidani failed the recertification test in November 2003, appealed the failure, the appeal was denied, and he was terminated in April 2004. (See Def. First Reply Memorandum at Second Marcello Decl. at ¶3.) Defendant terminated Plaintiff at

the end of November 2003, two weeks after he failed the recertification test.  While it is true, as Defendant points out, Plaintiff raised this argument for the first time in his opposition memorandum, the Court considers it.

Defendant is entitled to summary judgment on this claim. Defendant has presented evidence which shows that Plaintiff and Mr. Kidani were not similarly situated. (See Declaration of Johnalyn Nakamura ("Nakamura Decl.") attached to Defendant's Reply.)  First, Mr. Kidani had been on sick leave undergoing chemotherapy for extended periods prior to the recertification testing.  (Id. at ¶3.)  At least eleven other employees who had been on leave had not been required to take the test at all. (Id.)  Plaintiff was not similarly situated to the eleven employees not required to take the recertification test because he was not on any type of leave prior to the administration of the test.  Second, Mr. Kidani had waived his right to retraining between his first and second failures, and a TSA lawyer was concerned that the waiver might have violated TSA policy.  (Id. at ¶5.)  Based on these circumstances, TSA allowed Mr. Kidani to remain on administrative leave pending the outcome of his appeals to TSA headquarters.  (Id.)  Plaintiff's situation is nothing like Mr. Kidani's.

Moreover, the evidence shows that TSA treated Plaintiff the same as other TSA employees who failed the recertification test. TSA terminated the employment of four other employees who failed

the recertification test, including Plaintiff, in November 2003. (Id. at ¶6.) Three of these employees received fewer days of administrative leave than Plaintiff. (Id. at ¶7.)

In sum, Plaintiff has failed to satisfy his burden of showing that the TSA's reasons for terminating him are pretextual. Circumstantial evidence "must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate on the basis of [a prohibited ground]." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998). To the extent it qualifies as evidence, the circumstantial evidence presented by Plaintiff is not substantial enough to meet his burden in light of the legitimate reasons and evidence proffered by Defendant. It does not give rise to an inference of discrimination. Plaintiff has not put forth evidence to show that Defendant's decision to immediately terminate Plaintiff for failing the recertification test was anything more than a decision made while exercising its valid business judgment.

### **Remaining Claim**

The only remaining claim is for discrimination and retaliation in failing to hire Plaintiff for a permanent screening manager position in September 2003. Plaintiff argues that had he been promoted in September 2003, as he contends he should have been, he would not have had to take the recertification test. At the December 10, 2007 hearing,

Defendant conceded that this was factually correct.  This issue goes to the amount of damages, if any, Plaintiff may recover on his failure to promote claim and does not effect the Court's disposition of his termination claim.

## CONCLUSION

For the foregoing reasons,

(1) Defendant's Third Motion for Summary Judgment (Doc. 117) is **GRANTED**;

(2) The only remaining claim is for discrimination and retaliation in failing to hire Plaintiff for a permanent screening manager position in September 2003.

IT IS SO ORDERED.

DATED:   Honolulu, Hawaii, December 20, 2007.



  /s/ Helen Gillmor

Chief United States District Judge

___

Raymond Ware v. Michael Chertoff, in his official capacity as Secretary of the Department of Homeland Security; Civ. No. 04-00671 HG-LEK; **ORDER GRANTING DEFENDANT'S THIRD MOTION FOR SUMMARY JUDGMENT**