DAPHNE E. BARBEE   #2911
ATTORNEY AT LAW
1188 BISHOP STREET
CENTURY SQUARE, SUITE 1909
HONOLULU, HI 96813
TELEPHONE: 808-533-0275



ATTORNEY FOR PLAINTIFF

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| RAYMOND E. WARE; | CIVIL NO. CV 04-00671 HG/LEK |
| Plaintiff, | TRIAL MEMORANDUM; EXHIBIT LIST; CERTIFICATE OF SERVICE |
| vs. | |
| vs. | |
| MICHAEL CHERTOFF, Secretary, Department of Homeland Security; JOHN DOES 2-5, | Trial Date:   February 5, 2008 |
| | Time:   9:00 a.m. |
| Defendants. | Judge:   Helen Gillmor |

## TRIAL MEMORANDUM

### I.    FACTS

Plaintiff RAYMOND WARE worked for Department of Homeland Security

TSA as a Screening Supervisor in Honolulu Airport from November 2002 to

December 2003. Prior to being assigned to Honolulu TSA, Plaintiff was a Mobile

Screener who trained screeners across the country in different airports. Mr. Ware is African-American.

Upon transferring to Honolulu TSA, Mr. Ware informed his supervisors Mr. Sidney Hayakawa and Mr. Ken Kamahele he desired to become a Screening Manager. The difference in pay between a Screening Manager and a Screening Supervisor is approximately $20,000.00 per year.

While Mr. Ware worked at Honolulu TSA, he was passed up for promotion as Screening Manager several times. In June 2003, four persons were hired as Screening Managers who had no previous screening experience by Ken Kamahele. Mr. Ware complained to the EEO officer for TSA Honolulu, Ms. Farha M. Rahman. Ms. Rahman was located in San Francisco, CA, as there was no EEO officer in Honolulu. In his EEO complaint, he alleged discrimination due to race and reprisal when he was not selected for a Screening Manager position. Mr. Ware followed his informal complaint with a formal complaint on August 19, 2003. His formal complaint alleged that he was not considered for Screening Manager positions, despite his qualifications and requests.

In August 2003, Mr. Ware applied for one of three vacancies as a Screening Manager. His name was on a list of qualified applicants and submitted to Ken Kamahele and Sidney Hayakawa. No interviews were conducted for these screening

positions. After Mr. Ware's EEO charge was filed, three other persons were

selected as Screening Managers. None of them were African-American.

Had Mr. Ware become a Screening Manager, he would not have had to take

the recertification test. The Screening Manager position paid more than the

Screening Supervisor position. Mr. Ware filed the instant complaint alleging race

and retaliation discrimination on November 12, 2004.

II.    LEGAL CLAIMS

   a)    Retaliation Discrimination

Under Title VII, 42 U.S.C. Sec. 2000e-3(a), an employer is prohibited from

discriminating against an employee because that employee:

> "has opposed any practice made an unlawful employment
> practice by this subchapter, or because he has made a charge,
> ...or participated in any manner in an investigation,
> proceeding or hearing under this subchapter".

See Ray v. Henderson, 217 F.3d 1234 (9th Cir. 2000). To make out a prima facie

case of retaliation, an employee must show that 1) he engaged in a protected

activity, 2) his employer subjected him to an adverse employment action, and 3) a

causal link exists between the protected activity and the adverse action. See Steiner

v. Showboat Operating Co., 25 F.3d 1459, 1464 (9th Cir. 1994), Obrey v. Johnson,

400 F.3d 691 (9th Cir. 2005), Hashimoto v. Dalton, 118 F.3d 671, 679 (9th Cir.

1997).

Mr. Ware will be able to establish a prima facie case a he 1) engaged in a protected activity by filing a EEO complaint in June 2003 with Farha Rahman and then a formal complaint August 19, 2003, 2) his employer TSA Honolulu subjected him to an adverse employment action by not promoting him to Screening Manager, and 3) a causal link exists between the protected activity and adverse action. The adverse action, failing to promote, took place within a month of Mr. Ware filing a formal EEO complaint. See Ray v. Henderson, 217 F.3d 1234, 1244 (9th Cir. 2000)where the court ruled:

"We also find that Ray has established a causal link between his protected activity and the employment actions by demonstrating that each action was implemented close on the heels of his complaints. That an employer's actions were caused by an employee's engagement in protected activities may be inferred from "proximity in the time between the protected action and the allegedly retaliatory employment decision." See also Yartzoff v. Thomas, 809 F.3d 1371 (9th Cir. 1987)).

Mr. Ware was qualified. Mr. Ware was not given any interview for the position of Screening Manager despite his known desire to become a Screening Manager with promotional activities.

Plaintiff will establish the reason defendant gave for not promoting him were pretextual. Plaintiff first met with Mr. Hayakawa in early September 2003 to request reasons why he was not promoted and to further reiterate his claim of

4

discrimination. He confirmed this meeting in a letter written to Mr. Hayakawa
September 8, 2003. Mr. Hayakawa at no time during this meeting mentioned that
Mr. Ware had any complaints regarding his performance at work. Mr. Hayakawa
referred Mr. Ware to Mr. Kamahele.

Mr. Ware sought a meeting with Mr. Ken Kamahele. Mr. Kamahele finally
agreed to meet with Mr. Ware on October 3, 2003. During the interim between
meeting with Mr. Hayakawa September 3, 2003 and the October 3, 2003 meeting,
two managers, Ms. Hanenberg and Mr. Ventura, were told to write documents
complaining about Mr. Ware.

Mr. Ware  disputes  the hearsay allegations in these two memorandums by
Ms. Hanenberg and Mr. Ventura.  Mr. Ware's witnesses will also dispute that Mr.
Ware had complaints and that he did not know SOP's. Mr. Ware will also present
evidence of Mr. Kamahele's actions and words against screeners to establish his
intent to discriminate against people who exercise their civil rights. Anecdotal
evidence will be introduced establishing Mr. Ware was a good supervisor and that
Mr. Kamahele and Mr. Hayakawa were retaliatory. Statistical evidence will show
that there were no African-American Screening Managers in 2003-2003 at Honolulu
TSA while Mr. Ware worked there. Evidence will be introduced impeaching Mr.
Kamahele's credibility, establishing pretext.

b)    Race Discrimination

Under Title VII 42 U.S.C. Sec. 2000e et seq. (2000) discrimination on the basis of race by an employer in the denial of a promotion is prohibited. See Obrey v. Johnson, 400 F.3d 691 (9th Cir. 2005). To establish race discrimination, plaintiff should establish that he was in a protective class, adverse was taken against him, and that race was a motivating factor in the adverse action. See Costa v. Desert Palace, Inc., 299 F.3d 383 (9th Cir. 2002) affirmed 539 U.S. 590 (2003).

Plaintiff will establish his case as 1) he is a member of a protective class, African-American, 2) he applied for promotion, 3) was denied promotion by the employer, and 4) that race was a motivating factor in the decision not to promote him. See Obrey v. Johnson, 400 F.3d 691 (9th Cir. 2005).

While there is no direct evidence of race discrimination, anecdotal, background statistical evidence and the circumstances surrounding the denial of promotion can be considered to establish indirect evidence of discrimination. It is clear that Mr. Ware was qualified, having been on the list of qualified applicants submitted to Mr. Kamahele, yet Mr. Ware did not receive an interview which is required by the human resource manual on promotions. When Mr. Ware inquired as to the reasons why he was not promoted he was first not given a reason and then secondly given a pretextual reason, which will be established at trial.

6

III.    WITNESSES

All witnesses listed in the final witness list will be called to testify. The previous agreement between plaintiff's counsel and AUSA Helper to allow Dennis Clark, TSA Western Director, Allen Wiley, former TSA Customer Support and Quality Improvement Director, and Farha Rahman, TSA EEO counselor to testify by video conferencing or by telephone is still amendable to the parties upon approval by the Court. None of these witnesses' testimonies will last beyond one hour. Plaintiff anticipate these witness can be called February 7, 2008 in the morning.

Witness Ken Kamahele will be called and his testimony should not last beyond four hours. Witness Sidney Hayakawa's testimony should not last beyond one and a half hours. All other witnesses Milagros Drake, Roger Ioyagi,Cynthia Albert, Eli Waters, SR. ,Ching Chu Ware, Terry Sundoval, Earl Yamasaka,Lauren McMillian,Brian Akizaki, Haneef Bilal Abdul Shafiq should not last beyond one hour a piece. These witnesses are listed on plaintiff's final witness list. Mr. Ware's testimony is anticipated to last four to five hours. Trial should be complete within 5 days.

Many of the defendant's witnesses are also plaintiff witnesses.

IV.    EXHIBITS

Plaintiff Exhibit List is attached and consists of 48 exhibits. Defendant has objected to a number of the exhibits. Defendant's exhibits are numbered 200-210. Some of the exhibits are stipulated to. Plaintiff will object to toy gun replicas and or travel irons, nun-chucks, torch lighters which were recently purchased by defense witness Haneberg as lacking foundation and authenticity FRE 901 and prohibited by Best evidence rule, FRE 1002. The original items allegedly prhobited are the best evidence. In the event the Defendant has destroyed the originals, a spoilation instruction should be given. Lewy v. Remington Arms Co. Inc., 836 F 2d 1104 (8th Cir. 1988)

V.    EVIDENCE

It is anticipated that a number of witness testimony will be objected to by both plaintiff and defendant. Plaintiff will object to any hearsay testimony by Ms. Haneberg concerning alleged complaints from customers that were never documented and items purchased by her such as travel iron, toy gun replicas, nun-chucks. Plaintiff also filed Motion in Limine regarding these matters. Plaintiff will also object to any testimony of "an alleged theft of jacket" which never occurred. This matter is subject to Motion in Limine. Plaintiff anticipates objection to evidence , to wit, toy gun, travel iron, and other items recently purchased by witness Haneberg, as these are not the original items allegedly prohibited by plaintiff.

8

## VI.   DAMAGES

Pursuant to the Complaint, Mr. Ware requests reinstatement to the position of
Screening Manager with defendant and/or front pay in lieu of reinstatement.

Plaintiff requests back pay in the difference between what he would have
made as Screening Manager had he been promoted. He was earning $44,000.00 per
year plus 25% COLA as a Screening Supervisor. As a Screening Manager he would
have earned $64,000.00 per year plus 25% COLA and benefits. There has been
mitigation by Mr. Ware for the year 2005 when he worked temporarily as a
Honolulu Police Department dispatcher from March 1, 2005 to September 1, 2005,
earning $13,906.50 in 2005. The total amount of back pay which should be awarded
in this case is $242,093 plus 25% COLA and benefits, which includes the year 2004
up to and completing the year 2007. This amount also deducts the $13,906.50 he
earned as a police dispatcher in 2005.

Mr. Ware also requests general damages for pain, suffering, humiliation,
embarrassment, and emotional anguish that he went through as a result of the
discrimination in an amount to be determined by the jury in this case.

Mr. Ware also requests equitable damages and that this Court order TSA
Honolulu management to undergo racial diversity training and to follow rules and
regulations concerning promotions to ensure all managers and all employees' rights

9

are protected.

DATED: Honolulu, Hawaii

1-22-08

Dep

DAPHNE E. BARBEE
Attorney for Plaintiff