Exhibit    1

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| KENNETH K. KAMAHELE<br>　　　　Appellant,<br><br>　　　v.<br><br>DEPARTMENT OF HOMELAND SECURITY,<br>TRANSPORTATION SECURITY<br>ADMINISTRATION,<br>　　　　Agency. | DOCKET NUMBER:<br>SF-0752-06-0866-I-1<br><br><br><br><br><br><br>October 9, 2007 |

## AGENCY'S PETITION FOR REVIEW

The U.S. Department of Homeland Security, Transportation Security Administration ("TSA" or "Agency"), hereby respectfully submits its petition for review of the above-referenced matter in accordance with Administrative Judge Craig Berg's Initial Decision, dated July 31, 2007.[1] The Agency requests that the Board grant this petition, reopen the case, and find that the Agency's decision to remove Appellant from his senior management position is supported by a preponderance of the evidence and that the penalty of removal is within the parameters of reasonableness.

### I.   INTRODUCTION

The Administrative Judge's decision to mitigate the removal penalty to a 90-day suspension must be reversed because the Administrative Judge erred when not affording deference to the Agency's penalty determination. The Administrative Judge decided that the Agency's penalty determination is not entitled to deference because he found that Deciding Official Dennis Clark failed to consider three Douglas factors. The record of evidence, however, fully supports a finding that: (1) Deciding Official Clark considered

---

[1] The Agency received an extension of time to file this Petition for Review until October 9, 2007. Order, dated August 10, 2007.

## V. PROCEDURAL HISTORY

Effective April 16, 2006, the Agency removed Appellant from his senior management position for the following specifications of misconduct:

**Charge I:** Inappropriate Conduct[3]

Specification 1: Possessing Jack-in-the-Box job applications to be offered to TSA employees who complained or raised issues about their employment.

Specification 3: Gesturing as if holding a gun while making statements such as "I will off those of you that are becoming a problem," "I'm loading bullets into a gun," and "when I fire I want to make sure they all come out."

Specification 4: Observing a subordinate's promotional interview in a manner that made the subordinate very nervous.

Specification 5: Using derogatory terms such as "punk", "bully" and "scum", threats of imprisonment, and dismissive behavior while counseling a subordinate.

**Charge II:** Lack of Candor[4]

Specification 2: Denying ever having Jack-in-the-Box job applications or suggesting that TSA employees seek a job at a fast food restaurant if they did not like their TSA job.

Specification 3: Denying ever using his finger and hand to simulate firing a gun at his subordinates.

---

[3] At hearing, the Agency did not present evidence in support of Charge I, Specification 2.

[4] Specification 1 of Charge II was not sustained by the deciding official.

6

1.  **Charge I, Specification 3 and Charge II, Specification 3.**

The Agency charged Appellant with using his hand to simulate a gun while making statements such as, "I will pick off those of you that are becoming a problem," "I'm loading bullets into a gun," and "when I fire I want to make sure they all come out." Agency File, Ex. 4(B) at pp. 2-3. The Agency's charging document specifically cited to Earl Yamasaki and Lauren McMillen as witnesses to a meeting wherein Appellant engaged in this misconduct. Id. at p. 7.

To meet the preponderant evidence standard, the Administrative Judge required testimony from a witness who could recollect both that Appellant made the inappropriate comments and also gestured inappropriately. This evidentiary standard is incorrect. See generally, e.g., Lizut v. Dep't of the Army, 30 M.S.P.R. 119, fn. 2 (1986) (agency has right to present evidence on all its charges). The Agency proved this specification when it presented one disinterested witness (Yamasaki) who heard the comment and another (McMillen) who saw the gesture and overhead a comment similar to that charged against Appellant, that he was going to "pick those people off." Feb. 15 Tr. at pp. 63, 77.

   a.  **The Administrative Judge erred by excluding Agency's witnesses.**

The Agency also specifically proffered Jose Abrante, Roger Aoyagi, Karen Kam, and Melanie Villanueva as corroborating witnesses who would testify in rebuttal should Appellant maintain his denial that he made these statements and hand gestures. See Agency's Pre-Hearing Submission at pp. 8-10. The Administrative Judge agreed that these witnesses, amongst others, "appeared to have relevant testimony." Summary of Telephonic Prehearing Conference, dated Feb. 7, 2007 at p. 6. In fact, Yamasaki and Appellant both cited to Kam as an eyewitness to whom Appellant specifically addressed

16

when making his inappropriate gesture and comment. Feb. 15 Hr. at pp. 77-78; Feb. 16 at p. 189. The Administrative Judge, however, excluded Kam and all other Agency witnesses as cumulative, and, contrary to his prior order, he also denied the Agency's opportunity to call a single witness (namely Abrante) in rebuttal of Appellant's denial that he ever made such comments or gestures. See Summary of Telephonic Prehearing Conference, dated Feb. 7, 2007 at p. 7; Feb. 16 Tr. at pp. 140-141.

Although the Administrative Judge is entitled to deference regarding decisions that are made regarding the hearing process, including the number of witnesses that will testify, the Administrative Judge abused his discretion when he first denied the Agency the right to call any rebuttal witnesses and then made several adverse findings against the Agency because it failed to present corroborating evidence. Indeed, the Administrative Judge specifically faulted the Agency for failing to elicit testimony from Lance Kaonohi and Lizette Hanneberg regarding this specification. Initial Decision at p. 23. The Agency, however, never proffered that these individuals had any recollection of the incident. Rather, as discussed above, the Agency proffered four corroborating witnesses (Abrante, Aoyagi, Kam, and Villanueva) whom the Administrative Judge prohibited from testifying in rebuttal.

If allowed to testify, all these individuals would have testified that they attended the same meeting attended by Yamasaki and McMillen and that they observed Appellant making the statements and hand gestures in accordance with the charged specification. See Agency's Pre-Hearing Submission at pp. 8-10. Thus, disallowing such testimony constituted an abuse of discretion because, as discussed above, the Administrative Judge required the Agency to come forward with additional eyewitness testimony. Compare

17

Montgomery v. Dep't of the Navy, 48 Fed. Appx. 790 (2002) (non-precedential) (no abuse of discretion where none of the proposed witnesses were alleged to be present at subject incident, and administrative judge allowed five eyewitnesses to testify) and Ramirez v. U.S. Postal Serv., 4 Fed. Appx. 802 (2001) (non-precedential) (no abuse of discretion in the absence of proffer that rejected witnesses would have provided material evidence).

### b. The Administrative Judge erred by crediting testimony of witnesses he found were biased in favor of Appellant.

Moreover, the Administrative Judge compounded this harmful error when he improperly credited negative evidence from interested parties, Sidney Hayakawa and Johnalyn Nakamura, both of whom attended the same meeting but failed to hear or see Appellant engage in any inappropriate conduct. Initial Decision at p. 23. Their bias was self-evident and recognized by the Administrative Judge in his decision: As the Federal Security Director in charge of TSA operations at Honolulu International Airport, any failure by Hayakawa to address misconduct by Appellant would have reflected negatively upon Hayakawa. Feb. 16. Tr. at p. 43. Nakamura also had responsibilities with respect to workplace conduct, such that her failure to act also would have reflected negatively upon her. Mar. 2 Tr. at p. 6. This self-interest alone should have destroyed each of their credibility when testifying about the absence of Appellant's misconduct, but their testimony was further weakened by the fact that they were not in the audience looking at Appellant but in the front, alongside Appellant, and looking in the direction of the audience. See Hillen v. Dep't of the Army, 35 M.S.P.R. 453, 458 (1987) (bias and witness capacity to observe events are factors to be considered in making credibility determinations); Feb. 16 Tr. at p. 114; Mar. 2 Tr. at p. 28.

18

The Administrative Judge's decision to deny the Agency an opportunity to call rebuttal witnesses and then to penalize the Agency for not calling additional witnesses was harmful error. Additionally, as set forth above, the Administrative Judge also erred in weighing the testimony of the witnesses because he credited the testimony of Appellant's biased witnesses, who were not in the best position to observe Appellant's misconduct, over the testimony of the Agency's unbiased witnesses who were in the audience to whom Appellant spoke and made the inappropriate gestures.

Finally, the Board also should find that the Administrative Judge committed harmful error when failing to sustain the related lack of candor specification. Initial Decision at pp. 38-39. It is undisputed that Appellant denied having made those inappropriate gestures. Feb. 16 Tr. at pp. 15, 186-187; Agency File, Ex. 4(H) at pp. 429, 432. Accordingly, Charge II, Specification 3 also should be sustained.

### 2. Charge I, Specification 4.

The Agency charged Appellant with inappropriately entering and remaining in a room during an interview and making the interviewee (Janet Thompson) feel uncomfortable. Agency File, Ex. 4(B). The Administrative Judge did not sustain this specification, finding that Thompson's testimony and prior statement failed to support a finding that Appellant did anything during her interview to make her feel uncomfortable and that Appellant's mere presence in the room did not constitute inappropriate conduct. Initial Decision at p. 30.

First, the Administrative Judge mischaracterizes Thompson's testimony. While Appellant did not overtly engage in disruptive behavior upon entering the interview

room, his mere presence in the room made Thompson more nervous and, as a result, she did not answer the interview questions well:

[Direct Examination of Janet Thompson]

Q: What effect, if any, did Mr. Kamahele's presence in the interview room have on you?

A: It brought the nervousness up just a notch.

Q: You think that you did well during your interview?

A: No.

Mar. 1 Tr. at p. 110.

Second, the Administrative Judge failed to consider Assistant Federal Security Director Douglas Rae's testimony that, when holding the same position as Appellant, he never observed a promotional interview because to do so would be inappropriate. Indeed, Rae testified that by holding this superior position, his presence alone would prejudice the interviewee:

[Direct Examination of Douglas Rae]

Q: Do you consider yourself familiar with the duties and responsibilities of AFSD for screening position?

A: Yes, ma'am, I do.

Q: In that capacity, have you ever observed an interview for a promotion to a supervisory transportation security officer position?

A: I have not been on a panel or observed the process. I was part of developing the process but I've never been on a panel.

Q: In you opinion, is there anything inappropriate if you were to observe an interview?

A: I would think that if I was in an interview room with other panels and not being a panel member, I think that would be inappropriate.

20

Q:   Why is that?

A:   You develop a panel interview to conduct the promotional process and you have to have faith that they are going to follow the process. You do the development of the process and you normally have an administrative officer or a person with HR in the room to maintain the consistency of the interview process. I have been on panels of higher level of interviewers where I've been on the panel, and my superior was also not in the interview panel as well.

Mar. 1 Tr. at p. 143. Rather, than crediting this unbiased testimony, the Administrative Judge incorrectly found that the Agency presented "no evidence that it was per se improper or against any agency rule, regulation or policy for an upper-level manager to observe an interview for a supervisory vacancy." Initial Decision at p. 30. The Administrative Judge committed a harmful error when he ignored this incontrovertible evidence that Appellant's conduct was inappropriate. Therefore, the Administrative Judge erred in that he improperly weighed the evidence regarding this specification, and the preponderant evidence fully supports the Agency's decision to sustain this specification of misconduct.

## VII. CONCLUSION

In sum, the Administrative Judge erred when he failed to give deference to the Agency's penalty determination because, notwithstanding the Administrative Judge's finding to the contrary, the deciding official properly considered all of the relevant Douglas factors. As such, the Agency's penalty determination is entitled to deference, and the removal action should be sustained because it is well within the parameters of reasonableness for Appellant's serious misconduct. For these reasons, the Agency respectfully requests that the Board sustain the Agency's decision to remove Appellant from the service.

21

The Agency also submits that the Administrative Judge erred in his rulings and analysis regarding the two specifications of inappropriate conduct and the one specification of lack of candor, which were not sustained in the Initial Decision. The Agency should not be prejudiced by these material errors, but rather, the specifications should be sustained based upon the preponderance of the evidence of record. The addition of these three specifications to the specifications sustained in the Initial Decision further demonstrates how the removal penalty is reasonable, and as such, the Agency respectfully requests that the removal penalty be sustained.

Respectfully Submitted,

October 9, 2007    By: _____
Eileen Dizon Calaguas
Agency Representative

Transportation Security Administration
Western Area Mission Support Center
450 Golden Gate Avenue, Suite 1-5246
P.O. Box 36018
San Francisco, CA 94102